ebd2varc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SAJU VARGHESE,

4                   Plaintiff,              New York, N.Y.

5              v.                           14 Civ. 1718(PGG)

6    JP MORGAN CHASE & CO., et al,

7                   Defendants.

8    ------------------------------x

9                                          November 13, 2014
                                           11:35 a.m.
10
     Before:
11
                         HON. PAUL G. GARDEPHE,
12
                                           District Judge
13

14                            APPEARANCES

15

16   KARL J. STOECKER
          Attorney for Plaintiff
17
     MORGAN LEWIS & BOCKIUS, LLP
18        Attorneys for Defendants
     BY:  THOMAS A. LINTHORST
19        SAMUEL S. SHAULSON

20

21

22

23

24

25
```

ebd2varc

1          (Case called)

2          MR. STOECKER:  Karl Stoecker, Law Offices of Karl

3     Stoecker, for plaintiff Varghese.

4          MR. LINTHORST:  Tom Linthorst and Sam Shaulson of

5     Morgan Lewis for the defendant.

6          MR. SHAULSON:  Good morning, your Honor.

7          THE COURT:  Good morning.

8          I understand this to be a FLSA action against

9     J.P. Morgan Chase.  The case was originally assigned to

10    Judge McMahon.  On or about September 22, Judge McMahon

11    recused herself; and on September 29, the case was reassigned

12    to me.

13         Judge McMahon conducted an initial conference in this

14    case on June 6.  At that time she directed the plaintiff to

15    file a motion for what she referred to as conditional

16    certification by June 10, 2014.  I refer to that as a motion

17    for the dissemination of court authorized notice to the

18    putative class, but many judges refer to it as conditional

19    certification.

20         At that time she also provided for limited discovery

21    on the issue of whether the plaintiff was qualified for

22    overtime compensation under the FLSA, and she set a deadline

23    for fact discovery of October 3, 2014.  She also set a schedule

24    for summary judgment briefing, providing a briefing schedule

25    that required moving papers by November 4, opposition papers by

ebd2varc

1   December 5, and replies by December 19.

2         Plaintiff did not move for dissemination of court

3   authorized notice.  Plaintiff instead twice attempted to file

4   an amended complaint, which removed the collective allegations

5   from the original complaint, and those documents are docket

6   numbers 12 and 13.

7         On June 12, plaintiff moved to transfer to the Eastern

8   District of New York, that is docket number 16, and in a brief

9   that plaintiff filed in support of that motion, which is docket

10  number 17, he stated as follows, "Plaintiff wishes to litigate

11  his individual claims" and "now that this is an individual case

12  that no other individuals will join, plaintiff would prefer to

13  litigate in a more convenient forum."  Judge McMahon denied the

14  transfer motion and reaffirmed her original scheduling order.

15        I understand that defendants served discovery requests

16  on plaintiff and noticed his deposition for September 10, 2014.

17  On August 27, plaintiff requested that defendant enter into a

18  stipulation of dismissal without prejudice.  I further

19  understand the defendants refused to consent to that.

20        Accordingly, plaintiff moved on September 10, 2014,

21  for a voluntary dismissal with prejudice.  That is docket

22  number 23.

23        I further understand that Judge McMahon conducted a

24  hearing on plaintiff's application on September 22, 2014.  It

25  is apparent to me that the hearing was quite contentious.

ebd2varc

1   Judge McMahon made it clear that she was concerned that the

2   client's decision to dismiss his claims with prejudice was not

3   knowing and voluntary.

4          On September 26, Judge McMahon recused herself and, as

5   I indicated, the case was subsequently reassigned to me.

6          After the case was transferred or reassigned to me,

7   the plaintiff sought to withdraw his motion for voluntary

8   dismissal.  That was docket number 37.  I granted that request

9   on October 17, 2014, in an order that is docket number 40.

10         On October 24, 2014, Outten & Golden, which had been

11  co-counsel, moved to withdraw as counsel.  I granted that

12  application.  Accordingly, Mr. Stoecker is sole counsel for

13  plaintiff at this point.

14         And, finally, on November 10 I received a letter from

15  defendants in which they contend that the action should proceed

16  as an individual action and that Judge McMahon had ruled as

17  much.  Defendants also request that I direct plaintiff to

18  appear for his deposition "without additional delay;" and,

19  finally, defendants ask that they not be required to respond to

20  any discovery from plaintiff until his deposition is taken.

21         In response to that, I received a letter dated

22  yesterday from Mr. Stoecker, plaintiff's counsel.  Mr. Stoecker

23  writes that it is both incorrect and irrelevant for defendants

24  to argue that Judge McMahon ordered that this action proceed on

25  an individual basis, and Mr. Stoecker goes on to say that there

ebd2varc

1    is no justification for limiting or delaying the production of

2    documents from defendants to plaintiff's counsel.

3           So that is the record, as I understand it.

4           It seems to me that, at the outset, we have to address

5    the question of whether the case is going to proceed as an

6    individual action or as a collective action.  It does seem to

7    me clear that the plaintiff has said in numerous filings that

8    this is an individual action.  As I indicated, the plaintiff

9    twice attempted to file amended complaints removing collective

10   allegations.  Plaintiff also filed a brief, which is docket

11   number 17, stating that it was an individual action.  On June

12   27, 2014, Judge McMahon had a minute entry entered on the

13   docket stating, "This lawsuit will proceed as an individual

14   action."

15          It seems both that the plaintiff has said on numerous

16   occasions that it is an individual action and it seems that

17   Judge McMahon ordered that it would proceed as an individual

18   action, so I am not sure what the basis would be for arguing at

19   this stage that the action is anything other than an individual

20   action.

21          Mr. Stoecker, do you wish to address that?

22          MR. STOECKER:  Yes, your Honor.  Thank you.

23          The decision to proceed as an individual action was

24   based upon the statements and rulings made by Judge McMahon,

25   and Judge McMahon subsequently determined that it was

ebd2varc

1    inappropriate for her to be making rulings in this case.  So I

2    don't think it would be --

3         THE COURT:  To the extent you are arguing that her

4    decision to recuse herself on September 26 casts doubt on

5    rulings that she made in June, I reject that suggestion.  I

6    don't see any connection.

7         I acknowledge that the hearing on September 22 was

8    quite heated and it is my belief that, as a result of the

9    heated nature and contentious nature of that proceeding,

10   Judge McMahon decided it was probably best for her to recuse

11   herself.  But to the extent that you are contending that this

12   undermines or casts doubt or makes irrelevant orders that she

13   entered earlier in the case, I don't see any basis for doing

14   that.  Most specifically, I don't see any basis for an argument

15   that her order on June 27 that the case would proceed as an

16   individual action, I don't see any basis for ignoring that

17   order at this point.

18        And as I said, separate and apart from what

19   Judge McMahon has said about whether there is an individual

20   action or a collective action, plaintiff has repeatedly said it

21   is an individual action.  Plaintiff said that in a brief,

22   docket number 17, in the clearest possible language and then

23   the plaintiff has twice filed or attempted to file, I say

24   attempted to file, because permission was not sought, leave was

25   not sought to file an amended complaint.  That's why I am using

ebd2varc

1   the word "attempted to file," because the appropriate

2   permission was not obtained from the court.  But, in any event,

3   in these two pleadings that the plaintiff attempted to file,

4   the collective allegations were removed from the complaint.

5        A case can't proceed with this kind of jockeying

6   around about what's in the case and what's not in the case.  So

7   I need to understand from you, Mr. Stoecker, why you believe at

8   this point it would be appropriate for me to ignore what

9   Judge McMahon ordered on June 27 and why I should ignore what

