Sam S. Shaulson (SS-0460)
sshaulson@morganlewis.com
Thomas A. Linthorst (TL-3345)
tlinthorst@morganlewis.com
Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
+1.212.309.6718 (Telephone)
+1.212.309.6001 (Fax)
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAJU VARGHESE, | **:** | |
| | **:** | **ELECTRONICALLY FILED** |
| Plaintiff, | **:** | |
| | **:** | **Docket No. 14-CV-1718-PGG** |
| v. | **:** | |
| | **:** | |
| JPMORGAN CHASE & CO. and | **:** | |
| JPMORGAN CHASE BANK, N.A., | **:** | |
| | **:** | |
| Defendants. | **:** | |
| | **:** | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR NOTICE</u>

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 4

    A.    The Meaningful Conditional Certification Standard Under *Myers* And *Glatt* Applies To This Case And Warrants Denial Of Conditional Certification. ............................................................................................ 4

    B.    Plaintiff's Own Testimony Demonstrates That There Is No Common Proof That Would Adjudicate The Merits Of His Claims And Those Of All Other Chase ABMs. ................................................................................ 7

    C.    Plaintiff Offers No Common Proof That Will Determine Whether Chase ABMs Qualify For The Executive Exemption And ABMs Are Not Similarly Situated With Respect To These Issues. ............................... 11

    D.    ABMs Can Be Managers Of A Customarily Recognized Department Or Subdivision Of An Enterprise. ........................................................... 15

    E.    Plaintiff Offers No Common Proof That Will Determine Whether ABMs Qualify For The Administrative Exemption And Plaintiffs And Opt-Ins Are Not Similarly Situated To Other ABMs. ....................................... 17

    F.    Varghese's Claim For Overtime Will Require Adjudication Of His Individual Experience Based On Evidence Specific To Him. ............... 18

    G.    The Court Should Consider All Of The Evidence In The Record ........ 20

    H.    If This Court Were To Permit Any Notice, Which It Should Not, It Should Be Limited Only To The Plaintiff's Branches And Should Not Include Those With Arbitration Agreements .......................................... 22

    I.    If Notice Is Permitted, It Should Be Fair and Accurate ..................... 24

III.  CONCLUSION ................................................................................................ 25

DB1/ 86058996.17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adami v. Cardo Windows, Inc.*,
   299 F.R.D. 68 (D.N.J. 2014) ...........................................................................23

*Ahmed v. T.J. Maxx Corp.*,
   103 F. Supp. 3d 343 (E.D.N.Y. 2015) ................................................................5

*Alli v. Boston Mkt. Co.*,
   2011 WL 4006691 (D. Conn. Sep. 8, 2011) .......................................................25

*Augustyniak v. Lowe's Home Ctr., LLC*,
   2015 WL 5007858 (W.D.N.Y. Aug. 20, 2015) ....................................................7

*Badalamenti v. Dunham's, Inc.*,
   896 F.2d 1359 (Fed. Cir. 1990)........................................................................22

*Barrett v. Forrest Labs., Inc.*,
   2015 WL 5155692 (S.D.N.Y. Sept. 2, 2015)...................................................6, 7

*Boice v. M+W U.S., Inc.*,
   2015 WL 5316115 (N.D.N.Y. Sept. 11, 2015) ...................................................11

*Donovan v. Burger King Corp.*
   675 F.2d 516, 521 (2d Cir. 1982)......................................................................13

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
   595 F. Supp. 2d 200 (N.D.N.Y. 2009)..........................................................24, 25

*Cuevas v. Citizens Fin. Grp.*,
   526 F. App'x 19 (2d Cir. 2013) ..................................................................2, 4, 21

*Czopek v. TBC Retail Group, Inc.*,
   2015 WL 4716230 (M.D. Fla. Aug. 7, 2015) ....................................................23

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) .............................................................................4

*Fischer v. Kmart Corp.*,
   2014 WL 3817368 (D.N.J. Aug. 4, 2014) .....................................................23, 24

*Fraticelli v. MSG Holdings, L.P.*,
   2014 WL 1807105 (S.D.N.Y. May 7, 2014) ........................................................4

*Garcia v. Spectrum of Creations Inc.*,
   102 F. Supp. 3d 541 (S.D.N.Y. 2015)................................................................25

*Garcia v. TWC Admin., LLC*,
   2015 WL 1737932 (W.D. Tex. 2015)................................................................25

*Glatt v. Fox Searchlight Pictures, Inc.*,
   791 F.3d 376 (2d Cir. 2015)................................................................. passim

*Guillen v. Marshalls of MA, Inc.*,
   750 F. Supp. 2d 469 (S.D.N.Y. 2010)..................................................................5

*Guzelgurgenli v. Prime Time Specials Inc.*,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................................................................25

*Hens v. ClientLogic Operating Corp.*,
   2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) ....................................................22

*Hintergerger v. Catholic Health Sys.*,
   2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ....................................................24

*King v. Stevenson Beer Distrib. Co.*,
   11 F. Supp. 3d 772 (S.D. Tex. 2014) ................................................................15

*Miguel v. JPMorgan Chase Bank, N.A.*,
   2013 WL 452418 (C.D. Cal. Feb. 5, 2013)................................................................23

*Mike v. Safeco Ins. Co. of Am.*,
   274 F. Supp. 2d 216 (D. Conn. 2003)................................................................20

*Moore v. PNC Bank, N.A.*,
   2013 WL 2338251 (W.D. Pa. May 29, 2013)................................................................2, 4

*Morangelli v. Chemed Corp.*,
   2010 U.S. Dist. LEXIS 146149 (E.D.N.Y. June 15, 2010) ....................................24

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)................................................................. passim

*Nabi v. Hudson Group (HG) Retail, LLC*,
   310 F.R.D. 119 (S.D.N.Y. 2015) ................................................................7

*Nelson v. Capital One Bank*,
   206 F.R.D. 499 (N.D. Cal. 2001)................................................................21

*Newhall v. Chase Home Fin. LLC*,
   2010 WL 8759340 (M.D. Fla. Dec. 22, 2010) ....................................................23

*Perry v. Randstad Gen. Partner, LLC*,
   2015 WL 2237829 (E.D. Mich. May 12, 2015)................................................................5

*Piscione v. Ernst & Young, L.L.P.*,
   171 F.3d 527 (7th Cir. 1999) ....................................................................18

*Rudd v. T.L. Cannon Corp.*,
   2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)............................................3, 22

*Ryan v. JPMorgan Chase & Co.*,
   924 F. Supp. 2d 559 (S.D.N.Y. 2013)........................................................23

*Scherer v. Compass Grp. USA, Inc.*,
   340 F. Supp. 2d 942 (W.D. Wisc. 2004)....................................................16

*Sharma v. Burberry, Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) .........................................................25

*Sheets v. Caliber Home Loans, Inc.*,
   2015 WL 7756156 (N.D.W.Va. Dec. 1, 2015) ...........................................22

*Till v. Saks Inc.*,
   2013 WL 5755671 (N.D. Cal. Sept. 30, 2013) ...........................................16

*Vargas v. HSBC Bank USA, N.A.*,
   2012 WL 10235792 (S.D.N.Y. Aug. 9, 2012).............................................21

*Witteman v. Wis. Bell, Inc.*,
   2010 WL 446033 (W.D. Wis. Feb. 2, 2010)...............................................25

