UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 9, 2016
```

SAJU VARGHESE,

                    Plaintiff,

          - against -

JP MORGAN CHASE & CO. and JP
MORGAN CHASE BANK, N.A.,

                    Defendants.

**ORDER**

14 Civ. 1718 (PGG)

LEROY TAYLOR, III, AGNES
LAMBERT, and GINELLE ROBLES,
individually and on behalf of all others
similarly situated, as Class/Collective
representatives,

                    Plaintiffs,

          - against -

JP MORGAN CHASE & CO. and JP
MORGAN CHASE BANK, N.A.,

                    Defendants.

15 Civ. 3023 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiffs in these cases are assistant branch managers at JP Morgan Chase Bank
who claim that they were denied overtime compensation in violation of the Fair Labor Standards
Act ("FLSA"). (Cmplt. (Varghese Dkt. No. 2) ¶ 6; Second Amended Complaint ("SAC")
(Taylor Dkt. No. 23) ¶ 11) Plaintiffs in Taylor also assert claims for violations of the Illinois and
Connecticut minimum wage laws. (SAC (Taylor Dkt. No. 23) ¶¶ 12-13)

          Plaintiffs in both cases have moved for leave to disseminate notice to the putative
FLSA collective, pursuant to 29 U.S.C. § 216(b). (Varghese Dkt. No. 72; Taylor Dkt. No. 30)

The Taylor Plaintiffs have also moved for equitable tolling. (Taylor Dkt. No. 48) For the

reasons stated below, the cases will be consolidated, and the motions for court-authorized notice

and for equitable tolling will be granted.

## BACKGROUND

## I.   FACTS

Defendant JPMorgan Chase is a global financial services company with more

than 260,000 employees in 60 countries. (SAC (Taylor Dkt. No. 23) ¶ 2) Defendant Chase

Bank ("Chase") is the U.S. consumer and commercial banking business of JPMorgan Chase &

Co. (Id. ¶ 3) There are more than 5,500 Chase branches in the United States. (Id.)

Ten plaintiffs have submitted declarations in support of the motions for collective

action notice.[1] The named plaintiffs all worked as assistant branch managers ("ABMs") at

---

[1] Nine plaintiffs in Taylor submitted declarations; Varghese submitted a declaration in support
of his motion. (Stoecker Decl. (Varghese Dkt. No. 74), Ex. C (Varghese Decl.); Taylor Decl.
(Taylor Dkt. No. 32-2); Lambert Decl. (Taylor Dkt. No. 32-3); Robles Decl. (Taylor Dkt. No.
32-4); Myers Decl. (Taylor Dkt. No. 32-5); Broussard Decl. (Taylor Dkt. No. 32-6); Karrandja
Decl. (Taylor Dkt. No. 32-7); Reid Decl. (Taylor Dkt. No. 32-8); Jones Decl. (Taylor Dkt. No.
32-9); Navarrete Decl. (Taylor Dkt. No. 32-10)) Except for Cynthia Karrandja's declaration, the
Taylor declarations are all organized in the same fashion, with related information located at the
same paragraph number across the declarations. Accordingly, cites to the "Taylor Decls." refer
to the declarations of all of the Taylor Plaintiffs except for Karrandja.

Defendants argue that all of the Taylor Plaintiffs' declarations are "boilerplate" that should be
disregarded. (See Def. Opp. Br. (Taylor Dkt. No. 34) at 15 n.2) "Although there are some
overlapping statements, each . . . Plaintiff discusses different facts regarding the terms of his
employment. . . ." Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 352
(E.D.N.Y. 2012); see, e.g., Lambert Decl. ¶ 4 ("I worked approximately three Saturdays per
month."); Myers Decl. ¶ 8 ("My annual and quarterly incentive pay or bonus was about
$3,000.00 per year."). Accordingly, they will not be disregarded as boilerplate.

In a throw-away line, Defendants also assert that Plaintiffs' declarations "are conclusory [and]
lack foundation, and that the declarants lack personal knowledge of the facts alleged." (Def.