10  the plaintiff has said in prior pleadings and in briefing.

11       MR. STOECKER:  Your Honor, given the constraints that

12  Judge McMahon imposed upon us, it simply wasn't possible to

13  move at that time.  Ordinarily you conduct some limited

14  discovery before a motion for notice.  She didn't give us that

15  opportunity.  She told us to submit the motion two or three

16  business days later and to work over the weekend.  So it simply

17  wasn't possible procedurally to do it at that time, and we were

18  deprived of the opportunity to do so.  Nor did she even allow

19  to us attempt to conduct any discovery on the issue, and she

20  subsequently removed herself from the case.

21       Now, we don't know what her motive for removal was

22  because she hasn't stated what it was.  Your Honor made some

23  speculations on the record that it may have been because of the

24  contentiousness of the hearing.  It may have also been because

25  she thought that because of her personal situation it wasn't

ebd2varc

1    proper for her to be making rulings on the case.  And now we

2    are --

3              THE COURT:  We can bat this back and forth as long as

4    you want, but I have already rejected the notion.  I have said

5    it twice.  Now I am saying it a third time.  I don't believe

6    that Judge McMahon's recusal of herself on September 26 tells

7    us anything about something she did in June.  I just don't see

8    the connection.  I am not seeing the connection at all.

9              MR. STOECKER:  I understand, your Honor.

10             THE COURT:  So I am not sure that there is much point

11   in going back and forth on this.  I have explained to you why I

12   don't see the connection.  You haven't explained the connection

13   to me, so I am not accepting the argument.  Just to say it

14   again, I am not accepting an argument that Judge McMahon's

15   recusal on September 26, 2014, makes irrelevant orders that she

16   issued in the case four months earlier.  That is not a

17   reasonable position to take.

18             MR. STOECKER:  The simple fact of the matter, your

19   Honor, is that we were not given -- the rules provide for

20   notice in a case such as this in a procedure that the Second

21   Circuit has articulated and your Honor has often implemented.

22   We were deprived of a fair opportunity to avail ourselves of

23   and to implement the rules contained in the statute.  There are

24   people out there, Chase assistant branch managers, whose claims

25   are slowly dying as we speak and they are not getting notice of

ebd2varc

1    this case because we were not given a fair opportunity to give

2    them such notice.  All I am asking for now is the opportunity

3    to implement the statute and the procedure that the Second

4    Circuit has endorsed and mandated.

5          THE COURT:  The Second Circuit hasn't mandated that

6    every FLSA case has to be brought as a collective action.  They

7    haven't mandated that at all.  There are individual claims

8    brought under the FLSA probably every day in this courthouse.

9    Not every FLSA case has to be a collective action.  Some are

10   brought in that fashion, some are not.

11          This was originally contemplated to be a collective

12   action and then plaintiff obviously chose to take a different

13   tack.  Are you are telling me you chose to take that tack

14   because Judge McMahon made it impossible for you to proceed,

15   made it impossible for you to litigate the case as a collective

16   action?  That's what you seem to be telling me.  Is that your

17   position?

18          MR. STOECKER:  That's correct, your Honor.

19          THE COURT:  Let me hear from your adversary at this

20   point.

21          Who is going to speak on behalf of the defendant?

22          MR. LINTHORST:  Tom Linthorst, your Honor.

23          THE COURT:  Go ahead, Mr. Linthorst.

24          MR. LINTHORST:  Let me just address briefly one point

25   by Mr. Stoecker, then I am happy to address anything else your

ebd2varc

 1   Honor may be interested in.  But the case was filed as a

 2   collective action.  At the initial conference, Judge McMahon

 3   said, Let's decide the merits of this case, and here is a

 4   schedule.  Mr. Stoecker asked and said the first order of

 5   business, your Honor, is to file a motion for notice, and she

 6   said, okay, file your motion for notice, and she gave

 7   Mr. Stoecker a deadline to do so.  He did not request discovery

 8   before the motion.  He did not seek anything different.

 9   Outten & Golden was co-counsel at the time, a very prominent

10   plaintiffs' employment class action firm who has filed motions

11   for notice in this court dozens if not hundreds of times.  If

12   they strategically wanted to proceed as a collective action in

13   this case, they would have done so on the deadline imposed by

14   the court, which was also very restrictive and very tight on

15   the defendants as well.

16         As Mr. Stoecker's letter of yesterday makes clear,

17   however, this was not just a logistical issue, but a strategic

18   issue, that even if they filed that motion and even if the

19   court granted it, they did not want those claims to be heard by

20   Judge McMahon.  And so they made the strategic decision, having

21   first requested the deadline to file the motion, to not file

22   the motion and to have the case proceed as an individual

23   action.  We would respectfully submit that they should not be

24   allowed to go back and forth on these decisions based on the

25   identity of the judge because it taints the process.

ebd2varc

1          THE COURT:  Let me break in at this point,

2    Mr. Linthorst, and ask Mr. Stoecker a couple of questions.

3          Mr. Stoecker, at that initial conference where the

4    date was set for the motion for court authorized notice to the

5    putative collective, did you request discovery?

6          MR. STOECKER:  Yes, your Honor.

7          THE COURT:  You did.

8          MR. STOECKER:  The motion was raised toward the

9    conclusion of the conference.  Prior to that, the judge had

10   already indicated that discovery was going to be limited to the

11   merits issue of whether the exemption to the overtime applied,

12   and that she wanted to reach the merits as quickly as possible

13   because she thought Rule 11 applied and that the claim

14   shouldn't have been brought.

15         At that point we decided that --

16         THE COURT:  Did she explain why she thought the claim

17   shouldn't have been brought?

18         MR. STOECKER:  She mentioned that a prior case that my

19   co-counsel had brought called the Pippin case which

20   concerned --

21         THE COURT:  Spell that for the court reporter.

22         MR. STOECKER:  P-I-P-P-I-N.

23         -- employees of an accounting firm and a different

24   exemption.  She thought that that case may govern this case.

25         THE COURT:  So what you are telling me, and I am going

ebd2varc

1     to go back and look at the transcript -- I assume it was on the

2     record.

3                MR. STOECKER:  No, it wasn't.  That was one of the

4     problems, your Honor.

5                With regard to the amended complaint, she gave

6     permission at that conference to file an amended complaint and

7     that didn't appear in the record.  So that's why there was

8     confusion thereafter regarding the amended complaint.

9                THE COURT:  So what you are telling me is at the June

10    6 conference you asked for some period of discovery before your

11    motion for dissemination of court authorized notice would be

12    filed, and you are saying that she rejected that request?

13               MR. STOECKER:  We didn't get to that point, your

14    Honor.  She lambasted the claims.  She said Rule 11 probably

15    applied and when, toward the end of the conference, we raised

16    the motion, she said, Go ahead and work over the weekend and

17    get it to me on Tuesday, and there was no more -- she would not

18    brook any further discussion of the issue of discovery which

19    she had previously ruled was going to be limited solely to the

20    narrow merits issue of the exemption.

21               THE COURT:  I will go back to you, Mr. Linthorst.  I

22    broke into your argument, so go ahead.

23               MR. LINTHORST:  Yeah, well, I will just, if I may,

24    your Honor, revisit the conference on the 6th.  I was there.

25    We started off, and Judge McMahon gave Mr. Stoecker the chance

ebd2varc

1    to tell the judge about the case, and he said this is an

2    overtime case by an assistant branch manager.

3              We got into a discussion of the merits and we got into

4    a discussion of the Second Circuit's case in Donovan v. Burger