**STATUTES**

29 U.S.C. § 216(b) ...........................................................................................9

**OTHER AUTHORITIES**

29 C.F.R. § 541.2 ............................................................................................6

29 C.F.R. § 541.100 .........................................................................................6

29 C.F.R. § 541.100(a) ...................................................................................11

29 C.F.R. §541.100(a)(2) ...............................................................................15

29 C.F.R. § 541.102 .......................................................................................14

29 C.F.R. § 541.103(a) ...................................................................................15

29 C.F.R. § 541.105 .......................................................................................12

29 C.F.R. § 541.106 .......................................................................................15

29 C.F.R. § 541.200 ................................................................................................................6, 17

29 C.F.R. § 541.202(b) ................................................................................................................17

29 C.F.R. § 541.202(c) ................................................................................................................17

29 C.F.R. § 541.700 ......................................................................................................................6

29 C.F.R. § 541.708 ....................................................................................................................18

# I.  INTRODUCTION

Plaintiff Saju Varghese is a former Assistant Branch Manager ("ABM") employed by JPMorgan Chase Bank, N.A. ("Chase") who seeks overtime pay and asks this Court to conditionally certify a nationwide collective of over 6,000 individuals.  To obtain conditional certification, Plaintiff's counsel represented to this Court, and Plaintiff swore in his attorney-drafted and conclusory declaration, that Plaintiff knows what duties all other ABMs nationwide perform.  At his deposition, however, Plaintiff testified to the exact opposite, repeatedly stating under oath that he had no idea what duties other ABMs performed.  Varghese Dep. at 120-21, 265-68.  He had no idea whether other ABMs had the authority to hire branch personnel (Varghese Dep. at 120:23-121:11); he had no idea whether other ABMs had the authority to fire other branch personnel, or whether their recommendations as to firing were given weight (Varghese Dep. 266:2-13); he had no idea how closely other ABMs were supervised (Varghese Dep. at 268:21-269:2); and he had no idea how much time other ABMs spent on teller duties, or in fact how much time they spent on *any* of their duties.  Varghese Dep. at 268:12-20.  Plaintiff further testified at his deposition that he was completely unfamiliar with ABMs in certain job classifications, such as the in-store ABM.  Varghese Dep. at 321-22.  Despite his burden on this motion to prove that other ABMs were similarly situated to him, Plaintiff admitted that ***his duties were materially "different" than the duties of another ABM.***  Varghese Dep. at 417-29; 421:4-5, 421:9-12-13, 425:24-426:11.  He further admitted that the only way to know whether other ABMs performed the job duties that will be central to the exemption questions in this case – supervisory and managerial duties – would be to ask each ABM or their manager.  Varghese Dep. 258:23-259:4, 261:6-15, 268:5-11.

The Second Circuit held in *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 388 (2d Cir. 2015), that where the plaintiff has failed to identify "common proof" that answers the key

liability questions, and where the plaintiff's claim requires consideration of the "individual aspects of the [employee]'s experience[,]" a district court abuses its discretion by granting conditional certification.  Indeed, Plaintiff's conclusory statement in his declaration that the job duties of all other ABMs are the same, while disavowing knowledge to support that statement in his deposition, is exactly the type of "unsupported assertion" that the Second Circuit has held is insufficient to justify conditional certification.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Courts reviewing bank ABM misclassification claims in similar circumstances have reached the same conclusion and denied certification.  *See Moore v. PNC Bank, N.A.*, 2013 WL 2338251, at *4-6 (W.D. Pa. May 29, 2013) (denying conditional certification in case involving misclassification claims of ABMs); *cf. Cuevas v. Citizens Fin. Grp.*, 526 F. App'x 19, 21-22 (2d Cir. 2013) (vacating class certification in an ABM misclassification case because disputes over whether ABM duties varied "are relevant to the determination whether Cuevas has presented a claim that is capable of classwide resolution").

Plaintiff further admitted at his deposition not only that his duties were different than another ABM, but also that his managers imposed unique requirements upon him that differed from written policies (Varghese Dep. 294-96, 310, 314-17), and that he did not even take the same training other ABMs took.  Varghese Dep. at 83-90.  Indeed, a whole host of ABMs testified that their duties were different from those of Plaintiff.  Plaintiff claims that he spent 60-70% of his time on the teller line (Varghese Decl. ¶ 8), while another ABM testified that he spent 80% of his time on management duties (Angarita ¶ 15).  (The declarations of other ABMs are attached to the Linthorst Declaration submitted herewith).  Plaintiff claims that he had little responsibility for hiring, discipline, or terminating tellers (Varghese Decl. ¶ 13), while other ABMs had supervisory authority that ranged "from hiring and performance reviews to promotion recommendations and terminations" (Garcia Decl. ¶ 2).  Plaintiff claims that he did not plan or

2

direct the work of his tellers (Varghese ¶ 19), while other ABMs regularly planned and directed

teller work (Garcia ¶ 2).  Plaintiff is not similarly situated to all other ABM nationwide.

Finally, not only does the evidence introduced by Plaintiff provide no basis for

certification, but the evaluation of his *own* duties will necessarily turn on highly individualized

fact determinations.  For example, Plaintiff's pre-litigation description of his job duties as a

Chase ABM stated that he ███████████████████████████████████████████

███████████  Varghese Dep. at 38-39, 395, Ex. 1.  And pre-litigation documents he and his

manager authored during his employment show that he was responsible for recruiting,

interviewing and hiring tellers, supervising and disciplining tellers, recommending tellers for

promotion and for termination, and making exceptions to policies when he determined them to

be appropriate.  By contrast, Plaintiff now says he spent almost all his time doing teller duties,

that his managers were the ones who made all decisions, and that his input carried little or no

weight.  Although Chase is not asking this Court to make any credibility determinations at this

point, the fact that Plaintiff's testimony contradicts much of the contemporaneous documentary

evidence suggests that even liability with respect to Plaintiff's own overtime claims will turn on

individual factual issues.

Given that Plaintiff does not know what other ABMs did, knows at the very least they

performed duties materially different than him on the important issues in this case, knows that

the only way to find out what duties an ABM performed is individual-by-individual, and totally

contradicted his own pre-litigation representations about duties he performed, Chase should not

be forced to spend hundreds of thousands, if not millions, of dollars defending a nationwide

collective action involving over 6,000 individuals.  *See Rudd v. T.L. Cannon Corp.,* 2011 WL

831446, at *6 (N.D.N.Y. Jan. 4, 2011) (courts must be "mindful of the potential burdens

associated with defending against an FLSA claim involving a large and broadly defined

collective group of plaintiffs" and avoid "the potential for overreaching [which] would result in loss of the efficiencies").  As explained further below, Plaintiff's motion should be denied.

## II. ARGUMENT

### A.  The Meaningful Conditional Certification Standard Under *Myers* And *Glatt* Applies To This Case And Warrants Denial Of Conditional Certification.

The Second Circuit has repeatedly made clear that there is a meaningful standard that a plaintiff must meet before a district court can grant conditional certification.  In *Myers*, the Second Circuit ruled that conditional certification is only appropriate if a plaintiff makes a "'factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a ***common*** policy or plan ***that violated the law***.'"  *Myers*, 624 F.3d at 555 (emphasis added).  This "'factual showing' cannot be satisfied simply by 'unsupported assertions . . . .'"  *Id.*  Plaintiff must show that he and other ABMs actually are similarly situated, not simply that they "may" be similarly situated.  *See Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *4 (S.D.N.Y. May 7, 2014) (denying conditional certification where plaintiff failed burden under *Myers* to show a "common policy or plan that violated the law" and noting that other decisions had misapplied the standard by authorizing notice on a showing that class members "may" be similarly situated).