Opp. Br. (Taylor Dkt. No. 34) at 24 n.45) To the contrary, in their declarations Plaintiffs allege
facts setting forth their own experiences. (See, e.g., Robles Decl. ¶ 12 ("My duties as an ABM
did not involve setting branch policies or branch goals or formulating or developing new Chase

Chase. For example, Plaintiff Saju Varghese worked as an ABM at a branch in Nassau, New York, from May 2002 to October 2013. (Varghese Decl. ¶¶ 4-5) Plaintiff LeRoy Taylor worked as an ABM at a branch in Chicago, Illinois, from February 2012 to December 2012. (Taylor Decl. ¶ 3) Plaintiff Agnes Lambert worked as an ABM at three Chase branches in Atlanta, Georgia, from April 2012 to September 2013. (Lambert Decl. ¶¶ 1, 3) Plaintiff Ginelle Robles worked as an ABM at multiple Chase branches in Connecticut from May 2008 to July 2013. (Robles Decl. ¶¶ 1, 3)

Several opt-in plaintiffs have also submitted declarations. Larry Myers worked as an ABM at multiple Chase branches in Dallas, Texas, from September 2005 to January 2014. (Myers Decl. ¶¶ 1, 3) Cathy Broussard worked as an ABM at a Chase branch in Lafayette, Louisiana, from August 2008 to December 2013. (Broussard Decl. ¶¶ 1, 3) Cynthia Karrandja worked as an ABM at multiple Chase branches in Michigan from September 2005 to February 2010, and again from July 2011 to April 2015. (Karrandja Decl. ¶¶ 1, 3) Tiffany Reid worked as an ABM at multiple Chase branches in South Florida from September 2008 to March 2010, and again from September 2011 to July 2013. (Reid Decl. ¶¶ 1, 3) Bree Jones worked as an ABM in SeaTac, Washington, from July 2009 to November 2013. (Jones Decl. ¶¶ 1, 3) Jorge Navarrete worked as an ABM in Brooklyn, New York, from January 2011 to March 2013. (Navarrete Decl. ¶¶ 1, 3)

Plaintiffs allege that they were treated as salaried employees and were classified as "exempt" for purposes of overtime compensation. (Varghese Decl. ¶¶ 11-12; Taylor Decls. ¶¶

---

product and service offerings.")) In any event, at this stage of the proceedings, "it is in the Court's discretion to determine the weight to assign to the various declarations." Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 454 (E.D.N.Y. 2014); see also Winfield, 843 F. Supp. 2d at 403 ("[I]t is unnecessary to strike any hearsay statements at this preliminary stage of the litigation. The Court will afford any such hearsay statements the weight to which they are entitled."). Defendants' application that the declarations be ignored is denied.

3

5, 8; Karrandja Decl. ¶¶ 6, 9) Plaintiffs further claim that they frequently worked more than 40 hours per week without receiving overtime pay, and that other ABMs at Chase branches also worked more than 40 hours per week and did not receive overtime compensation. (Varghese Decl. ¶ 11; Taylor Decls. ¶¶ 4-6, 13; Karrandja Decl. ¶¶ 4-7, 15)

As ABMs, Plaintiffs spent most of their time working as tellers. (Varghese Decl. ¶ 8; Taylor Decls. ¶ 9; Karrandja Decl. ¶ 10) They also greeted customers, opened and closed accounts, handled phone calls, answered customer questions, counted money, and completed other clerical tasks. (Varghese Decl. ¶ 8; Taylor Decls. ¶ 9; Karrandja Decl. ¶ 10) Plaintiffs had no authority to hire, fire, promote, or set rates of pay for other Chase employees. (Varghese Decl. ¶¶ 13-18; Taylor Decls. ¶ 11; Karrandja Decl. ¶ 12) Plaintiffs further state that "Chase highly regulated the performance of [their] duties" (Taylor Decls. ¶ 10; Karrandja Decl. ¶ 11), and that Chase disseminated uniform training materials to all of its ABMs. (Taylor Decls. ¶ 2; Karrandja Decl. ¶ 2; see also Palitz Decl. (Dkt. No. 32), Ex. 13 (ABM Training Program)) Plaintiffs observed ABMs at other Chase branches performing the same duties. (Varghese Decl. ¶ 20; Taylor Decls. ¶ 13; Karrandja Decl. ¶ 15)

## II. PROCEDURAL HISTORY

The Varghese complaint was filed on March 12, 2014 (Cmplt. (Varghese Dkt. No. 2)), and the Taylor complaint was filed on April 16, 2015. (Cmplt. (Taylor Dkt. No. 1)) When the Taylor Plaintiffs filed their Complaint, they requested that it be treated as related to Varghese, noting that both cases "involve[] claims that the same Defendants violated the FLSA by not paying overtime." (Statement of Relatedness (Taylor Dkt. No. 2)) On June 17, 2015, the Taylor case was accepted as related to Varghese.