5    King in which the Second Circuit found that assistant managers

6    at Burger King were exempt under the executive exemption of the

7    FLSA.  So she was familiar with the decision.  She had also

8    handled, as I am sure every judge in the court has, many FLSA

9    cases, including the Pippins case.

10             So there was that discussion of the merits.  She

11   indicated that she thought it was appropriate for a prompt

12   resolution of the merits.  She didn't prejudge the merits.  We

13   just had a very robust discussion of the state of the law

14   within the Second Circuit and under the regulations from the

15   Department of Labor for assistant managers.  I don't know that

16   she appreciated at that time that it was brought as collective

17   action.  So Mr. Stoecker then, after she said we need to decide

18   these merits, Mr. Stoecker then said, Well, wait a second,

19   judge.  This is brought as a collective action, and so first

20   thing that needs to happen is notice needs to go out and I need

21   to file that motion.  She said, Fine.  File your motion.  Here

22   is your date.  Chase, here is your date.  Go ahead.

23             And so there was no request for discovery, granted or

24   denied as to that.  Those motions are filed all the time

25   without discovery.  Outten & Golden files them all the time.

ebd2varc

1    So there was nothing requested that was denied from that, your

2    Honor.

3           THE COURT:  While it certainly is true that in many

4    cases the plaintiff indicates that they don't need discovery

5    before -- actually let me step back.

6           In many cases, the defendant doesn't even dispute

7    whether a court-authorized notice should be disseminated.  The

8    standard for doing that is so low that in many cases the

9    defendants don't even bother opposing the application.  Where

10   the defendants oppose, it is true that sometimes the plaintiff

11   takes the position that no discovery is necessary and that we

12   can litigate the issue as to whether notice should be

13   disseminated without the benefit of discovery.  And then there

14   are cases in which the plaintiff says that they need discovery.

15          So let me ask you, Mr. Stoecker, why do you need

16   discovery on the issue of whether notice should be disseminated

17   to whatever the putative class is or the putative collective is

18   in this particular case?

19          MR. STOECKER:  Typically, your Honor, if the motion is

20   contested, there are several plaintiffs who are submitting

21   affidavits, which the mere fact of that in and of itself gives

22   the court an indication that there are indeed individuals who

23   are similarly situated, because you have several people before

24   the court.

25          Here there is only one plaintiff.  So I think it would

ebd2varc

1    be appropriate to buttress such a motion with just limited

2    document discovery or employee handbooks, job descriptions,

3    time records, job postings for the position at issue and things

4    of that nature.  So we have an indication that there are other

5    people that are working overtime and not getting paid for it.

6          THE COURT:  Let me ask you about, because reference is

7    made that Judge McMahon wanted to reach the merits of whether

8    the assistant branch managers were exempt or not, and she

9    wanted to reach that early on.  Defense counsel made reference

10   to Donovan v. Burger King.  There certainly are lots of cases

11   in the FLSA labor law context involving various sorts of

12   assistant managers, and I don't claim to have encyclopedic

13   knowledge over all of them, but I am familiar with a number of

14   them that have arisen in the context of drugstores,

15   particularly the big chains.

16         The big chain drugstores have titles of assistant

17   store manager.  This happens to be assistant branch manager.

18   In the drugstore chains they have assistant store managers.  I

19   had some of these cases myself, and I am familiar with other

20   cases that other judges had.  There was evidence in those cases

21   that assistant store managers, despite the title, were

22   frequently stocking shelves and doing tasks that were in no way

23   supervisory.

24         So I don't know there is any magic to the title

25   "assistant manager."  I think you have to look at each

ebd2varc

industry, each employer, and the duties that people are

performing in that role, in this case assistant branch manager,

before one can make a determination as to whether they are

exempt or not.

        In other words, this is all a long way of saying that

I am not sure that you can translate or transfer a finding in

another industry -- whether it be the fast food industry or

some other type of industry, drugstore industry -- and say,

okay, these were assistant managers and they were or were not

found to be exempt and therefore we are going to take that and

apply it here.  I am not sure that works.

        But let me ask you, Mr. Linthorst, do you believe it

would be improper at this point to permit plaintiff's counsel

some period of discovery before he is required to make a motion

for conditional certification?

        MR. LINTHORST:  We do, your Honor.  We believe it

would be inappropriate to permit him that discovery and to

permit him to file that motion.  This was not a question of

logistics or deprived opportunity before.  This was a question

of a strategic decision, which they fully admit to in the

letter that was submitted to the court yesterday, that they did

not want the collective action claims heard by Judge McMahon.

        They had a second plaintiff, by the way, that they

indicated both to defense counsel and the court was going to be

added to the case, and they decided not to do that shortly

ebd2varc

after that conference as they sought to get everything they
could away from Judge McMahon.  They asked the court to allow
the case to proceed as an individual action.  The court granted
their request and ordered it to proceed as an individual
action, and the doctrine of judicial estoppel precludes them
from coming back to the court and here, in the very same case,
to say, even though you granted us what we requested, now we
want to make a different request and contradict the prior
order.

          THE COURT:  There are a number of difficulties, and I
am sure everyone here is aware of the difficulties.  The
difficulties are that Mr. Stoecker has made certain
representations about what was said at the conference on June
6.  The conference was not on the record, so I don't know a
transcript I can look at of what was said.  What he has said to
me is that Judge McMahon set an unreasonable schedule for the
filing of his motion in support of court-authorized notice.  He
has indicated that he wanted discovery before filing the
motion, but was not able to articulate that.  I'm not sure,
Mr. Stoecker, what's your position on that?  I think you told
me you didn't request discovery, but the judge didn't give you
an opportunity to do that.  What's your position on that?  Did
you seek it?  Were you not given the opportunity to seek it?
What's your position?

          MR. STOECKER:  Your Honor, the question of the

ebd2varc

1   collective action or the notice motion came at the end of the

2   conference, and it was very clear that her Honor was not

3   brooking any further discovery -- any further discussion.  She

4   had already ruled that discovery was limited on that issue.

5           And with regard to Mr. Linthorst's characterization of

6   the discussion about the merits, I hate to get into an unseemly

7   back and forth about what occurred at something where there was

8   no transcript, but the fact of the matter is as soon as

9   Judge McMahon learned that this case concerned an assistant

10  branch manager at Chase Manhattan Bank, she raised Rule 11

11  without knowing anything else.  And then it was Mr. Shaulson

12  who raised the Burger King case.  And, as your Honor already

13  indicated, what happens in a hamburger restaurant is very

14  different from what happens in a bank or in a drugstore like

15  Rite Aid.

16          So, yes, your Honor, we wanted discovery.  We asked

17  for discovery.  She said, no, there is going to be nothing but

18  getting to the merits and disposing of this case as quickly as

19  possible.  So the answer is we did not have the opportunity to

20  get into the issue of discovery prior to the notice motion.

21          THE COURT:  I see some shaking heads back there, so I

22  suspect your adversaries disagree.  So spread on the record

23  what your recollection of the conference was.

24          MR. LINTHORST:  Well, ultimately at the end I think

25  Mr. Stoecker concedes that he did not seek discovery in support

ebd2varc