Courts have denied certification of overtime claims by bank Assistant Branch Managers after finding that the central issues of liability could not be adjudicated by common proof.  *See Moore*, 2013 WL 2338251, *4-6 (denying conditional certification and holding that an across-the-board exemption policy for all ABMs, common job description, and allegations by plaintiff that ABMs had same job duties were insufficient for certification); *Cuevas*, 526 F. App'x at 21-22 (vacating class certification of ABM overtime claims because there was no "common question capable of classwide resolution" due to conflicting evidence concerning ABM job

4

duties).[1]  Plaintiff does not cite a single case where a bank ABM misclassification case was conditionally certified.

Following *Myers*, a number of other cases in this Circuit and elsewhere have denied certification of putative class or collective actions involving assistant store or branch managers. *See, e.g.*, *Perry v. Randstad Gen. Partner, LLC*, 2015 WL 2237829, at *1, *4-6 (E.D. Mich. May 12, 2015) (granting employer's motion for summary judgment and denying motion for conditional certification as to misclassification claims of assistant branch manager and other employees at staffing agency); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 351-57 (E.D.N.Y. 2015) (refusing to set aside order denying conditional certification of a nationwide collective action of assistant managers due to lack of common proof and testimony showing assistant managers performed different duties relevant to the executive exemption); *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (denying conditional certification because plaintiff failed to "show that he and the other ASMs were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description.").

Last year, the Second Circuit addressed the conditional certification standard in *Glatt* and vacated the district court's order granting conditional certification because "[n]one of the common proof identified [by the plaintiff], and relied upon by the district court, will address" the key questions to establish liability, thereby requiring consideration of "the individual aspects of the intern's experience." *Glatt*, 791 F.3d at 388.  The court held that certification must be denied

---

[1]  Although the test for Rule 23 certification is not the same as the test for conditional certification under the FLSA, both seek to determine whether the issues of liability and damages are capable of being proven for the entire class with common evidence.  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (Posner, J.) (considerations of judicial efficiency "are as relevant to collective actions as they are to class actions[,]" and, as a result, "there isn't a good reason to have different standards for the certification of the two different types of action").

even though plaintiffs pointed to common evidence "relevant" to the issue of whether interns were employees, because the evidence did not answer the question, leaving "the most important question in this litigation" unable to "be answered with generalized proof." *Id.* Under *Glatt*, a district court abuses its discretion by granting conditional certification where there is no "common proof" that answers the key liability questions and the plaintiff's claim requires consideration of "the individual aspects of the [employee]'s experience." *Id.*[2]

Plaintiff argues that *Glatt* should be limited to its facts and has no application to an FLSA exemption misclassification case. Plaintiff's logic is faulty. *Glatt* also involved FLSA claims and dealt with the question of whether certain individuals were exempt from the minimum wage and overtime requirements of the FLSA based on a multi-factor test. *Glatt*, 791 F.3d at 384, 388. Just like the employee misclassification test at issue in *Glatt*, the administrative, executive and combination exemption tests look to a number of factors, 29 C.F.R. §§ 541.100, 541.200, 541.700, and just as in *Glatt*, these claims cannot be conditionally certified where Plaintiff has not identified common evidence that resolves the central questions in the case.

In further support of his argument that the conditional certification standard in *Glatt* should not be applied here, Plaintiff quotes from *Barrett v. Forrest Labs., Inc.*, 2015 WL 5155692, *1 (S.D.N.Y. Sept. 2, 2015), but fails to mention that *Barrett* is a sex discrimination case under Title VII and the Equal Pay Act, and not an FLSA misclassification case. An FLSA misclassification case often requires individualized inquiries into the duties performed by each

---

[2] Significantly, even the purportedly "common" fact that Plaintiff premised his motion upon – that all ABMs are classified by Chase as exempt from overtime (Pl's Mem. p. 1) – is simply incorrect. *See Taylor v. JPMorgan Chase Bank, N.A. et al, 15-cv-03023-PGG,* Opp. pp. 18-20 & n.48 (Dkt. No. 34). And even if true, common exemption classification is insufficient to warrant conditional certification under controlling Second Circuit authority. *Glatt*, 791 F.3d at 387-88 (unpaid interns in the proposed collective action were not similarly situated despite the fact that they uniformly were classified as non-employees and not paid for the time they worked); *Myers*, 624 F.3d at 549 ("the fact of common exemption does not establish whether all plaintiffs were actually entitled to overtime pay or whether they were covered by the applicable administrative regulations defining FLSA's exemptions").

individual with the job title at issue.  *See* 29 C.F.R. § 541.2 (stating that exemption status cannot be determined by job title, and the exempt or non-exempt status of any particular employee must be determined on the basis of their actual job duties and compensation).  By contrast, *Barrett* concluded that the Equal Pay Act claim at issue could potentially be proven with statistical evidence of compensation to the extent it showed statistically significant pay disparity between men and women in the same position with similar experience.  *Barrett*, 2015 WL 5155692, at *3-4.  Thus, *Barrett* does nothing to undermine *Glatt*'s application to overtime claims; it just ruled that the requirement for common proof was met in that Equal Pay Act case.  *Compare Barrett*, 2015 WL 5155692, *with Augustyniak v. Lowe's Home Ctr., LLC*, 2015 WL 5007858, *2-3 (W.D.N.Y. Aug. 20, 2015) (citing *Glatt* and denying conditional certification of class of human resource managers claiming to be misclassified as exempt under FLSA because plaintiff did not make requisite showing that she was similarly situated to other putative collective action members where a number testified they participated in hiring and other significant decisions), and *Nabi v. Hudson Group (HG) Retail, LLC*, 310 F.R.D. 119, 122-24 (S.D.N.Y. 2015) (post-*Glatt* case denying conditional certification for assistant managers claiming to be misclassified on the basis that there was no common evidence that could demonstrate they all performed the same duties nationwide, and there was evidence to the contrary showing differences in duties).

## B.  Plaintiff's Own Testimony Demonstrates That There Is No Common Proof That Would Adjudicate The Merits Of His Claims And Those Of All Other Chase ABMs.

To evaluate whether the Court should authorize notice, the Court must consider how Plaintiff's claims will be proven.  *Myers*, 624 F.3d at 548-49.  Here, Plaintiff offers no common proof that is capable of answering whether all ABMs fall within the executive, administrative, or combination exemptions.  Rather, Plaintiff's deposition testimony confirms that he does not know the job duties of any other ABM.  Plaintiff's own testimony, as well as the testimony of other ABMs, confirms that their job duties were materially different.