4

On October 5, 2015, the Taylor Plaintiffs filed a motion seeking the dissemination of court-authorized notice to the putative nationwide FLSA collective of Chase ABMs. (Taylor Dkt. No. 30) On December 22, 2015, Varghese filed a similar motion. (Varghese Dkt. No. 72) Varghese adopted the Taylor Plaintiffs' "argument and authorities," as well as their "proposals regarding the mechanism for sending [n]otice to members of the proposed collective." (Pltf. Br. (Varghese Dkt. No. 73) at 5)[2]

Plaintiffs have defined the putative collective as "current and former 'Assistant Branch Managers' of JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A. (together 'Chase') from April 16, 2012 to the present."[3] (Proposed Court-Authorized Notice (Taylor Dkt. No. 32-14) at 2)

Defendants oppose the dissemination of notice to members of the putative collective, arguing primarily that (1) a heightened standard should be applied to Plaintiffs' motions for court-authorized notice; (2) Plaintiffs' motions are predicated on false or incorrect factual assumptions; and (3) "the central questions of liability [in the two actions] cannot be proven with 'common proof.'" (Def. Opp. Br. (Taylor Dkt. No. 34) at 8-10; see also Def. Opp. Br. (Varghese Dkt. No. 81) at 7-9) If collective action notice is to be issued, Defendants propose (1) narrowing the scope of the collective; and (2) modifying the proposed notice and the mechanics of its dissemination. (Def. Opp. Br. (Taylor Dkt. No. 34) at 28-32)

In addition to their motion for court-authorized notice, Plaintiffs have filed a motion to toll the FLSA statute of limitations on potential opt-in plaintiffs' claims. (Taylor Dkt. No. 48)

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

[3] Excluded from Plaintiffs' definition of the putative collective are those employees who held or hold the job title of "Assistant Branch Manager – Sales." (Pltf. Br. (Taylor Dkt. No. 31) at 8 n.1)

## DISCUSSION

## I.   CONSOLIDATION

On August 23, 2016, the Court notified the parties that it was contemplating the consolidation of the Varghese and Taylor actions, and invited submissions addressing this issue. (Varghese Dkt. No. 92; Taylor Dkt. No. 54)  The plaintiffs in both actions consent to consolidation.[4]  (Varghese Aug. 29, 2016 Ltr. (Varghese Dkt. No. 94); Taylor Aug. 29, 2016 Ltr. (Taylor Dkt. No. 55))  Defendants oppose consolidation, arguing that "Varghese's claim for overtime will require an individualized inquiry into the job duties he performed on a day-to-day basis during his employment as an [ABM] at Chase, and he has already testified that those job duties are materially different than the job duties claimed by some of the Taylor plaintiffs, based on evidence specific to himself."  (Def. Aug. 30, 2016 Ltr. (Varghese Dkt. No. 95) at 1) Defendants contend, for example, that Varghese performed certain "management duties," such as "the hiring and discipline of tellers."  (Id. at 2)  Defendants also note that "Varghese was paid a salary of $61,000," while "Taylor opt-in plaintiff Cathy Broussard's annual salary was only $30,500."  (Id.)

Under Fed. R. Civ. P. 42(a), a district court may consolidate "actions . . . involve[ing] a common question of law or fact." Fed. R. Civ. P. 42(a).  "'A determination on the issue of consolidation is left to the sound discretion of the court,'" In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2008 U.S. Dist. LEXIS 56016, at *4 (S.D.N.Y. July 16, 2008) (quoting Albert Fadem Tr. v. Citigroup Inc., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002)), and involves weighing considerations of convenience, judicial economy, and cost reduction while

---

[4]  Varghese requests that – if the Court determines that the actions will not proceed on a collective basis – they be consolidated for discovery purposes only. (Varghese Aug. 29, 2016 Ltr. (Varghese Dkt. No. 94))

6

ensuring that the "paramount concern for a fair and impartial trial" is honored. Johnson v.

Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990).

> As the Second Circuit has explained:

>> A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) sua sponte. See In re Adams Apple, Inc., 829 F.2d 1484, 1487 (9th Cir. 1987). Rule 42(a) provides that consolidation is acceptable "[w]hen actions involving a common question of law or fact are pending before the court." Fed. R. Civ. P. 42(a). The Rule should be prudently employed as "a valuable and important tool of judicial administration," Consorti v. Armstrong World Ind., 72 F.3d 1003, 1006 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996), invoked to "expedite trial and eliminate unnecessary repetition and confusion," Miller v. United States Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984). In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy. See Miller, 729 F.2d at 1037. However, under the applicable law, efficiency cannot be permitted to prevail at the expense of justice – consolidation should be considered when "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Consorti, 72 F.3d at 1007.

Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999) (emphasis in

original).

Consolidation does not require an exact identity of issues and fact between

matters. In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) ("[T]he facts and

legal issues need not be identical to warrant consolidation."), opinion adhered to on

reconsideration sub nom. In re Olsten Corp., 181 F.R.D. 218 (E.D.N.Y. 1998); see also

Pinkowitz v. Elan Corp., PLC, No. 02 Civ. 4948 (WK), 2002 WL 1822118, at *3 (S.D.N.Y. July

29, 2002) (noting that Rule 42 does not "'demand[] that actions be identical before they may be

consolidated'" (quoting In re Cendant Corp. Litig., 182 F.R.D. 476, 478 (D.N.J. 1998))).