```
 1    of a motion for conditional certification at that conference or

 2    at any other time.  At no time when they were making

 3    representation to this court that they wanted to proceed as an

 4    individual action did they say we have no choice but to do so

 5    because the court wouldn't afford us discovery or gave us a

 6    tight time frame.  This was all strategic.  It was all

 7    intentional based upon the identity of the judge.  It was well

 8    within Judge McMahon's discretion to order a tight deadline on

 9    briefing of the motion that they requested, and the law of the

10    case should prevail here.  That order should not be disturbed

11    when it was well within her discretion and the order that the

12    case proceed on an individual basis should not be disturbed,

13    particularly because they requested that order.  That is what

14    they requested Judge McMahon to do.

15             THE COURT:  They requested what order?

16             MR. LINTHORST:  They requested to be able to proceed

17    in this case on an individual basis.

18             MR. STOECKER:  Your Honor, if I may, no such request

19    was made.  The simple fact of the matter is we just didn't make

20    the motion because we couldn't do so by the deadline and at the

21    succeeding conference the judge merely recited the fact that no

22    motion had been made and the case was now proceeding

23    individually at that point in time.

24             THE COURT:  I take it there is no record of that

25    conference either.
```

ebd2varc

1          MR. STOECKER:  It was a telephonic conference.

2          THE COURT:  Sure, but I have court reporters for

3     telephonic conferences all the time.  There is no transcript of

4     that conference either?

5          MR. LINTHORST:  Not that I know of.

6          MR. STOECKER:  I am not aware of one, your Honor.

7          MR. SHAULSON:  May I, your Honor?  It is in the

8     record, they requested that this action proceed on an

9     individual basis only.  That's what you read before when you

10    laid out the facts.

11         THE COURT:  What I read -- I made reference to two

12    things.  I made reference to the fact that plaintiff had

13    repeatedly attempted to file an amended complaint that removed

14    the collective allegations, and I cited plaintiff's brief,

15    docket number 17, quoting language in which the plaintiff said,

16    "Plaintiff wishes to litigate his individual claims," and then

17    the brief went on to say that plaintiff preferred to litigate

18    his individual claims in Brooklyn.

19         MR. SHAULSON:  And I believe from there the judge

20    issued the minute order saying this action will proceed as an

21    individual action.  So the plaintiffs got exactly what they

22    asked for.  In fact, they got what they asked for as part of a

23    four-month odyssey to remove the judge from the case.  They got

24    exactly that result.  They got the relief they wanted, removing

25    the judge from the case.  And then as soon as the judge removed

ebd2varc

1    herself from the case, as your description of events made

2    clear, they flipped again and said, okay, now we are willing to

3    proceed with this case in this court, despite our previously

4    trying to dismiss it with prejudice.  So they got exactly what

5    they wanted, and they can't now change courses yet again,

6    speaking out of both sides of their mouth.  This is a classic

7    case of judicial estoppel and a classic case of law of the

8    case.

9          THE COURT:  Why do you say they tried to remove the

10   judge?  I don't understand what you are talking about.

11         MR. SHAULSON:  As the hearing transcript makes clear,

12   where Judge McMahon on numerous instances said it is quite

13   clear, this is transparent judge shopping going on.

14         THE COURT:  That was in response to what, their desire

15   to voluntary dismiss?  Is that what you are talking about?

16         MR. SHAULSON:  There were many things.  First they

17   tried to transfer the case, as you indicated.  They tried two

18   attempts to amend the complaint, then to transfer the case,

19   then to settle the case, then to withdraw without prejudice,

20   then to withdraw with prejudice, even as Judge McMahon was

21   concerned about sacrificing the plaintiff's rights and

22   voluntary and knowingly giving up the case.

23         And then no sooner did Judge McMahon recuse herself,

24   they flipped again and say, okay, now we are fine proceeding in

25   the Southern District of New York, now we are fine proceeding

ebd2varc

1    on behalf of this plaintiff who, incidentally, told the court

2    in the hearing that under no circumstances did he want to

3    proceed with this case.  But that was short lived after

4    Judge McMahon recused herself.

5                So the defendants have been on this odyssey for four

6    months at least of trying to get the judge off the case.  They

7    have succeeded based upon the very representations they made to

8    the court that they only wanted to proceed on an individual

9    basis and not a collective action basis.

10               And now that they have obtained the very result that

11   they sought, they are now asking this court to violate

12   Judge McMahon's order, to overrule that order, to disregard the

13   very representations that they made to the court, and now allow

14   them to do what they have done, now that they have accomplished

15   the very judge shopping that has occurred in this case.

16               That is improper.  It violates the law of the case

17   doctrine.  It violates the judicial estoppel doctrine.  It just

18   shouldn't be done.

19               Plaintiff shouldn't be allowed to change courses over

20   and over again for their own strategic purposes.  The defendant

21   has rights here, too.  We spent tens of thousands of dollars on

22   this odyssey, tens of thousands of dollars trying to prevent

23   what we believe is improper judge shopping, what Judge McMahon

24   found was improper judge shopping, and now they should be held

25   to the representations they made to this court.

ebd2varc