7

At deposition, Varghese disclaimed any knowledge of other ABMs' job duties.  When asked whether this case involved other ABMs' claims, Plaintiff testified, "I'm concerned only about my case.  I don't know.  I didn't go after anything else."  Varghese Dep. at 38:2-19, 443:22-444:5.  Moreover, although Plaintiff filed a declaration in support of his motion claiming that "[t]o the best of my knowledge, all of defendants [sic] ABMs nationwide had the same duties and responsibilities," Varghese Decl. ¶ 20, in his deposition Plaintiff consistently disclaimed any knowledge of the job duties of other ABMs.  Varghese Dep. at 215:15-20, 258:6-22, 259:5-260:22, 261:19-263:4, 264:10-24, 266:2-268:4, 353:5-9.[3]  In areas relevant to the executive, administrative, or combination exemptions, Plaintiff professed ignorance directly contrary to his declaration:

| Issue | Declaration Statement | Deposition Testimony |
|---|---|---|
| Hiring | "[t]he ABMs did not have authority to . . . hire, fire or discipline branch personnel of their own accord," Varghese Decl. ¶ 13 | "Q.  Do you know whether other ABMs made any hiring decision?  [Objection].  A.  I'm not sure.  I don't know."  Varghese Dep. at 121:4-11.<br><br>"Q.  Do you know if other ABMs ever interviewed teller candidates without their BM?  A.  I don't know about that either. . . . Q.  Well, do you participate in any hiring decisions by another ABM?  A.  No. . . . Q.  Do you know whether, if another ABM made a recommendation to their manager to hire a teller, whether their manager relied on that |

---

[3] Even if Plaintiff had not contradicted his declaration by testifying at his deposition that he did not know what other ABMs did, his declaration statement that he knew what all other ABM did nationwide would still need to be excluded because it lacks foundation.  Plaintiff stated in his declaration that he was responsible for assisting some ABMs at different branches in the 1990s when he was a Traveling Operations Specialist at Chase Manhattan Corporation (Ex. C. to Plaintiff's Brief - Varghese Decl. ¶¶ 2-3, 20).  What he observed at a few branches at a predecessor company two decades before the relevant period is not evidence of how ABMs performed their duties within the last three years of Chase.  Similarly, although Plaintiff stated in his declaration that he trained ABMs in Nassau County during his time as an ABM (Varghese Decl. ¶¶ 10, 20), he merely reviewed certain policies with them and did not observe the actual duties.  He cannot speak to anything outside of Nassau County, much less how ABMs performed their duties nationwide.  Varghese Dep. at 258-68 (not involved in any decision by any other ABM to hire, discipline, or terminate other employees).

| | | |
|---|---|---|
| | | recommendation?  [Objection]  A. I'm not sure either. "  Varghese Dep. at  259:5-260:22. |
| Termin-ation | "[t]he ABMs did not have authority to . . . hire, fire or discipline branch personnel of their own accord," Varghese Decl. ¶ 13 | "Q. Do you know whether other ABMs ever recommended that a teller or another employee should be terminated?  A. I'm not sure if they can do that.  I'm not aware of that.  Q.  Do you know if they did recommend another employee to be terminated whether their manager relied on their recommendation?  A.  I won't be able to answer that.  Q.  Why not?  A. I don't know."  Varghese Dep. at 266:2-13. |
| Discip-line | "[t]he ABMs did not have authority to . . . hire, fire or discipline branch personnel of their own accord," Varghese Decl. ¶ 13 | "Q.  Do you know whether other ABMs gave their opinion on what should happen in a teller discipline situation?  A.  I'm not sure.  I don't know.  Q.  If they did give their opinion as to what should happen in a teller discipline situation, do you know whether their manager relied upon their opinion?  [Objection].  A.  I'm not sure.  I'm not aware of it."  Varghese Dep. at 264:10-24. |
| Super-vising | Plaintiff spent 60-70% of his time on teller or routine customer service duties.  Varghese Decl. ¶ 8. "[A]ll ABM nationwide had the same duties and responsibilities."  Varghese Decl. ¶ 20. | Plaintiff testified that he did not know how much time other ABMs spent on teller duties or how much time they spent on *any* of their duties. Varghese Dep. at 268:18-20.  Plaintiff testified that he did not know how closely other ABMs were supervised.  Varghese Dep. at 268:21-269:2. |

Plaintiff's counsel vehemently objected to such questions about other ABM duties on the grounds that "it calls for speculation."  Varghese Dep. at 266:14-18.  Indeed it does, which is reason enough for denying conditional certification.

In addition, Plaintiff did not have knowledge of other ABM positions at issue.  As explained in the Defendants' Opposition to the Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) in *Taylor*, there are several different exempt ABM positions that have different training and roles and responsibilities – including ABM, ABM-Ops, ABM In-Store III, and ABM In-Store IV.  *See* Exs. 8 & 9 to Linthorst Decl. in opposition to Pls' Motion for Notice in *Taylor* (Isner Decl. ¶ 3.c. (listing different ABM job titles)) (Dkt. No. 53-29); (Bartone Decl. ¶ 2 and Ex. A (attaching ABM trainee curriculum maps reflecting different training for different

types of ABM)) (Dkt. No. 53-27, 53-28).[4]  Plaintiff had no knowledge of certain of these

positions or what duties they perform.  Varghese Dep. at 321-22.

Varghese also could not identify any common proof that would answer the central

questions of liability in this case and was unaware of any way to determine the job duties of

other ABMs other than to ask them.  Varghese Dep. 258:23-259:4, 261:6-18, 268:5-11.  A

comparison of Plaintiff's declaration to those of other ABMs further confirms that he was not

similarly situated to all other ABMs.  When shown the testimony of another ABM, Varghese

confirmed that his job duties were "different" than those duties – supervision and management –

that will be central to the issues in this case.  Varghese Dep. at 420:25-421:13:  ("Q. . . . I'm

asking if his description of what he did accurately describes a job responsibility you had as a

Chase ABM?  A.  We had a different practice, like I said, the hiring, all those things.  Q.  He

says in paragraph 4:  'After I complete the process, I decide which candidate to hire.'  Is that an

accurate description of your responsibilities with respect to hiring as a Chase ABM?  A.  The

process over here was different.  Not like that."); *see also* Varghese Dep. at 417-28, and 421:4-5,

421:12-13, 425:24-426:11.

Although Plaintiff points out that conditional certification has been granted in some cases

where defendants have submitted a larger number of declarations than those submitted by Chase

(Pl's Br. at 4), the question of conditional certification is not simply a numbers game.[5]  Rather,

---

[4] Plaintiffs in *Taylor* indicated that they intended to exclude the ABM – Sales position from the
class.  Plaintiffs' Brief in Support of Court Authorized Notice in *Taylor*, at 1 n.1. (Dkt. No. 31).
They also indicated that the basis for their certification motion was the misclassification of
ABMs as exempt, which Chase understood to mean that they did not seek to include within the
class the ABM positions that are classified by Chase as non-exempt.  Plaintiff in this case seeks a
collective that is the same in scope as that sought in *Taylor*.

[5] Although Plaintiff points out that conditional certification has been granted in some cases
where defendants have submitted a larger number of declarations than those submitted by Chase
(Pl's Br. at 4), the question of conditional certification is not simply a numbers game.  Rather,
the question is whether, in each case, the plaintiff has met his burden to demonstrate that the

the question is whether, in each case, the plaintiff has met his burden to demonstrate that the issues central to the case can be adjudicated by common proof and will not require consideration of the employee's individual experience.  Plaintiff has not done so here.

### C. Plaintiff Offers No Common Proof That Will Determine Whether Chase ABMs Qualify For The Executive Exemption And ABMs Are Not Similarly Situated With Respect To These Issues.

To qualify for the executive exemption, the employee must "customarily and regularly direct[] the work of two or more other employees," have a primary duty of management and be a person who has the "authority to hire or fire other employees *or* whose suggestions and recommendations as to the hiring, firing, advancement, promotion *or* any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a) (emphasis added). Plaintiff admits he was responsible for making sure all the tellers in his branches adhered to Chase policies and procedures, but claims that he did not "plan or direct the work performed by them" and played no role in supervising bankers.[6]  Varghese Decl. ¶ 19.  He also claims that he did not "have the authority to create new job positions, or to hire, fire or discipline branch personnel *of [his] own accord*" and that his role was just to "gather and pass along information to BMs, DMs and HR who were responsible for decision-making with regard to personnel."