Here, the trivial differences cited by Defendants are dwarfed by the similarities in

the two actions. Plaintiffs in both actions seek overtime compensation on behalf of ABMs who

worked for Defendants. (Compare Cmplt. (Varghese Dkt. No. 2) ¶ 7 ("This action is brought to

recover unpaid overtime wages owed to Plaintiff and all current and former employees of Defendants who work or worked as Assistant Branch Mangers . . . .") with SAC (Taylor Dkt. No. 23) ¶ 1 ("This lawsuit seeks to recover overtime compensation for Plaintiffs and similarly situated individuals who have worked as Assistant Branch Mangers or in comparable roles with different titles . . . .")) Moreover, plaintiffs in both actions allege that Defendants failed to pay overtime compensation as part of a common policy that was applied across all Chase branches. (Compare Cmplt. (Varghese Dkt. No. 2) ¶ 3 ("Chase had a nationwide policy to deprive its Assistant Branch Managers of overtime wages.") with SAC (Taylor Dkt. No. 23) ¶ 8 ("Defendants' policy across their branches has been to uniformly classify ABMs as exempt from federal and state overtime provisions and not pay ABMs any overtime wages."))

"Due to the substantial overlap in parties, factual allegations, and legal issues, discovery in these two actions will involve duplicate document production as well as likely duplicate depositions." Franco v. Ideal Mortgage Bankers, Ltd., No. CV 07-3956 (JS) (AKT), 2009 WL 3150320, at *7 (E.D.N.Y. Sept. 28, 2009) (consolidating two FLSA actions alleging that defendant bank failed to pay its loan officers minimum wages and overtime), order aff'd, appeal dismissed, 2009 WL 3756664 (E.D.N.Y. Nov. 3, 2009). Consequently, "the differences which do exist do not outweigh the interests of judicial economy which would be served by consolidation." Pinkowitz, 2002 WL 1822118, at *4; see also Coultrip v. Pfizer, Inc., No. 06 Civ. 15200 (JCF), 2011 WL 1219365, at *3 (S.D.N.Y. Mar. 24, 2011) (consolidation of three FLSA actions "appropriate . . . given the broadly overlapping factual and legal allegations in the plaintiffs' complaints"). Moreover, "[c]onsolidation . . . [will] avoid[] duplication of judicial effort and vexatious litigation in multiple forums, achiev[e] comprehensive disposition of this

litigation, and eliminat[e] the risk of inconsistent judgments." Naula v. Rite Aid of New York,

No. 08 Civ. 11364 (PGG), 2010 WL 2399364, at *5 (S.D.N.Y. Mar. 23, 2010).

For all of these reasons, these actions will be consolidated.

## II.    COLLECTIVE ACTIONS AND COURT-AUTHORIZED NOTICE

### A.    Legal Standard

Under the FLSA, an employee may sue on behalf of himself and all other

employees who are "similarly situated." 29 U.S.C. § 216(b). Similarly situated employees may

"opt in" to an FLSA litigation and become party plaintiffs by filing a written consent form with

the court. See Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at

*2 (S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL

2000133, at *13 (S.D.N.Y. Aug. 17, 2005)). In contrast to class actions under Fed. R. Civ. P. 23,

in FLSA collective actions, "only plaintiffs who affirmatively opt in can benefit from the

judgment or be bound by it." Id. (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.

Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

Although Section 216(b) does not explicitly address court-authorized notice to

potential opt-in plaintiffs, "it is 'well settled' that district courts have the power to authorize an

FLSA plaintiff to send such notice. . . ." Gjurovich, 282 F. Supp. 2d at 104 (quoting Hoffmann

v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Moreover, because the filing of an

FLSA collective action does not toll the three-year statute of limitations as to non-named

potential plaintiffs, courts routinely approve court-authorized notice in order to ensure that

potential claimants understand their rights and the erosion of their claims as time passes. See,

e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ. 265 (PAE), 2012

9

WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[] to prevent erosion of claims due to the running statute of limitations. . . .").

Typically, "a federal court authorizes notice of the litigation to employees after making a preliminary determination that the employees who will be receiving the notice are similarly situated to the plaintiff." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (citing Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Where a plaintiff meets his or her burden to demonstrate that the proposed recipients are in fact "similarly situated," the court authorizes that notice be sent to these potential opt-in plaintiffs. Lynch, 491 F. Supp. 2d at 368-69.