```
 1             MR. STOECKER:  Your Honor, we didn't succeed in
 2   getting the judge to recuse herself based on any
 3   representations about proceeding as an individual action, so
 4   that is just absurd.  Nor did we ever seek an order from the
 5   court that this would proceed as an individual action.  We
 6   indicated that that was plaintiff's preference, after we
 7   declined to make the motion in the brief, and the judge noted
 8   that it was proceeding as an individual action.  There was no
 9   order that was litigated and entered by the court on that
10   particular point.  To say that they have spent tens of
11   thousands of dollars when we notified them a long time ago of
12   our then intention to dismiss the case, and they continued to
13   run up costs with discovery, is a little disingenuous.  Given
14   the state of affairs --
15             THE COURT:  You don't deny the judge shopping aspect
16   of what you were doing, do you?
17             MR. STOECKER:  No, we don't.  No, we don't.  We
18   didn't -- the plaintiff didn't think that the judge -- that he
19   was going to get a fair shot before the judge and that the
20   judge was behaving appropriately.  But it was lead counsel
21   Outten & Golden that made the decisions as to how to address
22   those facts, and it is not fair to saddle plaintiff with
23   responsibility for everything that happened and to penalize all
24   of the other assistant branch managers that are out there whose
25   claims are dying.
```

ebd2varc

```
 1            THE COURT:  But let's bring some reality to the
 2     situation.  If there are other assistant branch managers out
 3     there who believe they have claims, they are free to bring
 4     them.  Their claims haven't been extinguished by anything
 5     that's happened here.  They all have the right and they have
 6     had the right for some time to bring any actions that they deem
 7     appropriate.  I gather they have chosen not to do so.  But
 8     there hasn't been any negative effect on any of their claims.
 9     For all we know they have chosen not to bring those claims
10     because actually they don't think that they have suffered any
11     injury under the law.  You are asking me to assume that there
12     are lots of assistant branch managers out there who have valid
13     claims for compensation under the FLSA.  I don't know that.
14     From my perspective it is just as possible that actually none
15     of the assistant branch managers at J.P. Morgan Chase have any
16     valid claims under the FLSA.  I don't know which is true, and I
17     can't assume that they have valid claims at this stage.
18            MR. STOECKER:  I understand, your Honor.  That's what
19     we are here to decide.  That's why we are litigating the case,
20     and that's ultimately what a jury may decide.
21            THE COURT:  You can understand, sir, why I am troubled
22     by -- it is a troubling situation.  You have repeatedly taken
23     the position you want the case to proceed as an individual
24     action.  You say to me, yes, we did that, but the reason why we
25     did it is the judge set an unreasonable schedule.  I will have
```

ebd2varc

1    to consider that.

2         I will tell that you my consideration of the argument

3    is made significantly more difficult because there is no record

4    of the conversations -- well, there is no record of what

5    happened at these conferences other than minute orders that

6    are, you know, ten lines long and, frankly, don't convey much

7    about what either side has said went on.  In fact, they don't

8    convey anything along the lines of what counsel has said went

9    on at the June 6 and June 27 conference.  So it makes my task

10   very difficult because I don't have a record.

11        MR. STOECKER:  Your Honor, I think the important thing

12   to keep in mind is that we are not talking about substantive

13   rulings and orders on substantive issues.  We are talking about

14   procedural issues that every judge has discretion with regard

15   to.

16        With respect to the timing of motions and the schedule

17   at the conclusion of the September 22 hearing, the judge said

18   the case is on suspense and all the current schedules are

19   basically out the window.  So given that the facts have changed

20   and we now have to decide upon new schedules and we are not

21   bound by any orders regarding a date, there is no magic in any

22   particular date.  The dates are based upon the facts as they

23   existed at the time.  So we can go ahead and your Honor has the

24   discretion to schedule things any way he wants, because there

25   were no orders that are at issue that were actually litigated

ebd2varc

1   and decided by Judge McMahon.

2           THE COURT:  I agree I have the discretion to set

3   dates, but that's not what we are talking about.  What we are

4   talking about is whether the case is going to proceed as a

5   collective action or as an individual action.  That's what we

6   are talking about.

7           MR. STOECKER:  What we are talking about is a

8   procedural step of giving notice to people who are affected by

9   this, because the reality is most people don't know that they

10  have overtime claims, and all we are giving them is notice to

11  come in and say, hey, you may have a claim.  You were invited

12  to join this case, and we can litigate the case.

13          MR. SHAULSON:  Judge, I don't think that's all we are

14  talking about here.  We are talking about our system of

15  justice.  If our system of justice allows parties to spend four

16  months trying to engage in what is improper, judge shopping is

17  improper, if you spend four months trying to engage in improper

18  judge shopping and then you ultimately succeed in your effort

19  to shop away from a particular judge and then you don't have to

20  abide by the court's prior orders, it really sets a very bad

21  precedent for our system of justice.  That's what we are

22  talking about here, and we are talking about very

23  well-established legal doctrines to prevent this from

24  happening.

25          The law of the case, the law of the case, you can't

ebd2varc

1      avoid a court order, particularly in this circumstance, where

2      the reason you are trying to avoid it is admitted judge

3      shopping; and, secondly, the judicial estoppel doctrine, very

4      well-settled doctrine, doesn't allow a party to speak out of

5      both sides of their mouth to get a result based upon

6      representations to the court one way and then when they get

7      that result, now they completely switch gears and say we want

8      the opposite result.

9              THE COURT:  Because what was said at these conferences

10     is so central to this issue, I am going to require affidavits.

11     I am going to require affidavits as to what was said in

12     particular as to the discussion about the schedule for any

13     motion requesting court-authorized notice, any discussion of

14     discovery, any discussion about the merits of the case, and

15     what effect that had on the schedule that was set.  I am going

16     to require affidavits from both sides addressing that.  I'm not

17     going to proceed on the basis of letters.  I don't think it is

18     appropriate.

19             As I said, I wish I had a transcript.  I don't.  So I

20     am going to require the parties to submit affidavits as to what

21     they recall was said at these conferences that we have been

22     discussing.

23             MR. STOECKER:  Your Honor, if I may, I think that

24     places the attorneys in the position of being witnesses in

25     their own cases.

ebd2varc