---

issues central to the case can be adjudicated by common proof and will not require consideration of the employee's individual experience.  Moreover, the cases cited by Plaintiff were decided before the Second Circuit's decision in *Glatt*, and the one post-*Glatt* case cited, *Boice v. M+W U.S., Inc.*, 2015 WL 5316115, at *8, *12-13 (N.D.N.Y. Sept. 11, 2015), denied conditional certification on the basis that plaintiff's contention that he knew all designers had similar job duties and were misclassified as exempt failed to establish that he and the rest of the putative class were subject to a common unlawful policy.

[6] Plaintiff's declaration contradicts his pre-litigation resume, which states that he ███████████████████████ and that he ███████████████████████████████████████████████████████████ ███████████████████████████████████  Varghese Dep. Ex. 1.  Even if Varghese's affidavit is credited, however, it simply reflects that Plaintiff is not similarly situated to all other ABMs.

Varghese Decl. ¶ 13 (emphasis added).[7]  In contrast, other ABMs testified that their responsibilities are entirely different – that they directly supervise up to 10 tellers and customarily and regularly direct their work,[8] or that they direct the work of personal bankers in addition to tellers.[9]  Some even performed branch manager duties for extended periods when the branch manager role was vacant.[10]  In addition, other ABMs testified that they are the ones responsible for decisions to hire, terminate, or make other changes in status.[11]  Varghese claimed that it was his District Manager and HR who were responsible for hiring, firing, promoting or setting rates of pay,  Varghese Decl. ¶ 16, but some ABMs testified that they make hiring decisions with little input from their managers,[12] and others collaborate with their manager

---

[7]  The fact that Plaintiff claims he was not able to make these decisions "of his own accord" is legally irrelevant.  "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. The additional factors a court considers to determine whether a recommendation is given particular weight "include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." *Id.*

[8]  Garcia ¶ 2 ("I manage and supervise all 10 bank tellers at my branch" including "planning and directing the work of my tellers each day"); Angarita ¶¶ 7-8 ("I also directly supervise all 10 bank tellers in my branch" and "assign tellers different tasks based on [branch] needs"); Ventura ¶ 8 (supervises 2 full-time and 4 part-time tellers); Salcedo ¶ 2 ("I supervise eight part-time tellers."); Franklin ¶ 2 (supervises 7 tellers).

[9]  Salcedo ¶ 2 (supervises both personal bankers and tellers).

[10]  Ventura ¶ 15 ("From April 2015 until July 2015, I served as Acting Branch Manager at my branch because the Branch Manager role was vacant.").

[11]  Garcia ¶ 2 (his supervisory "responsibility covers all aspects of a teller's employment with Chase – from hiring and performance reviews to promotion recommendations and terminations."); Franklin ¶ 2 ("I handle all facets of my teller's employment with Chase."); Ventura ¶ 4 ("heavily involved"); Angarita ¶ 10 ("integral role").

[12]  Garcia ¶ 4 ("I have hired approximately 18 tellers during my employment with Chase."); Angarita ¶ 10 ("I conduct all initial interviews," and "my [hiring] recommendation carries great weight"); Salcedo ¶ 3 ("I am responsible for hiring the tellers at my branch.").

throughout the hiring process.[13]  Similarly, although Varghese claims that he had no authority to

make compensation decisions and that his recommendations regarding promotion or other

changes in branch employees' status rarely were followed, Varghese Decl. ¶ 17, some ABMs

testified to having responsibility for making promotion or compensation recommendations that

are given particular weight,[14] and for making termination decisions or recommendations that are

generally followed.[15]

Finally, although Plaintiff in his declaration disclaims performing managerial duties other

than teller training, completing teller performance reviews and making sure they adhered to

policies (Varghese Decl. ¶¶ 9-10, 17, 19), other ABMs testified to performing many of the duties

identified by the regulations as being "management," such directing employees' work,[16] setting

and adjusting their hours,[17] handling employee complaints,[18] disciplining employees,[19]

---

[13]  Ventura ¶ 4 ("[M]y Branch Manager will ask me who I would like to select and we will make
the final decision together."); Franklin ¶ 2 ("[T]he Branch Manager and I work together to select
the best person for the job.  He gives significant weight to my hiring recommendations because
of my operations expertise and managerial experience.").

[14]  Angarita ¶ 13 ("[T]he Branch Manager or District Manager consistently follow my advice and
promote those that I have recommended."); Franklin ¶ 6 ("I provide recommendations about
what bonus amount each teller should receive.  My recommendations are normally adopted
because I know the most about each teller's performance"); Salcedo ¶ 8 ("I also decide whether
to recommend my tellers for promotion.").

[15]  Salcedo ¶ 9 ("I have terminated the employment of four different tellers over the past two
years."); Garcia ¶ 16 ("I also have responsibility for deciding whether to terminate the
employment of the tellers I supervise."); Franklin ¶ 8 ("I also have responsibility for termination
decisions.").

[16]  Angarita ¶ 9 ("I also assign and direct the work of my tellers, including responsibilities for
things like the vault, ATMs, travelers checks, and keys to the Branch."); Garcia ¶ 2 ("I manage
and supervise all 10 bank tellers at my branch" including "planning and directing the work of my
tellers each day"); Ventura ¶ 8; Salcedo ¶ 6.

[17]  Franklin ¶ 4 ("I also am responsible for scheduling, time off requests, and time sheets for all
tellers."); Ventura ¶ 6 ("I do not need Branch Manager approval to issue or change the teller
work schedule."); Salcedo ¶ 5; Angarita ¶ 7; Garcia ¶ 7.  *Donovan v. Burger King Corp.*, 675
F.2d 516, 521 (2d Cir. 1982) (assistant manager performed exempt duties where "[t]hey schedule
work time for employees according to estimates of business based on factors such as weather and
local events and assign them to particular work stations.").

13

maintaining production or sales records for use in supervision,[20] apportioning the work among employees,[21] purchasing supplies,[22] providing for the safety and security of the employees or the property,[23] and monitoring or implementing legal compliance measures.[24]  *See* 29 C.F.R. § 541.102.  Plaintiff claims in his declaration that he spent 60-70% of his time working as a teller and performing routine customer service functions.  Varghese Decl. ¶ 8.  Other ABMs, however, testified to the opposite – that their primary duties were management,[25] that they spent most of their time on managerial duties and that those are their most important duties.[26]  Moreover, to the extent that Plaintiff claims he spent the majority of his time on the teller line, the Court would still need to determine whether he was simultaneously performing managerial tasks as some

---

[18]  Angarita ¶ 4 ("I almost always handle and resolve employee and customer issues and complaints without the assistance of the Branch Manager.").

[19]  Salcedo ¶ 9 ("I also discipline my tellers."); Garcia ¶ 15; Franklin ¶ 7; Angarita ¶ 14.

[20]  Franklin ¶ 15 ("monitor[s] cash flow and Branch performance indicators so that I can manage the tellers and improve Branch performance"); Salcedo ¶ 11.

[21]  Angarita ¶ 9 ("In deciding which tellers are best suited for different responsibilities, I consider a number of factors, including the tellers' level of experience"); Salcedo ¶ 6.

[22]  Garcia ¶ 18.

[23]  Franklin ¶ 12 ("I do these things to help ensure the safety of the Branch employees and customers and to protect the assets at the Branch."); Angarita ¶ 3; Garcia ¶ 19.

[24]  Garcia ¶ 17 ("I ensure all branch employees . . . are in compliance with all applicable policies and procedures . . . ."); Ventura ¶ 11 ("As part of my responsibilities for managing teller operations, I conduct unannounced audits of my tellers' cash boxes.").