To demonstrate that proposed recipients of notice are "similarly situated," Plaintiffs need "make only a 'modest factual showing' that [they] and the other putative collective action members 'were victims of a common policy or plan that violated the law.'" Amendola, 558 F. Supp. 2d at 467 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). The "modest factual showing" requirement is met where plaintiffs offer "'substantial allegations' of a factual nexus between [them] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB) (RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); citing Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008)). "Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one," and that determination may be modified or vacated after discovery. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

When evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." Davis, 2008 WL 4702840, at *9 (citing Lynch, 491 F. Supp. 2d at 368-69); see also Francis v. A&E Stores, Inc., No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 15, 2008). Indeed, in considering such a motion, "[a] court need not evaluate the underlying merits of a plaintiff's claims. . . ." Damassia, 2006 WL 2853971, at *3 (citing Scholtisek v. Eldre Corp., 229 F.R.D. 381, 391 (W.D.N.Y. 2005); Gjurovich, 282 F. Supp. 2d at 105; Hoffmann, 982 F. Supp. at 262). Because courts do not weigh the merits of a plaintiff's claim, extensive discovery is not necessary at the notice stage. See Masson, 2005 WL 2000133, at *15 (noting that defendant's stated need for "extensive" discovery does "not bear on whether this case can proceed as a collective action"). To satisfy their "minimal" burden to demonstrate that they and potential opt-in plaintiffs are similarly situated, named plaintiffs may rely on their own pleadings and affidavits, or the affidavits of potential members of the collective action. Salomon v. Adderley Indus., 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012); Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007).

As noted above, at the notice stage, courts make a preliminary determination as to similarity that is subject to alteration later:

> Plaintiffs who opt in to a collective action after a court authorizes notice do not necessarily remain parties to the action through trial. After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record – and under a more stringent standard – whether the additional plaintiffs are in fact similarly situated.

Damassia, 2006 WL 2853971, at *3 (citing Morden v. T-Mobile USA, Inc., No. C05-2112 (RSM), 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006); Gjurovich, 282 F. Supp. 2d at

11

105). "If the factual record reveals that the additional plaintiffs are not similarly situated to the original plaintiffs, the collective action is 'decertified,' and the claims of the opt-in plaintiffs are dismissed without prejudice." Id. (citing Lee, 236 F.R.D. at 197; Scholtisek, 229 F.R.D. at 387).

**B.      Analysis**

### 1.      Whether Notice Should Be Disseminated

Defendants contend that in the Second Circuit's recent decision in Glatt v. Fox Searchlight Pictures, 811 F.3d 528 (2d Cir. 2016), the court announced a "[f]ar [m]ore [d]emanding" standard for determining motions for court-authorized notice under the FLSA. (Def. Opp. Br. (Taylor Dkt. No. 34) at 12)

While Glatt articulates a "new test for when an internship program creates an employment relationship," see Glatt, 811 F.3d at 540, that decision does not alter the standard for determining whether court-authorized notice is appropriate. The Glatt court vacated the district court's order granting court-authorized notice to a putative nationwide FLSA collective of interns, because the proof submitted below "addresse[d] only some of the relevant factors" under the "new test" for determining when an internship program creates an employment relationship.[5] Id.

Glatt does not announce a new analytical framework for determining motions for court-authorized notice, however. To the contrary, Glatt endorses the same "process for certifying FLSA collective actions" described in Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010):

> In Myers, we endorsed a two-step process for certifying FLSA collective actions. At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named

---

[5] Indeed, the Second Circuit did "not foreclose the possibility that a renewed motion for conditional collective certification might succeed on remand under the revised [internship] standard." Glatt, 811 F.3d at 540 n.7.

12

plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. <u>Myers</u>, 624 F.2d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. <u>Id.</u>

<u>Glatt</u>, 811 F.3d at 540.

· While the Second Circuit had "certified for immediate review" the issue of

whether a more rigorous standard applies post-discovery to motions for conditional certification

under the FLSA, the court did not reach this issue:

> We certified for immediate review the question of whether a higher standard, urged by defendants, applies to motions to conditionally certify an FLSA collective made after discovery. We do not need to decide that question, however, because in light of the new test for when an internship program creates an employment relationship, we cannot, on the record before us, conclude that the plaintiffs in Antalik's proposed collective are similarly situated, even under the minimal pre-discovery standard.

<u>Id.</u>

In sum, nothing in Glatt suggests that plaintiffs seeking court-authorized notice in

FLSA actions pre-discovery are now required to meet a "far more demanding" standard, as

Defendants argue.