```
1          THE COURT:  That doesn't go to the merits.  It doesn't
2     present any obstacle.  First of all, even where attorneys are
3     fact witnesses, that doesn't necessarily require
4     disqualification.  What we are talking about here has nothing
5     to do with the merits of the case.  It has to do with the
6     procedure under which this case is going to proceed.
7          And, frankly, the allegations both sides have made are
8     deeply troubling to me.  On plaintiff's side, plaintiff has
9     argued that the judge had prejudged the merits of the case and
10    set a schedule that was unreasonable and that the schedule that
11    the judge set was so unreasonable that the plaintiff was
12    required to take desperate measures to try to get out of the
13    case.  That is the plaintiff's side of it.
14         On the defense side, the argument is that none of that
15    is true, and in fact what happened is that the plaintiff
16    perceived that he might do better in front of a different
17    judge, and then he took a number of steps designed to judge
18    shop to get to another judge that might give him a better
19    chance of recovery, and those allegations of judge shopping are
20    equally troubling.
21         So given that these serious allegations have been made
22    by both sides and given that I don't have a transcript of what
23    was said at the critical conferences before Judge McMahon, I am
24    requiring the parties to submit affidavits as to what was said
25    in these conferences, and I will consider them in deciding how
```

ebd2varc

1    this case should proceed and, in particular, whether it will

2    proceed as a collective action or as an individual action, as

3    plaintiff repeatedly requested before Judge McMahon.

4            To state the obvious, it is extremely troubling that a

5    party would repeatedly request that a case proceed as an

6    individual action and then when the case is reassigned,

7    completely reverse their position.  That is deeply troubling.

8    If the argument is that that behavior was appropriate because

9    of actions the judge has taken, then I need reliable evidence

10   upon which to make that determination and I don't have that at

11   this point.

12           Go ahead, Mr. Stoecker.

13           MR. STOECKER:  Your Honor, with respect to the key

14   points, I believe they are already in the record.  The

15   discovery schedule that was set was in the record and, by the

16   way, she gave the defendants more time to respond to the motion

17   than she gave the plaintiffs to make the motion, in both

18   instances on which we distinguished there were motions.  The

19   comment of Judge McMahon regarding rule 11 was confirmed by the

20   judge herself at the September 22 hearing.  The judge indicated

21   that she makes the Rule 11 comment in every case.  So there was

22   no dispute and there is no dispute today among anybody that

23   such a comment was made.

24           To argue in affidavits over the timing of the comment

25   and how much discussion took place before or after at a

ebd2varc

1    conference that occurred on June 6, I respectfully submit, is

2    not going to be productive in my view.

3         THE COURT:  It is up to you Mr. Stoecker.  If you

4    don't want to submit an affidavit, you don't have to.  I will

5    consider an affidavit from defendants.  I just went through a

6    trial where people testified for days about what was said seven

7    years ago.  So your argument that you can't submit an affidavit

8    about what was said four months ago doesn't have a lot of

9    resonance with me.

10        MR. STOECKER:  How are we going to resolve the

11   credibility -- who is going to make a credibility

12   determination?

13        THE COURT:  That's why I am here, sir.  I will make

14   the decision.  And, again, I am not ordering you to submit an

15   affidavit.  If you don't want to, you don't have to.  I am

16   telling you that I don't have a record here, don't have a

17   transcript.  I am not going to rely on letters from lawyers

18   about what was said.  That's not good enough.  So it is up to

19   you.  If you don't want to submit an affidavit, you don't have

20   to.  But if your adversary submits an affidavit, I am going to

21   consider it.  It is up to you.  These are serious allegations

22   on both sides, and I need an appropriate record upon which to

23   decide these issues.  I don't have one at this point.

24        MR. STOECKER:  Your Honor, the allegations regarding

25   Judge McMahon and the procedure that then lead counsel chose to

ebd2varc

1    follow is not really at issue in this case.

2                THE COURT:   There is an allegation that she was biased

3    against these claims, that she had made up her mind, and that's

4    why you are arguing that the conduct here was necessary.   She

5    had prejudged the issues.   She is biased against you.   Those

6    are serious allegations.   And I will tell you that absent those

7    types of allegations, I wouldn't for a minute consider whether

8    this could proceed as a collective action on this record where

9    the plaintiff has repeatedly requested that the case proceed as

10   an individual action; absent significant, compelling

11   circumstances that would justify 180 degree difference in

12   position?   We wouldn't even be having a conversation about

13   this.   The only reason why we are having a conversation about

14   whether this case should be permitted to proceed as a

15   collective action is because you have made very serious

16   allegations about how Judge McMahon initially approached this

17   case.   Absent those kinds of allegations, the record is such

18   that I could not in good conscious permit this case to proceed

19   as a collective action.   A party cannot say repeatedly I want

20   the case to proceed as an individual action, the case is then

21   transferred to another judge and then say, oh, I changed my

22   mind.   Now I want it to proceed as a collective action.   No, I

23   would never permit that.

24                So, just so there is no confusion here, the only

25   reason why I am even considering whether this case should

ebd2varc

```
1    proceed as a collective action is because of very serious

2    allegations that you have made about what happened in these

3    off-the-record conversations before Judge McMahon at these

4    conferences where you allege that she had essentially prejudged

5    the issues.  That is the premise for your argument that you

6    should be now permitted to proceed as a collective action.

7    Without that, you have no argument.

8              MR. STOECKER:  I understand, your Honor.  But now we

9    are putting ourselves into a position where, as I understand

10   it, your Honor's ruling is going to turn upon whether in fact

11   Judge McMahon had prejudged the issues, and that's going to

12   open a whole arena of satellite litigation on Judge McMahon's

13   personal situation, her husband's investments, his relationship

14   to Chase Bank, and so on and so forth.  As a sole practitioner,

15   I simply don't have the resources to get into all of that.

16             THE COURT:  As I told you, I am not requiring you to

17   submit an affidavit.  You will do what you deem best for your

18   client, and you will either make the submission I have

19   requested or you won't.

20             I have explained to you why I believe the record is

21   inadequate.  It seems obvious to me.  There is no transcript.