[25]  Angarita ¶ 15 ("My duties as a manager definitely are the most important duties I have."); Garcia ¶ 20 ("Management and supervisory duties are my most important job duties and take up the majority of my day."); Ventura ¶ 2 ("I definitely am a manager as an ABM.").

[26]  Angarita ¶ 15 ("I perform managerial tasks approximately 80% of the time."); Garcia ¶ 20 ("Typically 80% of my day consists of supervising my tellers and managing the operations of the branch, and some days these duties [managerial] duties are 100% of my day"); Franklin ¶ 15 ("I spend about seventy percent ("70%) of my time" on supervisory duties; only 10% of time at teller window); Salcedo ¶ 15 (50% of time supervising tellers and bankers; 30% of time managing branch operations; only 5% of time on teller or banker line).

14

other ABMs did.[27]  29 C.F.R. § 541.106 ("Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption.").[28]

Chase does not ask the Court at this time to make any merits findings or credibility determinations.  Plaintiff testified he does not know what other ABMs did, and none of the evidence submitted by Plaintiff addresses, much less contradicts, testimony by other ABMs as to their own job duties.  Conditional certification should be denied because, under *Glatt*, Plaintiff provides no common proof to determine whether all ABMs meet the elements of the executive exemption and the evidence demonstrates that ABMs are not similarly situated with respect to these issues.  *Glatt*, 791 F.3d at 387-88.

## D. ABMs Can Be Managers Of A Customarily Recognized Department Or Subdivision Of An Enterprise.

Plaintiff also argues that he and other ABMs did not manage "a customarily recognized department or subdivision" of the enterprise.  29 C.F.R. §541.100(a)(2).  Plaintiff does not cite any cases in support of his argument and Plaintiff is wrong that an employee must be in charge of the "branch as a whole" to be eligible for the executive exemption.

"The phrase 'a customarily recognized department or subdivision' is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function."  29 CFR § 541.103(a).  Those ABMs who supervised the bank's tellers supervised a team that had permanent status and function.  Varghese Dep. at 387:12-16 (bank branch always had a teller line).  *See, e.g., King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 782 (S.D. Tex. 2014) (holding that a team

[27]  Ventura ¶ 16 (even when "I work on the teller line assisting customers," bank "tellers still approach me about issues" and "I also continue to observe and supervise my tellers"); Garcia ¶ 20.

[28]  "Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700."  29 C.F.R. § 541.106.

leader for a beverage distribution company managed a "customarily recognized department or subdivision" where his team of salesmen, drivers, merchandisers and helpers was organized according to geography and sales volume, and it had a permanent status and function); *Till v. Saks Inc.,* 2013 WL 5755671, at *6 (N.D. Cal. Sept. 30, 2013) (stating that  assistant managers who were responsible for managing "a shift of specific workers who perform the same primary function" were likely to be supervising a customarily recognized department or subdivision, but denying class certification based on dissimilarities in duties and responsibilities of assistant managers that would prevent common answers).  There is no requirement that the employee be in charge of something officially called a "department" to qualify for the executive exemption, so the fact that Chase does not call the customarily recognized group of tellers in each branch a "teller department" is irrelevant.  *See, e.g., Scherer v. Compass Grp. USA, Inc.*, 340 F. Supp. 2d 942, 950-52 (W.D. Wisc. 2004) (holding that a chef could meet the executive exemption standard because a kitchen could be a *customarily* recognized department or subdivision; there was no need for formal recognition of the kitchen as a department or division or for documents or materials referring to a "kitchen department.").

Further, some ABMs had overall responsibility for the branch.  Varghese himself described his responsibilities as "[m]anaged and supervised retail branch with more than 20 employees."  Varghese Dep. at 38-39, 394-97.  Other ABMs testified that they had responsibility for the overall operations of the entire branch.  Garcia ¶ 17 (responsible for managing branch operations for the entire branch and ensuring "all branch employees, including bankers and tellers" are in compliance with all applicable policies and procedures).  Still other ABMs supervised all of the branch's line employees – tellers and personal bankers.  Salcedo ¶ 2; Ventura ¶ 15.  And, as noted, even those that supervised only tellers would meet this requirement.

16

Most importantly for present purposes, this is simply another issue for which there is no common proof, the evidence shows variation in the scope of ABMs' responsibility, and the Court will be required to examine the individual experience of each ABM to adjudicate his or her claim for overtime.

**E.  Plaintiff Offers No Common Proof That Will Determine Whether ABMs Qualify For The Administrative Exemption And Plaintiffs And Opt-Ins Are Not Similarly Situated To Other ABMs.**

Plaintiff also offers no common proof to support his claim that ABMs do not qualify for the administrative exemption.  The administrative exemption requires that an employee have a primary duty that (1) consists of the performance of non-manual work; (2) is directly related to management policies or general business operations of the employer or the employer's customers; and (3) includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200.[29]  Although Plaintiff claims that he "had no responsibility for formulating branch policies or goals or for formulating or developing new products or services," (Varghese Decl. ¶ 12), other ABMs testified to performing duties that are specifically identified in the regulations as exempt work under the administrative exemption.  29 C.F.R. § 541.202(b).  These duties include implementing management policies or operating practices,[30] performing work that affects business operations to a substantial degree,[31] carrying

---

[29]  As with the executive exemption, making recommendations qualifies as exempt work and the employee need not make the decision or have final authority.  29 C.F.R. § 541.202(c) ("The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.").

[30]  Garcia ¶ 17 ("I am responsible for managing all branch operations," which "requires that I ensure all branch employees, including bankers and tellers, are in compliance with all applicable policies and procedures"); Franklin ¶¶ 10-11; Salcedo ¶¶ 11-12; Angarita ¶ 2; Ventura ¶ 10.

[31]  Franklin ¶ 10 ("I also review many transactions that are escalated to me as a manager because the transaction has raised a flag that might indicate improper conduct, and I decide how we should handle."); Angarita ¶ 8 ("I run daily meetings of branch personnel"); Garcia ¶¶ 5, 10.

out major assignments in conducting the operations of the business,[32] having authority to waive

or deviate from established policies and procedures without prior approval,[33] and representing

the company in handling complaints.[34]   Additionally, because supervisory and managerial duties

also qualify as exempt work under the administrative exemption, the differences between

Plaintiff's and other ABM's testimony set forth in Section C likewise demonstrate that Plaintiff's

claims regarding the  the administrative exemption cannot be proven with common evidence.

*See, e.g.*, *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535-37 (7th Cir. 1999) (supervisory

duties such as assigning work, training more junior employees, setting priorities for the other

members of his team, interviewing, and making recommendations for hiring were exempt

administrative duties) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir.

2013).[35]

**F.  Varghese's Claim For Overtime Will Require Adjudication Of His Individual Experience Based On Evidence Specific To Him.**

Varghese's testimony further confirmed that his own claim for overtime will be

adjudicated by individualized evidence specific to him.  The proof that Varghese supervised

tellers and managed branch operations will consist of his own pre-litigation descriptions of his

---

[32]  Franklin ¶ 10 ("The Branch is a target for fraud and criminal activity, and I have responsibility as the manager of Branch operations to mitigate those risks."); Salcedo ¶ 11-13 ("To help maintain our branch's profitability, I work in conjunction with our Branch Manager to make sure that our bankers are finding the right sales opportunities."); Garcia ¶ 17; Angarita ¶ 2.