Here, Plaintiffs' declarations "support[] a reasonable inference that plaintiffs'

experiences reflected a company-wide policy." <u>Morris v. Lettire Const., Corp.</u>, 896 F. Supp. 2d

265, 270 (S.D.N.Y. 2012). The declarants – all of whom worked as ABMs at Chase branches –

worked more than 40 hours per week but were never paid overtime compensation. Their

experiences, and the observations they made at other Chase branches, support the inference that

the failure to pay overtime compensation to ABMs was part of a common policy towards ABMs

at Chase. (Varghese Decl. ¶ 11; <u>Taylor</u> Decls. ¶¶ 4-6, 13; Karrandja Decl. ¶¶ 4-7, 15) Plaintiffs

have also adduced evidence demonstrating that ABMs shared common job descriptions (<u>see</u>

Palitz Decl., Ex. 11 (ABM Job Descriptions)), and received uniform training. (Taylor Decls. ¶ 2; Karrandja Decl. ¶ 2; see also Palitz Decl., Ex. 13 (ABM Training Program))

Defendants have submitted several "counter declarations" from ABMs in an effort to "show that there are other ABMs who have job duties materially different than those Plaintiffs claim to have performed," and Defendants contend that "there is no common proof through which to adjudicate the merits of all ABMs' claims." (Def. Opp. Br. (Taylor Dkt. No. 34) at 24 n.46)

At the first stage of the conditional certification process, however, courts have ruled that defendants "may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." Colon v. Major Perry St. Corp., No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013) (citing Francis, 2008 WL 4619858, at *3); see also Bijoux v. Amerigroup New York, LLC, No. 14-CV-3891 (RJD) (VVP), 2015 WL 4505835, at *13 (E.D.N.Y. July 23, 2015) (noting that "declarations submitted in opposition to a motion for conditional certification carry limited weight, since the focus of the court's inquiry is not on the defendants' evidence, but on whether the plaintiffs have made their requisite showing" (internal quotation marks and alteration omitted)), report and recommendation adopted, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) ("[C]ourts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); Ravenell v. Avis Budget Car Rental, LLC, No. 08-CV-2113 (SLT) (ALC), 2010 WL 2921508, at *5 (E.D.N.Y. July 19, 2010) ("Moreover, the employee declarations submitted by Avis should be discounted at this stage because Plaintiffs have not yet been able to depose the employees who signed them." (internal quotation marks omitted)).

14

Defendants have also submitted a declaration from Darlene Riley, Chase's Vice President of Human Resources, who states that "[s]ome [ABMs] . . . are classified as non-exempt and eligible for overtime under Chase's policies." (Riley Decl. (Taylor Dkt. No. 35-21) ¶ 3) This vague, general statement does not establish that Chase actually paid overtime compensation to ABMs during the relevant time period, which predates Riley's declaration. See Amador v. Morgan Stanley & Co. LLC, No. 11 Civ. 4326 (RJS), 2013 WL 494020, at *6 (S.D.N.Y. Feb. 7, 2013) ("'[T]he existence of a formal policy of requiring overtime pay should not immunize the defendant where[, as here,] the plaintiffs have presented evidence that this policy was commonly violated in practice.'" (quoting Winfield, 843 F. Supp. 2d at 408)). In any event, Riley's declaration – like Defendants' other evidence – at best creates "a factual dispute which" – as noted above – "the Court cannot resolve at this stage and on this limited record." Davis, 2008 WL 4702840, at *7; see also Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 449 (S.D.N.Y. 2013) (refusing to consider defendants' declaration alleging that plaintiff "was one of only two exempt employees").

Defendants raise several other "[c]entral [m]erits [q]uestions" that they claim are not addressed by Plaintiffs' evidence, including "how many other employees all ABMs supervise, whether all ABMs have authority to make changes in [the] status of other employees or whether the recommendations of all ABMs carry particular weight." (Def. Opp. Br. (Taylor Dkt. No. 34) at 26) Defendants also contend that, during Varghese's deposition, he was unable to "identify any common proof that would answer the central questions of liability in this case and was unaware of any way to determine the job duties of other ABMs other than to ask them." (Def. Opp. Br. (Varghese Dkt. No. 81) at 16) Defendants' attempt to litigate the merits of these cases at this early stage is improper, however. See Walston v. Edward J. Young, Inc., No. 15-

15

CV-457 (LDW)(AYS), 2016 WL 3906522, at *6 (E.D.N.Y. Feb. 22, 2016) ("Ultimately, the issue of whether or not one or more exemptions to the FLSA apply in this case present[s] factual matters that are inappropriate to decide in the context of a motion for conditional collective action certification."); Jeong Woo Kim, 985 F. Supp. 2d at 446 (noting that courts should not "'weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated'" (quoting Lynch, 491 F. Supp. 2d at 368)); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("To the extent that Defendants opposition relies on a detailed factual dispute about whether the Defendants maintain an 'illegal off-the clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); Hoffmann, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here").

   Plaintiffs' motion for leave to disseminate notice of this lawsuit to the putative nationwide collective will be granted.

### 2. **Scope of Notice**

   Defendants argue that notice should be transmitted only to ABMs who worked at Chase branches where named or opt-in plaintiffs worked, and that notice should not be sent to individuals subject to arbitration agreements. (Def. Opp. Br. (Taylor Dkt. No. 34) at 28-31)

   With respect to the scope of the collective, however, "[c]ourts . . . routinely grant[] conditional certification to a national class where 'evidence is presented from multiple employees from multiple locations nationwide.'" Tubiak v. Nielsen Co. (US), LLC, No. 15-CV-5159 (PKC), 2016 WL 796861, at *3 (S.D.N.Y. Feb. 25, 2016) (quoting Amador, 2013 WL 494020, at *9); see also Barry v. S.E.B. Serv. of New York, Inc., 11-CV-5089 (SLT) (JMA),

2013 WL 6150718, at *7 (E.D.N.Y. Nov. 22, 2013) (authorizing notice to nationwide putative

collective where plaintiffs' evidence concerned only employees located in New York, New

Jersey, and Connecticut); Stevens v. HMSHost Corp., No. 10 CIV. 3571 (ILG) (VVP), 2012 WL

4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (certifying national collective where "plaintiffs . . .