22   So that's not hard to understand.  There is no transcript of

23   what took place at these conferences.  Serious allegations have

24   been made about what transpired.  I have told you I am not

25   willing to rely on letters for that purpose.  You have
```

ebd2varc

| | |
|---|---|
| 1 | indicated some unwillingness to file an affidavit.  I have told |
| 2 | you that's up to you.  More than that, I can't say. |
| 3 | MR. STOECKER:  I understand, your Honor. |
| 4 | THE COURT:  Given that this is a threshold issue, |
| 5 | whether the case is going to proceed as a collective action or |
| 6 | an individual action, I don't think we can make any progress or |
| 7 | set any schedules until we know the nature of this case.  We |
| 8 | don't know that yet.  We don't know whether it is going to |
| 9 | proceed as an individual action or a collective action. |
| 10 | So Mr. Linthorst, what's your position on whether you |
| 11 | will submit an affidavit or somebody from your firm? |
| 12 | MR. LINTHORST:  No objection, your Honor.  We intend |
| 13 | to do so. |
| 14 | THE COURT:  How long will you need to do that? |
| 15 | MR. LINTHORST:  Two weeks, your Honor? |
| 16 | THE COURT:  All right.  So today is the 13th. |
| 17 | MR. STOECKER:  Your Honor, if I may, I am sorry to |
| 18 | interrupt.  If my burden now is to show that the judge -- that |
| 19 | Judge McMahon was -- acted inappropriately and prejudged the |
| 20 | case, plaintiff will respectfully decline to proceed |
| 21 | collectively and will litigate his individual claim.  I can't |
| 22 | saddle this plaintiff with that kind of satellite litigation |
| 23 | and now wait two weeks for them to just put in an affidavit and |
| 24 | then have this issue resolved.  So we will proceed |
| 25 | individually, your Honor, if that is the landscape that we are |

ebd2varc

1  faced with at this point.

2          THE COURT:  I have said it now several times.  I can't

3  resolve the issues that the parties have presented to me on the

4  basis of letters.  I told you why.  I have no transcript of

5  what took place.  I am not willing to rely on letters.  The

6  allegations are too serious.  So I need affidavits.  I have

7  told you why.  I haven't made any decisions about how I would

8  rule on the issue.  I don't know whether I would permit the

9  case to proceed on a collective action theory or simply on an

10 individual basis.  But I will tell you that I believe I need

11 the record supplemented in the fashion I have indicated before

12 I could rule on that subject.

13         If you are telling me that, in light of what I have

14 said, you wish to proceed as an individual in the form of an

15 individual action, then that is what we will do.  But I want to

16 make it crystal clear to you I have in no way made a

17 determination of whether the case should proceed as an

18 individual action or as a collective action.  What I have

19 identified for you is what I believe are very serious

20 allegations that both sides made and that need to be supported,

21 given the absence of a transcript, by affidavits.  That's all I

22 have said.

23         Understanding that, do you wish to proceed in the form

24 of an individual action?

25         MR. STOECKER:  Your Honor --

ebd2varc

 1          THE COURT:  Do you want to think about it?

 2          MR. STOECKER:  Yeah, I should probably think about it,

 3    because essentially we now have to prove or establish that the

 4    standard for recusal of Judge McMahon was met, notwithstanding

 5    the fact that she has already recused herself and we don't know

 6    why.  So now we are really going backwards and we have to prove

 7    something that the judge has already perhaps implicitly

 8    acknowledged by recusing herself.

 9          THE COURT:  I haven't set any standard for what you

10    have to prove.  What I have told you is that these are serious

11    allegations and I need a broader record than I have now.  I

12    haven't told you that you have to show me X if you want me to

13    rule Y.  I haven't said that.

14          What I am trying to communicate to you, and I want to

15    be very clear about this, is that the record is inadequate.

16    There are no transcripts.  The parties make conflicting claims

17    about what was said.  They have sent me letters that dispute

18    what was said.  I am not going to decide the issues based on

19    the letters that have been submitted.  I need a more reliable

20    record than that.  It is entirely up to you whether you want to

21    participate in that process.  If you don't want to submit an

22    affidavit, you don't have to.  Defense counsel has indicated

23    they will submit an affidavit.  If you don't submit an

24    affidavit, I will rule on the issue based on the record I have

25    in front of me.  But more than that, I can't really say.  If

ebd2varc

1    you want more time to think about how want to proceed, I can

2    give you that, but that's where we are at.

3                MR. STOECKER:  Thank you, your Honor.  If I may, I

4    would appreciate a couple of days to think about that.  But in

5    the meantime, let's assume that we don't go that route and we

6    proceed individually, can we now discuss and set a schedule for

7    further proceedings in that regard?

8                THE COURT:  Ordinarily what I would do in a case like

9    this is provide for 90 days of fact discovery.  Is there some

10   reason why that would be inadequate here?

11               MR. STOECKER:  No, your Honor.

12               THE COURT:  Or inappropriate?

13               MR. STOECKER:  No.

14               THE COURT:  Then I would see you at the end of 90

15   days, ask you whether there is going to be a dispositive

16   motion; if so, set a schedule; if not, put the case down for

17   trial.

18               So today is the 13th.  Mr. Stoecker, can you tell me

19   by November 18 how you want to proceed?

20               MR. STOECKER:  Yes, your Honor.

21               THE COURT:  So you will send me a letter on November

22   18 telling me how you want to proceed.  If you want to proceed

23   in the form of an individual action, then I will enter a case

24   management plan that provides for, unless defense counsel

25   objects, 90 days of fact discovery, conference at the end of

ebd2varc

1    that period at which dispositive motions will be discussed.

2         Anything you want to say, Mr. Linthorst?

3         MR. LINTHORST:  Yes, I just want to say if it does

4    proceed as an individual action or either way, we would

5    respectfully request that the plaintiff appear for deposition

6    on a mutually agreeable date within two weeks of the date that

7    the nature of the case is resolved and before should plaintiff

8    presumably serve discovery, which he has not done to date,

9    before we have to respond to such discovery.

10        THE COURT:  I do think that it would be appropriate

11   for plaintiff's deposition to be taken in fairly short order,

12   Mr. Stoecker.  The request to take the plaintiff's deposition

13   has been pending for some time, hasn't it?

14        MR. STOECKER:  Your Honor, that was in the context of

15   the schedule which was put on suspense by Judge McMahon, and

16   that request to take the deposition I believe was initiated

17   even after we told the defendants that plaintiff was moving to

18   voluntary dismiss the case.

19        MR. LINTHORST:  That's not true, your Honor.

20        MR. STOECKER:  In any event, we don't have any

21   documents from the defendant, so to take the deposition in a

22   vacuum would be sort of a wasteful exercise.  I assume they

23   intend to show the plaintiff documents at the deposition, so