[33]  Angarita ¶ 5 ("I have the authority to make certain exceptions to bank policy," including cashing a check for an amounts greater than a customer's account balance); Ventura ¶ 12 (noting that granting exceptions could result in losses to the bank and other consequences for which the ABM "take[s] full responsibility"); Franklin ¶ 11.

[34]  Angarita ¶ 4 ("I almost always handle and resolve employee and customer issues and complaints without the assistance of the Branch Manager."); Ventura ¶ 13; Salcedo ¶ 10.

[35]  Plaintiff also offers no common proof to determine whether an ABM qualifies for the combination exemption and all of the differences described above demonstrate the ABMs are not similarly situated.  29 C.F.R. § 541.708 (exemption if he or she "perform[s] a combination of exempt duties as set forth in the regulations . . . for executive, administrative, [and ] professional . . . employees.").

job responsibilities;[36]  performance reviews that documented his job responsibilities

contemporaneously with his performance;[37] the actual results of his supervision of other

employees, including documents reflecting his decisions or recommendations to hire, promote,

discipline, or terminate tellers; [38] evidence that Varghese was paid two-to-three times more than

the tellers he supervised;[39] and Varghese's own testimony and that of his managers and

subordinates.  Given Varghese's present efforts to dispute some of the contemporaneous

evidence of his job duties, as well as stark differences between the statements in his declaration

---

[36]  For example, Varghese's own resume described his duties as an ABM as ██████████
████████████████████████████████████ Varghese Dep. at 38-39, 394-97, Ex. 1.
In another document, the first job responsibility identified for Varghese as an ABM was
"[s]upervise tellers."  Varghese Dep at 393-94, Ex. 26.

[37]  For example, during his employment Varghese's managers praised him, saying: "Saju
actively recruits and selects top talent."  Varghese Dep. at 210-11, 218, 221 237 & Exs. 13 and
14.  "Saju has placed tellers on written warning[s] when appropriate.  Terminated tellers when
necessary … [p]erforms as BM during BM's absences" and is "[i]nstrumental in recruiting,
interviewing, and hiring tellers."  Varghese Dep. at 185, 204, 207-10 & Ex. 11. ██████████
██████████████████████ Varghese Dep. at 241-45 & Ex. 15. ██████████████████
███████████████ and █████
Varghese Dep. at 270-73 & Ex. 17. █████████████████████████████████████████
███████████████████████████████████████████████ and
███████████████████████████████████████ Varghese Dep at 274, 288-91 &
Ex. 18.  "Saju does a great job in managing overtime for the tellers and schedules accordingly. . .
. Understands the P&L [profit and loss] and assists the branch manager with managing the
branch to attain successful business results."  Varghese Dep. at 160, 163-64, 171 & Ex. 12.

[38]  Varghese Dep. at 414, Ex. 27 (written warning issued by Varghese to teller); Varghese Dep.
at 414, Ex. 28 (same); Varghese Dep. at 335, Ex. 22 (onboarding document listing Varghese as
hiring manager of teller); Varghese Dep. at 341, Ex. 23 (email from Varghese asking recruiter to
list BM as hiring manager for teller while he is on vacation, rather than follow normal procedure
and list him); Varghese Dep. at 353, 371 Ex. 24 (teller evaluation completed by Varghese stating
the teller "is ready to move to the next level, including lead teller or SSA positions.").

[39]  Varghese Dep. at 69-72 & Ex. 4 (Varghese was paid a salary of $61,000 in 2012, which
would be $29.33 per hour for a 40 hour workweek); Varghese Dep. at 76-79 & Ex. 5 (teller
working for him at Rockville Centre earned $11.25 per hour and $21,263 total in regular pay and
$714 in overtime in 2011); Vaghese Dep. at 80-82 & Ex. 6 (teller working for him at East
Rockaway earned $12.36 per hour and $23,218 total plus $489 in overtime in 2012).

and his recent deposition testimony, there will be significant individualized determinations to be made in adjudicating his claim.

Even as to policies that might apply to other ABMs, Varghese either disclaimed that they applied to him or testified that his manager imposed unique requirements upon him that differed from the policy.[40]  Similarly, Varghese could not identify any common ABM training applicable to him – he did not take any ABM new-hire training and could not recall any of the training he did take.  Varghese Dep. at 83-90.

Again, Chase does not ask the Court at this time to make any findings on the merits of Varghese's claims, or to make credibility determinations about his testimony.  What is relevant at this time, however, is that the merits determination of Varghese's claims will require an analyses of his individual experience as a Chase ABM.  *Glatt*, 791 F.3d at 387-88; *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (holding that where proof of the exemption was "specific to the individual" and plaintiff was trying to prove duties different from the job description there was no "evidence of a common thread binding his proposed class of employees" and denying motion to proceed as collective action).

**G.  The Court Should Consider All Of The Evidence In The Record.**

Plaintiff asks this Court to ignore the testimony of other ABMs reflecting job responsibilities that are materially different than those Plaintiff claims he performed.  He claims that considering this evidence would  require the Court to make credibility determinations, and that Chase allegedly delayed in responding to the discovery served by Plaintiff.  Neither claim has merit.  As to the first point, the testimony of other ABMs does not require the Court to

---

[40]  Varghese Dep. at 309, 313-16, Ex. 20 (stating that his District Manager made him seek pre-approval for amounts even within the limits afforded to him under the branch authority limits policy); Varghese Dep. at 291, 294-96, Ex. 19 (stating that although the exceptions policy states that an ABM "has authority to make a decision that overrides established policies and procedures," he would clear everything with his District Manager).

resolve factual disputes or make credibility determinations.  Plaintiff's testimony that he does not

know what other ABMs do confirms the absence of a contradiction between his testimony about

his job duties and other ABMs' testimony about their job duties.  Considered together, the

various sworn statements simply demonstrate that other ABMs have job duties materially

different than those Plaintiff claims to have performed, and that there is no common proof

through which to adjudicate the merits of all ABMs' claims.  *See Cuevas*, 526 F. App'x at 21

(holding that the district court abused its discretion in failing to consider ABM declarations

submitted by defendants in ruling on class certification because they had to be examined to

determine if plaintiff presented a claim capable of classwide resolution); *Vargas v. HSBC Bank

USA, N.A.*, 2012 WL 10235792, at *4 (S.D.N.Y. Aug. 9, 2012) ("the Court sees no reason why it

should not consider the entire record in determining whether to exercise its discretion to order

the sending of a notice").  On the second point, Defendants' declarations were publically

available by October 5, 2015, shortly after they were signed in opposition to the *Taylor* motion,

and Plaintiff had access to them well before his motion for notice was filed (which motion

mostly incorporates by reference the papers of the *Taylor* plaintiffs).

As to Plaintiff's document requests, Defendants timely filed a protective order seeking to

prevent them from having to respond because the prior discovery period had ended, a case

management order had not been entered, and the court had ruled that Chase could not proceed

with the Plaintiff's deposition until a case management order was entered.  Dkt. No. 62.  Chase

expressly reserved all other objections and indicated that responses would be served at a time set

by the court, proposing to treat Plaintiff's document requests as served on the date the court

issued a case management order.  Dkt. No. 62, p. 4.  The filing of a protective order precludes a

finding of waiver.  *See Nelson v. Capital One Bank*, 206 F.R.D. 499, 500 (N.D. Cal. 2001)

(finding that party opposing written discovery did not waive objections where it had filed a

timely motion for protective order); *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) (stating that there are four ways to respond to discovery – agree to produce documents, file written objections, move for protective order or ignore the request – and sanctions are only available if the request is ignored); *Sheets v. Caliber Home Loans, Inc.*, 2015 WL 7756156, at *3 (N.D.W.Va. Dec. 1, 2015) (same, stating that a party can provide a complete and substantive response to discovery, object to the request, move for protective order, or do nothing and face sanctions). At the recent conference, the Court reserved any decision on waiver but noted it might be reasonable for defense counsel not to have "articulated every objection that he might have to the document requests" when the scope of the case had not been determined. Dec. 29, 2015 Hearing Tr. at 5:13-17. The Court's December 16, 2015 Order determining the scope of the case did not set any time to respond to the discovery, so Defendants were proceeding on their proposal to consider the requests served on the date of the Order. When the Court made clear at the conference that it wanted the documents produced "forthwith," Defendants produced documents two days later. Linthorst Decl. ¶ 3.