offered depositions from plaintiffs who worked at Host locations in New York, Minneapolis,

Milwaukee, and Orlando").

    With respect to Defendants' argument that employees who are subject to

arbitration agreements should not receive notice, "courts have consistently held that the existence

of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-

based determination.'" Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 647

(S.D.N.Y. 2013) (quoting D'Antuono v. C & G of Groton, Inc., No. 3:11CV33 (MRK), 2011

WL 5878045, at *4 (D. Conn. Nov. 23, 2011)). Accordingly, "the interest of judicial economy

and, perhaps more importantly, of ensuring that all eligible workers receive notice outweigh the

possible negative effect that some receiving the notice might not have valid claims." Walston,

2016 WL 3906522, at *7.

### 3.  **Form and Mechanics of Notice**

    Plaintiffs ask this Court to (1) order Defendants to produce "a computer-readable

list of names, last known addresses, telephone numbers, work and personal e-mail addresses,

work locations, and dates of employment for all persons employed by Defendants as ABMs at

Chase branches nationwide"; (2) authorize distribution of notice via e-mail, website, and

postings at Chase branches; and (3) "allow Plaintiffs to send a reminder via U.S. mail and e-mail

half-way through the notice period."[6] (Pltf. Br. (Taylor Dkt. No. 31) at 24-27) Defendants argue that notice "should be limited to a single notification sent by U.S. Mail to home addresses." (Def. Opp. Br. (Dkt. No. 34) at 31)

"'Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.'" Iriarte v. Cafe 71, Inc., No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 11, 2015) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)); see also id. ("'Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in.'" (quoting Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL 5211839 at *9 (S.D.N.Y. Sept. 16, 2013))). Accordingly, the court-authorized notice will be posted in common employee space at each Chase branch.

With respect to email notice, courts in this district have found that "given the reality of communications today . . . email notice in addition to notice by first class mail is entirely appropriate." Pippins v. KPMG LLP, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012). Moreover, "in this day of electronic communication, courts have authorized defendants to provide email addresses." Hernandez v. Merrill Lynch & Co., No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012). The same logic supports dissemination of notice via website. See Mark v. Gawker Media LLC, No. 13-CV-4347 (AJN), 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014) (authorizing notice via "two stand-alone

---

[6] Plaintiffs propose that members of the putative collective be given 90 days to join the action. (Pltf. Br. (Taylor Dkt. No. 31) at 25) Defendants do not oppose this request, which the case law indicates is appropriate. See e.g., Fasanelli, 516 F. Supp. 2d at 324 (approving 90-day period); Sherrill v. Sutherland Glob. Servs., Inc., 487 F. Supp. 2d 344, 351 n.5 (W.D.N.Y. 2007) (finding "ninety-day period . . . more appropriate" than "forty-five-day opt-in period").

18

websites that will give potential plaintiffs the ability to download and submit the consent form electronically"). In sum, Plaintiffs are authorized to send notice via email and to post the notice on a website, and Defendants are ordered to provide email addresses for potential opt-in plaintiffs to the extent that Defendants possess such information.

With respect to the request for potential opt-in plaintiffs' telephone numbers, some courts in this district have rejected such requests. See, e.g., Michael v. Bloomberg L.P., No. 14 Civ. 2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) ("[P]rivacy concerns have precluded courts from ordering the disclosure of certain personal information, including telephone numbers . . . absent a showing that a large number of the initial mailings have been returned as undeliverable.") However, in Cortes v. New Creators, Inc., the court found that disclosure of the telephone numbers of former employees was appropriate, given that they would not likely receive notice by other means, such as through notices posted at the employer's facility. See Cortes v. New Creators, Inc., No. 15 Civ. 5680 (PAE), 2015 WL 7076009, at *4 (S.D.N.Y. Nov. 12, 2015).