24   why should plaintiff be in the position of doing a deposition

25   by ambush where neither he nor his attorney knows what is going

ebd2varc

1   on with respect to documents?

2              THE COURT:  Have you served any discovery requests?

3              MR. STOECKER:  No.  We tried to minimize costs after

4   the decision was made to seek voluntary dismissal.  So I can

5   serve discovery requests within a week, and if it is just one

6   plaintiff, I don't imagine that the documents we are talking

7   about are that voluminous.  And I am sure the defendants have

8   the documents standing by as this case, as I have indicated,

9   this case has been going on for some time and they are very

10  thorough lawyers.

11             THE COURT:  What's your position.

12             MR. LINTHORST:  Your Honor, they didn't serve

13  discovery because they were engaged in an effort to get the

14  case away from Judge McMahon.  We served our discovery well

15  before plaintiff first approached and indicated an intent to

16  dismiss.  He was noticed for deposition on September 10.  They

17  very belatedly, on that same day, sought a stay of discovery,

18  which was denied.  They refused to schedule his deposition.

19  They shouldn't be allowed to engage in a unilateral continued

20  stay of his deposition so that they can now try to seek

21  discovery that they had a full opportunity to take throughout

22  the summer.

23             THE COURT:  I am not going to delay the taking of the

24  plaintiff's deposition.  Mr. Stoecker, you are welcome to

25  submit any discovery requests that you wish, but I am not going

ebd2varc

1   to require that the plaintiff's deposition be taken after there

2   has been a document production from the defendants.

3           MR. STOECKER:  Your Honor, to proceed with a

4   deposition without documents, it is fundamentally unfair for

5   them to use documents at a deposition that they haven't

6   previously produced to us.

7           THE COURT:  But parties have the right to request

8   documents.  You could have issued a document request.  They

9   have been trying to take this man's deposition for months.  The

10  way the discovery system works is both sides have the

11  opportunity to exchange document requests.  That could have

12  been done a long time ago.

13          MR. STOECKER:  That's correct, your Honor, but this

14  is, to put it lightly, a very unique procedural posture in the

15  case.

16          THE COURT:  What do you say to your adversary's claim

17  that they had noticed this man's deposition for September 10

18  and you told them on September 10, no, I'm not going to produce

19  him?

20          MR. STOECKER:  I didn't tell them that.  Plaintiff's

21  former counsel may have said something.

22          THE COURT:  Co-counsel, right?  It was co-counsel,

23  right?

24          MR. STOECKER:  Lead counsel.

25          THE COURT:  Lead counsel.  So lead counsel then, which

ebd2varc

1  has essentially withdrawn from the case, told defense counsel

2  on the date the deposition had been noticed for, no, we are not

3  going to produce him.

4          MR. STOECKER:  Depositions are rescheduled all of the

5  time by mutual agreement.

6          THE COURT:  But this wasn't mutual.  They wanted to

7  take his deposition.  They had noticed his deposition.  And

8  plaintiff's counsel didn't tell defense counsel, No, we are not

9  going to produce him until the day that the deposition was

10  supposed to take place.  Plaintiff's counsel then sought a stay

11  of discovery.  I gather that Judge McMahon denied that.  So the

12  context here is the defendants have been trying to take the

13  plaintiff's deposition for the past two months, haven't been

14  able to do that.  Your argument now is, Judge, it would be

15  unfair to have plaintiff's deposition taken when I have no

16  documents.  The problem with that is you never sought

17  documents.  You can't delay the deposition indefinitely because

18  you have never requested documents.  That's not fair.

19          MR. STOECKER:  We sought to conserve costs.

20          THE COURT:  I understand that, sir.  And that may have

21  been rational.  But what I am saying to you is you can't delay

22  the deposition of your client indefinitely by not requesting

23  documents.  You can't do that.

24          MR. STOECKER:  Your Honor, if I may, if they could

25  then just give me a week prior to the deposition any documents

ebd2varc

1   they intend to use at the deposition I don't think that's too

2   much to ask for, so we can do this in an orderly, rational

3   fashion, rather than have a deposition in a vacuum and by

4   ambush.

5            THE COURT:  I agree that that may be rational, but I

6   don't think it is required.  What will happen instead, if the

7   plaintiff has not been made familiar with these documents ahead

8   of time is presumably long delays will have to be taken at the

9   deposition while the plaintiff reviews the documents.  This

10   isn't rocket science.  So, sir, if your concern is your client

11   is not going to be familiar with a document, then all your

12   client has to say is, I am going to need some time to read the

13   document, and time will be taken for that purpose.  Do I think

14   that is a rational way to proceed?  No.  But what I am not

15   going to do is allow you to delay your client's deposition

16   because you never requested documents.  That I am not going to

17   permit.

18            MR. STOECKER:  Okay, your Honor.

19            THE COURT:  So if I enter a case management plan,

20   whenever that plan is issued, plaintiff's deposition is to take

21   place within two weeks of that date.

22            So just to review where we are, you are going to tell

23   me by November 18, Mr. Stoecker, whether you want to proceed as

24   an individual action or as a collective action.  If your answer

25   is that you want to proceed as an individual action, then I

ebd2varc

1    will enter a case management plan providing for 90 days of

2    discovery and the order will also provide that plaintiff's

3    deposition is to be taken within a two-week period.

4              In the event that Mr. Stoecker tells me on November 18

5    he wants to proceed in the form of a collective action, then I

6    will give the parties time to submit affidavits that I have

7    referenced, I guess a week to put in affidavits, if they

8    choose, about the issues that we have talked about today.

9              Once I have the parties' submissions, I will rule on

10   the issue of whether it is appropriate for the case to proceed

11   as a collective action.

12             Anything else anyone wants to say?

13             MR. SHAULSON:  Your Honor, could we just have one

14   moment.

15             (Counsel confer)

16             MR. LINTHORST:  Your Honor, we see no reason to delay

17   the plaintiff's deposition for the outcome of plaintiff's

18   intention as to proceed collectively or individual.  His

19   deposition is going to have to be taken either way.

20             MR. SHAULSON:  I think, your Honor, that was what

21   Mr. Soecker was asking.  He was asking whether it's going to

22   proceed individually in any event, so we shouldn't delay things

23   while Mr. Stoecker decides.

24             THE COURT:  I'm not going to require the plaintiff's

25   deposition be taken before I have entered a case management

ebd2varc

1    plan.

2              Anything else?

3              MR. LINTHORST:  No, your Honor.

4              MR. STOECKER:  No, your Honor.

5                              - - -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25