## H. If This Court Were To Permit Any Notice, Which It Should Not, It Should Be Limited Only To The Plaintiff's Branches And Should Not Include Those With Arbitration Agreements.

Even if, contrary to the conclusive evidence discussed above, the Court concludes that notice is appropriate, Plaintiff has not shown that his experience was pursuant to a nationwide unlawful policy or practice. Courts that have permitted any conditional certification and notice in such circumstances have generally limited notice to only those locations where the plaintiff submitted competent evidence that a violation may have occurred during the limitations period. *See, e.g., Rudd*, 2011 WL 831446, at *9-10 (conditionally certified off-the-clock collective action only at location where the affiants worked); *Hens v. ClientLogic Operating Corp.*, 2006 WL 2795620, at *4-5 (W.D.N.Y. Sept. 26, 2006) (where Plaintiffs filed over 60 declarations to support

their allegations of nationwide policy of off-the-clock work, notice limited to facilities in 4 cities where plaintiffs or declarants worked).

Moreover, any notice in this case should exclude those individuals who are parties to arbitration agreements.  To require notice to those individuals would exceed the Court's jurisdiction and run contrary to the mandate of the FAA.  The putative collective identified by Plaintiff includes over 4,300 ABMs who are subject to arbitration agreements that preclude their participation in this case.  Denis-Roman Decl. ¶¶ 3-5 (*Taylor* Dkt. No. 53-15); Isner Decl. ¶ 3. This Court and others repeatedly have enforced the Chase Binding Arbitration Agreement ("BAA").  *See e.g., Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 565-66 (S.D.N.Y. 2013) (enforcing Chase's binding arbitration agreement); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418 (C.D. Cal. Feb. 5, 2013) (same); *Newhall v. Chase Home Fin. LLC*, 2010 WL 8759340 (M.D. Fla. Dec. 22, 2010) (same).

Courts regularly refuse to send notice to those subject to an arbitration agreement.  For example, in *Czopek v. TBC Retail Group, Inc.*, 2015 WL 4716230 (M.D. Fla. Aug. 7, 2015), after extensive discovery, the court granted conditional certification in part in a collective action under the FLSA.  The court, however, excluded from the collective those who are subject to an arbitration agreement.  *Id.* at *7 ("[A]ny class must exclude employees who have signed such agreements.").  Similarly, in *Fischer v. Kmart Corp.*, 2014 WL 3817368 (D.N.J. Aug. 4, 2014), after extensive discovery, the court granted conditional certification in part but denied the request to send notice to those who had signed arbitration agreements.  *Id.* at *7.  The court held that those individuals who signed arbitration agreements "are both prevented from joining this collective action because of the [arbitration] Agreement and are also not similarly situated to members" who can participate in a collective action.  *Id.* (citing *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014) (preventing members who have "signed mandatory arbitration

23

and/or class action waiver agreements" from joining, noting they are not similarly situated since the other plaintiffs had "not signed any such agreement"), and *Morangelli v. Chemed Corp.*, 2010 U.S. Dist. LEXIS 146149, at *8 (E.D.N.Y. June 15, 2010) ("It would be a disservice to judicial efficiency to certify all [employees], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the case.")). As a result, the court granted "conditional certification with respect to current and former [employees] who are not bound by the [arbitration] Agreement, and the Court [] den[ied] the motion for conditional certification with respect to the current and former [employees], including Opt-In Plaintiffs, who are bound." *Fischer* at *8. Thus, if the Court were to grant conditional certification here, which it should not do, it should exclude those current and former employees bound by an arbitration agreement.

## I.   If Notice Is Permitted, It Should Be Fair And Accurate.

Notice is not appropriate in this case, but if it were, notice should be limited to a single notification sent by U.S. Mail to home addresses. Plaintiff requests that he be provided with not just names, addresses, dates and locations of employment, but also with telephone numbers, and work and personal email addresses, and requests that individuals be notified not just be via mail, but also through an interactive website and branch postings and that the entire collective be notified again through a "reminder" notice sent by both U.S. mail and email. There is no reason why a single notification of this case would be inadequate. The multiple notices sought by Plaintiff plainly are designed to harass individuals to join the case rather than simply to provide notice. *See, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) ("plaintiffs have no need for the additional inherently private information sought, including e-mail addresses, telephone numbers, social security numbers, and dates of birth"); *Hintergerger v. Catholic Health Sys.*, 2009 WL 3464134, at *11, *13 (W.D.N.Y. Oct. 21, 2009)

(denying request for telephone numbers, e-mail addresses and to post notice in defendant's locations); *Alli v. Boston Mkt. Co.*, 2011 WL 4006691, at *6 (D. Conn. Sep. 8, 2011) (denying request for phone numbers because no need was shown); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) (denying request to post at workplace absent "basis for believing that [other methods of notice] have not been successful in reaching current employees."); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (denying request for reminder notice); *Garcia v. TWC Admin., LLC*, 2015 WL 1737932, at *4, *6 (W.D. Tex. 2015) (denying request for phone numbers and email addresses, and denying reminder notice because "Plaintiffs here have not identified any particular reason why [it] is necessary to ensure sufficient notice"); *Witteman v. Wis. Bell, Inc.,* 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) ("the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit"); *Sharma v. Burberry, Ltd.*, 52 F. Supp. 3d 443, 463-64 (E.D.N.Y. 2014) (denying request to send notice via email or through website where putative members of the collective action could opt-in).

If any notice is authorized, Defendants respectfully request that the parties be ordered to confer on the notice and submit any disputes to the Court.  *See, e.g.*, *Colozzi v*, 595 F. Supp. 2d at 211 (directing parties to negotiate the content of an acceptable notice).

## III.    CONCLUSION

Plaintiff has not demonstrated he is similarly situated to any other ABM or that the central issues of liability can be adjudicated based on common proof.  Rather, the record demonstrates that ABMs are not similarly situated with respect to such issues because they had materially different responsibilities and spent different amounts of time on different duties.  As such, conditional certification should be denied under the Second Circuit's decisions in *Glatt* and *Myers*.

Respectfully submitted,

Dated:  New York, New York      MORGAN, LEWIS & BOCKIUS LLP
        January 19, 2016

By:    _/s / Thomas A. Linthorst_____
        Sam S. Shaulson
        Thomas A. Linthorst

        101 Park Avenue
        New York, New York 10178
        Tel: 212-309-6718
        Fax: 212-309-6001
        tlinthorst@morganlewis.com
        sshaulson@morganlewis.com

        Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Opposition To Plaintiff's Motion For Notice

was served via ECF on January 19, 2016, upon the following:

**Karl J. Stoecker**
Law Offices of Karl J. Stoecker
22 Jericho Turnpike, Suite 100
Mineola, NY 11501

*Attorneys for Plaintiffs*

*/s/ Thomas A. Linthorst*
Thomas A. Linthorst