Here, the potential opt-in plaintiffs include former employees of Defendants. These individuals would not receive notice through postings at Defendants' facilities, and Defendants may not have current addresses or email information for these individuals. Accordingly, Defendants are ordered to provide telephone numbers for former employees who are potential opt-in plaintiffs to the extent that Defendants possess such information, and all contact information shall be delivered in Plaintiffs' requested format.[7]

---

[7] Plaintiffs also request "Social Security [n]umbers for all ABMs for whom a notice is returned undeliverable by U.S. Mail." (Pltf. Br. (Taylor Dkt. No. 31) at 25) "While courts often decline to allow discovery of [S]ocial [S]ecurity numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice." Whitehorn, 767 F. Supp. 2d at 448 (citing

19

With respect to a reminder notice, "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, . . . a reminder notice is appropriate." Chhab v. Darden Restaurants, Inc., No. 11 Civ. 8345 NRB, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (citing Morris, 896 F. Supp. 2d at 281).[8]

## 4.    Equitable Tolling

Plaintiffs have "move[d] for equitable tolling of the statute of limitations for the putative collective action members . . . from August 20, 2015, the date [the Taylor] Plaintiffs served their Motion for Court-Authorized Notice . . . to ten days after this Court issues its Order on the Motion." (Pltf. Equitable Tolling Br. (Taylor Dkt. No. 49) at 1)

Relying on cases from outside this Circuit, Defendants argue that Plaintiffs' motion is premature. (Def. Equitable Tolling Br. (Taylor Dkt. No. 52) at 7-8 & n.1)  In the Second Circuit, however, "equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action." Xiao Ling Chen v. XpresSpa at Term. 4 JFK, LLC, No. 15 CV 1347 (CBA) (CLP), 2016 U.S. Dist. LEXIS 20003, at *32 (E.D.N.Y. Feb. 16, 2016); see also Reyes v. NY F&B Servs. LLC, No. 15CV2882-LTS-DCF, 2016 U.S. Dist.

---

Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009)).  Plaintiffs have made no such showing here.  Moreover, given that the Court has authorized multiple methods of notice, it is not clear that any disclosure of Social Security numbers can be justified.  Accordingly, Plaintiffs' request will be denied. See Chowdhury v. Duane Reade, Inc., No. 06 Civ. 2295 (GEL), 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) ("plaintiff has not shown a need to disclose such confidential information, as he has not demonstrated that such information will aid in further reducing the already low number of notices that were returned undeliverable").
[8] Defendants state that they "have numerous other objections to the proposed notice, and . . . request that the parties be ordered to confer on the notice and submit any disputes to the Court." (Def. Opp. Br. (Taylor Dkt. No. 34) at 32)  Although Plaintiffs request that the notice be approved as proposed (Pltf. Reply Br. (Dkt. No. 33) at 13-14), they have not addressed Defendants' request for a meet and confer.  Accordingly, the parties will confer about the content of the notice and submit any disputes to the Court by September 16, 2016.

20

LEXIS 21444, at \*15 (S.D.N.Y. Feb. 22, 2016) (granting tolling from the filing of motion for

conditional certification); Schaefer v. M & T Bank Corp., 122 F. Supp. 3d 189, 198-99

(S.D.N.Y. 2015) (same).

Defendants also argue that Plaintiffs' counsel have unclean hands that bars such

relief. (Def. Equitable Tolling Br. (Taylor Dkt. No. 52) at 8-9) According to Defendants,

Plaintiffs' counsel in Varghese and Taylor have "coordinated" against them and are "complicit in

lengthy delays." (Id.) These allegations are not sufficient to find that equitable tolling is

improper.

Finally, Defendants contend that the delay at issue here is routine and does not

warrant tolling. (Def. Equitable Tolling Br. (Taylor Dkt. No. 52) at 15-17) However,

> the delay caused by the time required for a court to rule on a motion, such as one
> for certification of a collective action in a[n] FLSA case, may be deemed an
> extraordinary circumstance justifying application of the equitable tolling doctrine.
> While plaintiffs wishing to pursue their rights cannot sit on them indefinitely,
> those whose putative class representatives and their counsel are diligently and
> timely pursuing the claims should also not be penalized due to the courts' heavy
> dockets and understandable delays in rulings.

McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (internal citations

and quotation marks omitted).

Here, Plaintiffs' motion for leave to disseminate notice was served on August 20,

2015. (Notice of Motion (Taylor Dkt. No. 30) at 1) Given the length of time that the motion has

been pending, the Court finds that equitable tolling is appropriate as of the date the motion was

served. Therefore, notice may be sent to potential opt-in plaintiffs for the time period beginning

on August 20, 2012.

21

## CONCLUSION

For the reasons stated above, these actions are consolidated for all purposes. The Clerk of the Court will consolidate these actions under the first case filed, 14 Civ. 1718 (PGG).

Plaintiffs' motions for leave to disseminate notice to potential opt-in plaintiffs and motion for equitable tolling are granted. The parties will meet and confer concerning the content of the notice and will present to the Court any remaining disputes concerning the content of the notice by September 16, 2016.

The Clerk of the Court is directed to terminate the motions (Varghese Dkt. No. 72; Taylor Dkt. Nos. 30, 48).

Dated: New York, New York
       September 8, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge

22