**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
SAJU VARGHESE, LeROY TAYLOR, III, :
AGNES LAMBERT, GINELL ROBLES,      :       Case Nos. 14-cv-0718 & 15-cv-3023 (PGG)
and JORGE NAVARETTE, individually  :
and on behalf of all others similarly situated, :
                                   :
                  Plaintiffs,      :
                                   :
        v.                         :
                                   :
JPMORGAN CHASE & CO and            :
JPMORGAN CHASE BANK, N.A.,         :
                                   :
                  Defendants.      :
-------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CONSENTED TO
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT, FINAL CERTIFICATION OF THE SETTLEMENT CLASSES AND
COLLECTIVE, APPOINTMENT OF PLAINTIFFS' COUNSEL AS, COUNSEL FOR
THE CLASS AND APPROVAL OF ATTORNEYS' FEES AND COSTS, SETTLEMENT
ADMINISTRATOR EXPENSES, AND PLAINTIFFS' ENHANCEMENT AWARDS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

II.    CLASS ACTION SETTLEMENT PROCEDURE ......................................................... 4

III.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE............................... 5

     A.    Procudural Fairness .......................................................................................... 5

     B.    Substantive Fairness ......................................................................................... 6

         1.    Further Litigation and Trial Would Be Complex, Costly, and Long
              (*Grinnell* Factor 1) ....................................................................................7

         2.    The Reaction of the Class Members (*Grinnell* Factor 2) ............................ 9

         3.    Discovery Has Advanced Far Enough to Allow the Parties to
              Resolve the Case Responsibly (Grinnell Factor 3) .................................. 10

         4.    Plaintiffs Would Face Risk if the Case Proceeded
              (*Grinnell* Factors 4 and 5) ......................................................................... 11

         5.    Establishing and Maintaining the Class Through Trial Presents Risk
              (*Grinnell* Factor 6) ................................................................................... 13

         6.    Defendants' Ability to Withstand a Greater Judgment Is Not
              Determinative (*Grinnell* Factor 7) ........................................................... 14

         7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible
               Recovery and the Attendant Risks of Litigation
               (*Grinnell* Factors 8 and 9) ....................................................................... 15

     C.    The Court Should Approve the FLSA Settlement .............................................. 17

IV.   CERTIFICATION OF THE CONNECTICUT, ILLINOIS, AND NEW YORK STATE
      LAW CLASSES IS APPROPRIATESUMMARY OF SETTLEMENT TERMS .......... 18

     A.    Numerosity.......................................................................................................... 19

     B.    Commonality........................................................................................................ 19

     C.    Typicality ............................................................................................................ 20

     D.    Adequacy ............................................................................................................ 20

     E.    Certification Is Proper Under Rule 23(b)(3)...................................................... 22

          1.      Common Questions Predominate ............................................................. 22

          2.      A Class Action Is a Superior Mechanism ................................................ 23

V.     THE COURT SHOULD APPROVE ENHANCEMENT AWARDS BECAUSE THEIR EFFORTS CONTRIBUTED GREATLY TO THIS SETTLEMENT ............................ 24

VI.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED ........................................................ 25

      A.     The Time and Labor Expended by Counsel ......................................................... 26

      B.     The Magnitude and Complexity of this Litigation and the Risk of Litigation .... 28

      C.     The Quality of Representation ............................................................ 29

      D.     The Requested Fee in Relation to the Settlement ................................................ 30

      E.     Public Policy Considerations Support Plaintiffs' Counsel's Fee Request .......... 31

VII.   THE LODESTAR CROSS CHECK FURTHER CONFIRMS THE REASONABLENESS OF PLAINTIFFS' COUNSEL'S FEE REQUEST .................... 32

VIII.  PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR COSTS UNDER THE AGREEMENT .......................................................................... 34

CONCLUSION ..................................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aboud v. Charles Schwab & Co.,*
No. 14 Civ. 2712, 2014 U.S. Dist. LEXIS 157205 (S.D.N.Y. Nov. 4, 2014) ........................ 21

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 623 (1997) ................................................................................................ 22, 24

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................................ *passim*

*Ballinger v. Advance Magazine Publishers, Inc.,*
No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ........................................ 15

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467. (S.D.N.Y. 2013) .................................................................................... 21, 30

*Blackmon v. Brookshire Grocery Co.,*
835 F.2d 1135 (5th Cir. 1988) ............................................................................................ 16

*Briggs v. PNC Fin. Servs. Gr.,*
No. 15 Civ. 10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016) ..................... 21

*Castagna v. Madison Square Garden, L.P.,*
No. 09 Civ. 10211, 2011 WL 2208614 (E.D.N.Y. June 12, 2013) ....................................... 14

*Cheeks v. Freeport Pancake House, Inc.,*
796 F.3d 199 (2d Cir. 2015) ................................................................................................ 17

*In re Citigroup Inc. Sec. Litig.,*
965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................. 29

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ............................................................................................ *passim*

*Clark v. Ecolab Inc.,*
Nos. 07 Civ. 8623, 04 Civ. 4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)………….. 11

*Clem v. KeyBank, N.A.,*
No. 13 Civ. 789, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) .......................... 21

*Clements v. Serco, Inc.,*
530 F.3d 1224 (10th Cir. 2008) ........................................................................................... 16

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) .................................................................................................. 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) .................................................................................................. 22

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................... 23

*DeLeon v. Wells Fargo Bank, N.A.*,
  No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015) ........................ 33

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ........................................................................ 20

*Diaz v. Scores Holding Co.*,
  2011 U.S. Dist. LEXIS 112187 (S.D.N.Y. July 11, 2011) .................................................. 24

*Dorn v. Eddington Sec., Inc.*,
  No. 08 Civ. 10271, 2011 WL 9380874 (S.D.N.Y. Sept. 21, 2011) ........................................ 14

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) .......................................... 20

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .............................................................................. 12

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................... 6

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................ 19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................... 7

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ..................................................................... *passim*

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ........................................................................ 23

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11 Civ. 8472, 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ........................ 21

*Hernandez v. Merrill Lynch & Co.*,
  No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ............................. 19, 20, 22

*Hosier v. Mattress Firm, Inc.*,
  No. 10 Civ. 294, 2012 U.S. Dist. LEXIS 94958 (M.D. Fla. June 8, 2012) ........................... 21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................ 33

*Koszyk v. Country Fin.*,
  No. 16 Civ. 3571, 2016 U.S. Dist. LEXIS 126893 (N.D. Ill. Sept. 16, 2016) ....................... 21

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014)…………………………………………………………………20

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ........................................................................ 6

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................. 20

*McCue v. MB Fin., Inc.*,
   No. 15 Civ. 988, 2015 U.S. Dist. LEXIS 96653 (N.D. Ill. July 23, 2015) ............................ 21

*McEarchen v. Urban Outfitters, Inc.*,
   2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar. 7, 2017) ...................................................... 13

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010) ................. *passim*

*Mendes-Garcia v. 77 Deerhurst Corp., No. 11 Civ. 2797*,
   2014 U.S. Dist. LEXIS 188290 (S.D.N.Y. Aug. 19, 2014) ........................................... *passim*

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) ............................................................................ 11

*Palacio v. E*TRADE Fin. Corp.*,
   No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y June 22, 2012) ......................... 21

*Pasini v. Fishs Eddy, LLC,* No. 16 Civ. 354,
   2018 U.S. Dist. LEXIS 199213 (S.D.N.Y. Nov. 15, 2018) ........................................... *passim*

*Perez v. Allstate Ins. Co.*,
   No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ................................... 22, 23

*Puglisi v. TD Bank, N.A.*,
   No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) .................. 19, 21

*Roberts v. TJX Cos.*,
   No. 13 Civ. 13 142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) ................... 21

*Sand v. Greenberg*,
   No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010).............................. 31

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
   659 F.3d 234 (2d Cir. 2011) ..................................................................... 12

*Silva v. Little Fish, Corp.*,
   No. 10 Civ. 7801, 2012 U.S. Dist. LEXIS 89485 (S.D.N.Y. May 1, 2012) ...................... 5, 31

*Stevens v. HMSHost Corp.*,
   2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27, 2014) ........................................... 13, 14

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013) ........................................................ 11-12

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................ 32-33

*Torres v. Gristede's Operating Corp.*,
    Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937
    (S.D.N.Y. June 1, 2010) ................................................................ 4

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................ 21

*Valerio v. Putnam Assocs. Inc.*,
    173 F.3d 35 (1st Cir. 1999) ........................................................... 16

*Velez v. Majik Cleaning Serv.*,
    2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ................ 23-24

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ......................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...................................................... 5, 10

*Willix v. Healthfirst, Inc., No. 07 Civ. 1143*,
    2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .................. 31

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................... 24

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ................ *passim*

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) ............... 21, 33

*Zhao v. Benihana*,
    No. 01 Civ. 1297, 2001 WL 845000 (S.D.N.Y. May 7, 2001) ............ 21

*Zolkos v. Scriptfleet, Inc.*,
    *No. 12 Civ. 8230,* 2015 U.S. Dist. LEXIS 91699 (N.D. Ill. July 13, 2015) .......................... 21

**Statutes**

29 U.S.C. § 216 .............................................................................. 13

**Rules**

Fed. R. Civ. P.  23 ..................................................................................................... *passim*

**Regulations**

29 C.F.R. § 541.202 ..................................................................................................... 11
29 C.F.R. § 541.700 ..................................................................................................... 11
29 C.F.R. § 778.114 ..................................................................................................... 16

**Other**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*  ................................................... 4

## INTRODUCTION

Plaintiffs in the above-captioned consolidated actions respectfully submit their proposed $16,666,667.00 settlement for the Court's final approval.  Defendants consent to this motion. These actions assert claims for unpaid overtime wages brought by Assistant Branch Managers ("ABMs") who worked for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (together, "Chase").  The ABMs claim, among other things, that Chase misclassified them as employees who were exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA") and Connecticut, Illinois, and New York state wage laws and that they are therefore entitled to unpaid overtime wages and other damages.[1]  The Court preliminarily approved this class and collective action settlement on October 31, 2018 and ordered notice to be sent to the Class and FLSA Collective Members.  (*Varghese* ECF No. 142) (*Taylor* ECF No. 117).  The reaction to the settlement has been uniformly positive and supportive.  Plaintiffs' Counsel has received scores of calls and e-mails in response to the notice, in which Class and FLSA Collective Members express their gratitude and relate the positive impact that the settlement money will have on their lives. Not a single Class or FLSA Collective Member has objected to the settlement.  Plaintiffs' Counsel is accordingly proud to present this settlement to the Court for final approval.

The Parties reached this settlement after three and a half years of hard-fought litigation, including these two actions, a separate declaratory judgment action filed by Chase in the Western District of Washington with appeals by both parties to the Ninth Circuit Court of Appeals, and two arbitrations in the American Arbitration Association.  This Agreement resolves all of these claims. As discussed in detail below, the proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure for the Connecticut, Illinois, and New York

---

[1]     Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

1

state law classes.  The proposed FLSA settlement also warrants approval because the settlement

was reached after significant information exchange, discovery, and contested litigation, and was

the result of arm's length settlement negotiations conducted by experienced counsel and a

mediator well-versed in wage and hour law.  By this Motion and with Defendants' consent,

Plaintiffs respectfully request that the Court: (1) grant final approval of the Joint Stipulation of

Settlement Agreement and Release (the "Agreement"), attached as Exhibit A to the Shavitz Decl.;

(2) finally certify three Fed. R. Civ. P.  23 state law settlement classes (New York, Illinois and

Connecticut) pursuant to subsections 23(a) and (b)(3) of the Agreement; (3) authorize the

Settlement Administrator to issue payments to the Class and FLSA Collective Members and

perform the remaining obligations per the Agreement's terms; (4) approve the Enhancement

Awards; (5) approve Plaintiffs' Counsel's request for attorneys' fees and costs; (6) approve

payment to the Administrator for its services; and (7) enter a Final Order and Judgment closing this

case (see Proposed Final Order and Judgment, attached hereto as Exhibit B).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, putative members of the proposed Rule 23 state law classes, and members of the

collective certified by Order dated September 8, 2016 (Varghese ECF No. 96) (*Taylor* ECF No.

57) worked as ABMs at Chase bank branches located throughout the United States.  The proposed

settlement includes all exempt-classified ABMs employed by Defendants, with the exception of

ABM – Sales and those ABMs located in the state of California (which are the subject of a

separate class action settlement which has been finally approved, *Erami v. JP Morgan Chase Bank*,

No. 2:15-cv-07728 (C.D. Cal.) (final approval order attached as Exhibit D to Shavitz Decl.)),

during the Covered Period in the Covered States set forth below:

    • In Connecticut, from August 20, 2012 through the date of the Order Granting
      Preliminary Approval;

2

- In Illinois, from April 16, 2012 through the date of the Order Granting Preliminary Approval;

- In New York, from December 2, 2010 through the date of the Order Granting Preliminary Approval; and

- In any other state (excluding California), from August 20, 2012 through the date of the Order Granting Preliminary Approval.

Ex. A (Settlement Agreement) at ¶ 1.14.  The Consolidated Amended Complaint (ECF No. 105

Ex. F) filed herewith alleges, among other things, that ABMs frequently worked more than 40

hours per week but Defendants failed to pay overtime compensation for each hour worked in

excess of 40 because Defendants misclassified ABMs as exempt.

Rather than repeat the detailed discussion of the litigation, mediation, settlement

negotiations, and the settlement terms set forth in the preliminary approval motion (*Taylor* ECF

No. 104 at 2-14; *Varghese* ECF No. 135 at 2-14), Plaintiffs respectfully incorporate that discussion

herewith.  Plaintiffs provide the following details about the settlement administration process to

date:

- On November 26, 2018, the Administrator mailed 5,383 notices to the Class and FLSA Collective  Members.  To date, 4,175 unique claim forms have been submitted.

- The Administrator set up a website through which claims could be submitted.

- Of the 5,383 notices mailed, 221 notices were returned as undeliverable.  The Administrator located new mailing addresses for 162 individuals.  The Administrator was not able to locate new mailing addresses for 59 individuals despite diligent search efforts including.

- The final deadline to submit claim forms for notices that did  not need to be remailed was January 25, 2019.  The extended deadline to submit claim forms due to remailing is March 1, 2019.

- Not one Class Member objected to the settlement and only 4 Class Members opted out.

Declaration of Abigail Schwartz for Rust Consulting, Inc. ("Rust Decl.") at ¶¶ 12, 14, 18, 19, 21, 22.

## II.   CLASS ACTION SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes three steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.   Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §§ 11.22, *et seq.* (4th ed. 2002); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *3-5 (S.D.N.Y. June 1, 2010). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.

The first two steps of the settlement procedure have been completed.  The Court conditionally certified the state law classes under Rule 23 of the Federal Rules of Civil Procedure and authorized notice to Class Members.  Preliminary Approval Order (*Varghese* ECF No. 142) (*Taylor* ECF No. 117).  On November 26, 2018, the Administrator mailed the notices. Rust Decl. at ¶ 12.  The purpose of the final approval hearing is to consider any objections to the settlement which may have been filed by class members and to make a final ruling on the fairness, adequacy, and reasonableness of the settlement.  As noted above, in this case no objections have been filed.  Rust Decl. at ¶ 22.

## III.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Courts in this District – including this Court – routinely grant final approval to settlements of FLSA/Rule 23 actions for unpaid overtime wages where, as here, the proposed settlement satisfies the relevant criteria.  *See, e.g., Grant v. Warner Music Gr. Corp.,* No. 13 Civ. 5031 (S.D.N.Y.) (Final Approval Order at ECF No. 113); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010); *Pasini v. Fishs Eddy, LLC*, No. 16 Civ. 354, 2018 U.S. Dist. LEXIS 199213 (S.D.N.Y. Nov. 15, 2018); *Silva v. Little Fish, Corp*., No. 10 Civ. 7801, 2012 U.S. Dist. LEXIS 89485 (S.D.N.Y. May 1, 2012); *Yuzary v. HSBC Bank USA, N.A*., No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013); *Bahena v. Park Ave. S. Mgmt. LLC*, No. 15 Civ. 1507 (S.D.N.Y. Aug. 9, 2017) (Final Approval Order at ECF No. 182).

Significantly, the district judge in  *Erami v. JP Morgan Chase Bank*, No. 2:15-CV-07728 (C.D. Cal.) recently approved the class action settlement involving Chase ABMs from California who asserted "misclassification" overtime claims which were identical to those asserted here.  *See* Exhibit D to Shavitz Decl.

### A.     Procedural Fairness

At the final approval stage, courts address the fairness, reasonableness, and adequacy of the settlement.  Fed. R. Civ. P. 23(e).  "Fairness is determined upon review of both the terms of

the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citation omitted). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal citation and quotation marks omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *9 (quotation omitted).

This settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, completed substantial discovery and depositions, reviewed thousands of pages of documents, filed multiple motions, held a full-day mediation, and conducted arm's-length negotiations between the parties. Prel. App. Shavitz Decl. (ECF No. 105) ¶ 4-25; Prel. App. Stoecker Decl. (ECF No. 106) ¶¶ 11-12, 15-17, 19. "Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process." *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *9-10 (citing *Wal-Mart Stores*, 396 F.3d at 116). Accordingly, Plaintiffs submit that the procedural fairness requirements have been satisfied.

### B.    Substantive Fairness

In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors are: (1) "the complexity, expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement;" (3) "the stage of the proceedings and the amount of discovery completed;" (4) "the risks of establishing liability;" (5)

"the risks of establishing damages;" (6) "the risks of maintaining the class action through the trial;" (7) "the ability of the defendants to withstand a greater judgment;" (8) "the range of reasonableness of the settlement fund in light of the best possible recovery;" and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  495 F.2d at 463.  Here, eight of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement and one is neutral.

### 1. Further Litigation and Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a settlement prior to trial, Plaintiffs will avoid further expense and delay in obtaining a recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Particularly in complex wage and hour litigation like this one, involving a nationwide collective and state and federal statutory rights, protracted litigation is costly and burdensome, including motion practice and potential appeals regarding class certification.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008).

By reaching this agreement before FLSA notice was sent, Plaintiffs' Counsel obtained a settlement for *all* Class and FLSA Collective Members.  Had notice issued to collective members before a settlement was reached, our experience teaches that only a relatively small percentage of putative FLSA Collective Members would join the action and submit themselves to the risks and burdens of contested litigation.  Andrew C. Brunsden, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts, 29 BERKELEY K. EMP. & LAB. L. 269, 293-94 (2008) (analyzing 21 cases and concluding that the average opt-in rate in FLSA cases is 15.71%).

Additionally, had the case not settled, Defendants would likely have sought discovery from all FLSA Collective Members who joined the litigation which would have resulted in many opt-ins opting out when unable or unwilling to participate in the discovery process.  Litigation would have ensued regarding the propriety of representative discovery from a sampling of FLSA Collective Members and the Court would have had to resolve this and a host of other discovery disputes arising by virtue of the scale of the action and its multitude of participants.

Absent settlement, motion practice addressing multiple issues unique to Plaintiffs' claims would have ensued concerning the numerous affirmative defenses asserted by the Defendants including whether they had a good faith basis for believing their conduct was lawful, whether they would be required to produce otherwise privileged documents relating to their possible reliance on counsel's advise, and the reasons for their classification of ABMs as exempt.  Given the nationwide scope of the action, the large number of Chase branches, and the many thousands of class members, the scope and expense of electronic discovery would have necessitated further litigation as to whom should bear its expense, what sources to search, and how to parse relevant documents from the enormous amount of data generated and maintained by Chase personnel. The parties also anticipated multiple additional depositions of corporate executives, branch, regional and other managers across the country.  Despite significant document production to date, such discovery would have expanded exponentially in this case absent settlement.

In addition to the discovery of FLSA Collective Members' claims and Defendants' defenses there would have been additional discovery relating to the state law claims of the Connecticut, Illinois, and New York Rule 23 class members.   Defendants would have pursued granular discovery focused on the day-to-day duties and differences among *each and every class* member in order to establish that class certification was inappropriate given the disparity of duties, branches, managers and time periods in which they worked.

While these cases settled before full-blown discovery, the Parties had already engaged in significant discovery and motion practice relating to conditional certification, equitable tolling of the FLSA collective members' claims, and discovery motions and summary judgment in the *Smith* arbitration matter. Defendants were compelled to respond to full blown document discovery relating to the merits of plaintiffs' claims in the *Varghese* action and produced more than twenty thousand (20,000) pages of documents. Order dated December 29, 2015 (*Varghese* ECF No. 78). Absent settlement, the parties were set to embark on depositions of numerous opt-in Plaintiffs and corporate representative witnesses, as well as discovery, class and collective certification, decertification, and summary judgment motion practice, to say nothing of the extensive motion practice which would have ensued in connection with any trial of the actions. Even if the Court permitted the case to proceed to trial as a class or collective, a complex trial would have been necessary to resolve numerous factual issues relating to Defendants' exemption defenses and the extent of overtime worked by ABMs, among other issues. Preparing for trial, particularly a class trial, would have consumed tremendous amounts of time and resources. Additionally, any judgment would likely be appealed, thereby extending the litigation. The settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.   The Reaction of the Class Members (*Grinnell* Factor 2).

The Class and FLSA Collective Members have overwhelmingly supported this settlement: none have objected and 4,175 Class and FLSA Collective Members have submitted claim forms and will receive settlement payments. In Plaintiffs' Counsel's experience, this participation rate is very high and demonstrates how positively the Class and FLSA Collective Members viewed this settlement. Plaintiffs' Counsel also received many calls from Class and FLSA Collective Members thanking us for our efforts and praising the results. Shavitz Decl. ¶ 7;

Stoecker Decl. ¶ 23.  **Out of 5,383 Class and FLSA Collective Members, not one submitted an objection**.  Only 4 individuals opted out of the settlement.   The support of the Class and FLSA Collective Members supports the second *Grinnell* factor.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

As discussed in the Prel. App. Stoecker Declaration (ECF No. 106) at ¶¶11-12, 15-17, 19 and Prel. App. Shavitz Declaration (ECF No. 105) at ¶ 4-25, Plaintiffs' Counsel has already completed a thorough investigation and ample discovery over three years of litigation in multiple venues and are well positioned to recommend settlement.  In addition, Plaintiffs' Counsel has litigated and settled approximately 20 similar assistant branch manager or co-manager misclassification cases against banks and financial institutions and numerous large, complex overtime class and collective actions presenting similar exemption, certification, and factual issues and can fairly assess the risks and value of the claims in these cases as compared to other similar cases which the firm has settled.  Stoecker Decl. ¶ 6 and Shavitz Decl. ¶ 21-22, 24.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537 (citation and internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (citation and internal quotation marks omitted) (second alteration in original).

The discovery conducted here, including the depositions and thousands of pages of documents produced in these matters and in the *Smith* and *Iwanski* arbitration proceedings, have provided Plaintiffs' Counsel with more than enough information to evaluate the strengths and weaknesses of the claims and account for such risk in settlement.  Plaintiffs' Counsel's position

is that the majority of the policies and procedures produced in the *Varghese* matter and *Smith* arbitration applied at all Chase branches nationwide and Plaintiffs' Counsel was able to fairly evaluate how such policies and procedures impacted ABMs' job duties and whether or not they exercised sufficient discretion and independent judgment as required by FLSA and state law exemptions. *See* 29 C.F.R. § 541.202 (administrative exemption); 29 C.F.R. § 541.700 (primary duty factors and freedom of supervision test). Accordingly, this factor favors final approval. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *6 (S.D.N.Y. May 11, 2010) (finding that "[t]he parties had completed enough discovery to recommend settlement . . . [where] the parties engaged in aggressive discovery efforts, obtaining voluminous amounts of documents and taking numerous depositions").

### 4. Plaintiffs Would Face Risk if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.,* 117 F.3d 721 (2d Cir. 1997). In weighing the risks of establishing liability and damages, "[t]he court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted). Here, Plaintiffs recognize the substantial risks of the litigation, including the possibility that the cases and arbitrations, if not settled now, might not result in any recovery or might result in a recovery that is less favorable.

Defendants' defenses presented real risks for Plaintiffs. First, Defendants may have moved to compel collective members who signed Defendants' arbitration agreement to arbitrate their claims on an individual basis. There were two arbitration agreements at issue in this case:

one for WaMu ABMs who worked for Chase following the acquisition and one for Chase.  The Supreme Court and Second Circuit have enforced such arbitration agreements with class and collective waivers.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013).  Defendants likely would have moved to compel arbitration for those subject to such agreements rather than the relief obtained in this case through settlement for all ABMs, regardless of whether they are subject to arbitration agreements or not.  Filing hundreds of individual arbitrations would have brought on procedural burdens on all parties.

Whether these collective members would have had to arbitrate their claims, and even if they wished to, whether prosecuting their claims individually would have been prohibitively expensive, presented significant risk.  Plaintiffs' Counsel anticipates that many FLSA Collective Members would not proceed individually in arbitration for fear of being "blackballed" in the industry by virtue of having their name prominently associated with an action against their current or former employer.  *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights.").  This Settlement eliminates such risk as **all** Class and FLSA Collective Members can participate in the settlement by merely submitting a Claim Form.

Second, Defendants' exemption defenses also presented risk.  Although Plaintiffs believe that their claims are strong, a jury ruled in favor of the defendant bank Citizens Financial Group in an assistant branch manager FLSA misclassification case and found that the assistant branch managers were properly classified as exempt and were therefore owed no overtime wages.  *Bell v. Citizens Financial Gr. Inc*., No. 2:10-cv-00320 (W.D. Pa.).

Third, if FLSA notice issued, the statute of limitations would have started to expire on

FLSA Collective Members who did not join the lawsuit and also for those FLSA Collective

Members who worked at locations at which Chase phased out the ABM position. Those FLSA

Collective Members who benefit from this Settlement would not have benefitted from any

settlement or verdict if they did not join. Protecting these individuals' FLSA claims through this

Settlement supports this *Grinnell* factor.

<strong>5.  Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).</strong>

The risk of obtaining class certification and maintaining collective certification is also

present. While Plaintiffs were successful in obtaining conditional certification of the FLSA

claims, Defendants likely would have moved to decertify the collective and opposed Rule 23

certification of the classes. Courts have granted such motions in the overtime misclassification

claim context. *McEarchen v. Urban Outfitters, Inc*., 2017 U.S. Dist. LEXIS 33335 (E.D.N.Y.

Mar. 7, 2017); *Stevens v. HMSHost Corp*., 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27,

2014).

There are 5,383 Class and FLSA Collective Members who worked in approximately

4,300 Chase branches at issue in this Settlement. Chase has argued in opposition to the *Taylor*

Plaintiffs' Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) that there are

numerous variations among the branches and such variations are material to the issue of whether or

not ABMs are correctly classified as exempt. *Taylor* ECF No. 34 at 8-17 (arguing that ABMs

performed different primary job duties at different locations); *id*. at 10 & n. 13 (arguing that

different Branch Managers supervise staff differently and such misclassification claims cannot be

certified as a class or collective action); *id*. at 14 nn. 34 & 35 (arguing that different branch sizes

and compensation amounts impact class and collective certification); *id*. at 8-9 (arguing that

13

different staffing levels highlight why claims cannot be certified as class or collective action).  In opposition to the Varghese motion for collective action certification, defendants went even further arguing that individual ABM's had widely disparate duties and that the proof of each ABM's exemption status would require an analysis of evidence unique to each and every ABM.  *Varghese* ECF No. 81 at 20.  While Plaintiffs believe the ABMs are sufficiently similar to warrant class and collective treatment, Plaintiffs' Counsel recognize that other courts have decertified and/or refused to certify class and collective actions adopting arguments similar to that which Chase made here. *See, e.g., McEarchen* & *Stevens, supra.*

The settlement avoids these risks, guaranteeing payments on a class- and collective-wide basis to all Class and FLSA Collective Members.  Accordingly, this factor favors final approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 9380874, at *4 (S.D.N.Y. Sept. 21, 2011) (Swain, J.) (finding "the risk of obtaining and maintaining class status throughout trial" in a class and collective action wage and hour settlement "weigh[ed] in favor of final approval").

### 6.      Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

Although Defendants very likely could have paid a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *7 (E.D.N.Y. June 12, 2013) (quoting *Frank*, 228 F.R.D. at 186) (internal quotation marks omitted).  Accordingly, this factor is neutral and does not preclude the Court from granting final approval.

7. **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The settlement amount represents substantial value given the risks of litigation, even though the recovery would most likely be greater if Plaintiffs prevailed on the merits. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (internal quotation marks omitted)); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014) ("The inquiry . . . is to see whether the settlement falls below the lowest point in the range of reasonableness.") (quoting *In re Gache*, Nos. 97 Civ. 5025, 97 Civ. 5034, 97 Civ. 5036, 1998 WL 646756, at *1 (2d Cir. Apr. 16, 1998) (internal quotation marks omitted)). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (internal quotation marks omitted). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Here, the $16,666,667.00 settlement is reasonable. The Settlement represents approximately an average gross settlement of $3,086.00 for each Class Member and FLSA Collective Member who worked in the Covered Period. In the analogous *Erami v. JP Morgan Chase Bank*, No. 2:15-cv-07728 (C.D. Cal.) case, the Court approved the settlement obtained for California ABMs where the average amount recovered per class member was $2,818.02. *See also* Exhibit D (*Erami* Order holding that a Court approved a settlement "in [an analogous case]

that yielded an average recovery of $200 per class member - more than ten times less than the average recovery in this case").  The higher recovery here supports the reasonableness of this settlement.

The settlement amount is substantial considering that Chase has argued that ABMs do not work many (if any) overtime hours.  For example, Chase has argued that there are at least nine bank holidays per year and ABMs do not work more than 40 hours per week in those weeks.  Chase has argued that ABMs also take time off for vacation, illnesses, and personal matters and do not work overtime hours in those weeks.  Even in weeks in which ABMs worked five days (their typical workweek), Chase has argued that its bank branches are often not open for much more than 40 hours in those five days.  With breaks for lunch and other matters, Chase has argued that ABMs work 40 or fewer hours in most weeks and, at most, 41 to 42 hours during some weeks.  While Plaintiffs recall working longer hours, if liability was found, a jury may adopt Chase's position on damages and find that ABMs are only entitled to 1 to 2 overtime hours in a fraction of weeks per year (32 out of 52 weeks (62% of the weeks per year), accounting for time off and bank holidays).  ECF No. 104 at 27-28.

Chase has also argued that a fluctuating workweek measure of damages is appropriate. Under that method, it is assumed that an employee's weekly salary constitutes all of his straight-time pay for all of the hours worked in a given week.  See 29 C.F.R. § 778.114.  Accordingly, any overtime hours are paid at ½ of the regular rate of pay rather than the one and a half times rate upon which plaintiffs' damages claims were predicted.  *See Clements v. Serco, Inc.,* 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138 (5th Cir. 1988).  Using Chase's damages methodology and assuming an average base weekly salary of approximately

$44,550 and two overtime hours worked in 32 weeks per year, actual damages are about $652.80 per year.

While Plaintiffs would have argued that overtime damages should be calculated using a time and one-half method, there is no Second Circuit authority on point and Plaintiffs accordingly faced risk that the Court would determine that the fluctuating workweek method of damages was appropriate here such that their damages were much less than they had calculated. Plaintiffs estimate that actual overtime damages using a time and a half measure of damages and 4 overtime hours per week in 40 weeks per year is $5,140 per year.  Given all the risks Plaintiffs faced (obtaining class certification, maintaining collective action certification, defeating the class and collective action arbitration waivers, establishing liability, proving damages, winning the appeal, etc.) and recognizing that Plaintiffs did not work overtime in multiple weeks per year when they took time off or when there were bank holidays, an average gross settlement of about $3,086 is reasonable in this highly-contested matter.

## C.      The Court Should Approve the FLSA Settlement

For the same reasons addressed above in the *Grinnell* analysis, the Court should approve the FLSA settlement.  In *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015), the Second Circuit held that Courts or the Department of Labor must approve FLSA settlements for the releases to be effective.  The core holdings of *Cheeks* are that any FLSA settlement must be fair, a reasonable compromise of disputed claims, and not have overly restrictive settlement terms.  796 F.3d at 203, 206-07.  As detailed above, this is a very reasonable settlement of hotly contested claims which could have resulted in a win or loss for either party.  Moreover, the settlement terms are consistent with those of many FLSA settlements approved in this Court and Circuit and the release is limited to wage and hour claims during the time that the Class and

FLSA Collective Members worked as exempt-classified ABMs.  *See Yuzary, McMahon, Pasini,*

*supra.*  Therefore, the Court should approve the FLSA settlement.

**IV.    CERTIFICATION OF THE CONNECTICUT, ILLINOIS, AND NEW YORK STATE LAW CLASSES IS APPROPRIATE**

For settlement purposes, Plaintiffs[2] seek final certification of three Rule 23 Classes under

Federal Rule of Civil Procedure 23(e):[3]

1. New York Class:  ABMs who worked for Defendants in New York from December 2, 2010, through the date the Court enters its order granting preliminary approval;

2. Connecticut Class: ABMs who worked for Defendants in Connecticut from August 20, 2012, through the date the Court enters its order granting preliminary approval; and

3. Illinois Class: ABMs who worked for Defendants in Connecticut from April 16, 2012, through the date the Court enters its order granting preliminary approval.

Under Rule 23, a class action may be maintained if all the prongs of Rule 23(a) are met,

as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

1. the class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  *Id.* at (b)(3).

---

[2] In this section, the term "Plaintiffs" refers to Plaintiffs Navarette, Robles, Taylor, and Varghese.

[3] The Court already conditionally certified the FLSA collective in the *Taylor* and *Varghese* actions so Plaintiffs are not addressing FLSA conditional certification factors in this motion.  *See Taylor* ECF No. 57; Varghese No. 96.

A. **Numerosity.**

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  Here, the parties agree that each Rule 23 Class has more than 40 members.

B. **Commonality.**

Plaintiffs contend that the Rule 23 Classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiffs assert that they and the Class Members share the common contention that Defendants improperly classified them as exempt from overtime requirements, failed to pay them overtime wages, and failed to keep accurate records of the number of hours they worked. Plaintiffs contend that this common question is sufficient to satisfy the commonality requirement for settlement purposes.  *See Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 574280, at *3 (E.D.N.Y. Feb. 9, 2015) (commonality met where class members "share[d] common issues of fact and law, including whether [d]efendant misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked") (citation omitted); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because they and the class members share common issues of fact and law, including whether Defendants failed to pay overtime premiums in violation of federal and state wage and hour laws[.]") (citation omitted).   There are also common questions as to whether Chase ABMs met the criteria for the executive or administrative overtime exemptions under the FLSA or state overtime laws.

### C.      Typicality.

Rule 23 requires that the claims of the representative parties be typical of the claims of the classes they seek to represent.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is often satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).

Here, according to Plaintiffs, each Class Representative worked for Defendants as an ABM and suffered the same alleged injury as the Class Members he or she seeks to represent – misclassification as exempt and non-payment of overtime.  *See Hernandez*, 2012 WL 5862749, at *3 (finding typicality where plaintiffs "alleged wage and hour violations-involving common operative facts stemming from corporate policies that affected the class members in the same way").

### D.      Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citations omitted).

Plaintiffs contend that they do not have interests that are antagonistic to or at odds with

Rule 23 Class Members' interests.  *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176

(S.D.N.Y. 2014) (adequacy requirement met where there was no evidence that named plaintiffs'

and class members' interests were at odds).  Plaintiffs have also selected counsel who are

adequate to represent the classes' interests and have been appointed as Plaintiffs' Counsel in

other similar cases.  *E.g., Aboud v. Charles Schwab & Co*., No. 14 Civ. 2712, 2014 U.S. Dist.

LEXIS 157205 (S.D.N.Y. Nov. 4, 2014) (appointing Shavitz Law Group, P.A. as Plaintiffs'

Counsel); *Kulauzovic v. Citibank, N.A.*, Index No. 507538/2018 (N.Y. Sup. Ct. Kings County)

(same); *Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635

(S.D.N.Y. Sept. 23, 2014) (same); *Clem v. KeyBank, N.A*., No. 13 Civ. 789, 2014 U.S. Dist.

LEXIS 87174 (S.D.N.Y. June 20, 2014) (same); *Yuzary*, 2013 U.S. Dist. LEXIS 144327 (same);

*Hernandez*, 2013 U.S. Dist. LEXIS 42681 (same); *Beckman v. KeyBank, N.A*.,  293 F.R.D. 467.

482 (S.D.N.Y. 2013) (same); *Palacio v. E\*TRADE Fin. Corp*., No. 10 Civ. 4030, 2012 U.S. Dist.

LEXIS 88019 (S.D.N.Y June 22, 2012) (same); *Puglisi v. TD Bank, N.A.,* No. 13 Civ. 637, 2015

U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) (same); *Zhao v. Benihana*, 01 Civ. 1297,

2001 WL 845000 (KMW)  (S.D.N.Y. May 7, 2001)(Stoecker Firm sole lead counsel in wage and

hour class action);  *Noble v. University Place Corp.,* No. 02 Civ. 1803, 224 F.R.D.330 (S.D.N.Y.

May 3, 2004) (same); *Vaicaitiene v. Partners in Care, Inc.,* No. 04 Civ. 9125 (S.D.N.Y. Apr. 14,

2008) (same); *Smith et al. v. Citigroup. Inc*., No. 07 Civ. 1791 (S.D.N.Y. Sept. 22, 2010).[4]

---

[4] *Accord, e.g., Briggs v. PNC Fin. Servs. Gr*., No. 15 Civ. 10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016); *Roberts v. TJX Cos*., No. 13 Civ. 13 142, 2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016); *Koszyk v. Country Fin*., No. 16 Civ. 3571, 2016 U.S. Dist. LEXIS 126893 (N.D. Ill. Sept. 16, 2016); *McCue v. MB Fin., Inc*.,No. 15 Civ. 988,  2015 U.S. Dist. LEXIS 96653 (N.D. Ill. July 23, 2015); *Zolkos v. Scriptfleet, Inc*., No. 12 Civ. 8230, 2015 U.S. Dist. LEXIS 91699 (N.D. Ill. July 13, 2015); *Hosier v. Mattress Firm, Inc*., No. 10 Civ. 294, 2012 U.S. Dist. LEXIS 94958 (M.D. Fla. June 8, 2012).

### E.      Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  These requirements are met for settlement purposes here.

### 1.      Common Questions Predominate.

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks and citations omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co., Inc.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006).

Here, Plaintiffs contend that their common contentions – that they and other ABMs were misclassified as exempt and performed a similar swath of tasks reflected in Defendants' training materials, policies and procedures, and job descriptions that are primarily "non-exempt" duties like those of bank tellers, not "administrative" or "executive" duties – predominate over any individual issues.  *See, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *20 (E.D.N.Y. Sept. 16, 2014) (holding that predominance satisfied where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies[]")

(internal quotation marks and citation omitted); *Hernandez*, 2012 WL 5862749, at *4 (holding that predominance satisfied when "plaintiffs were subject to the same company-wide policy that violated federal labor laws").

### 2.    A Class Action Is a Superior Mechanism.

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  The superiority analysis considers four factors: (1) individual interest of class members in controlling prosecution of the action; (2) the extent of similar, prior litigation commenced by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties of managing the class action.  Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend that each factor favors certification for settlement purposes.  Individual class members have not expressed an interest in controlling the prosecution of the action.  With the exception of the California *Erami* action which is limited to California ABMs, Plaintiffs are not aware of any cases that have been brought against Defendants by class members on an individual basis in federal or state court.  Concentrating the litigation in this Court will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *See, e.g.*, *Perez*, 2014 WL 4635745, at *24 ("[A] class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses."); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) ("[C]lass action is superior . . . because it allows for a more cost-efficient and fair litigation of common disputes.").

With regard to manageability, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

**V.      THE COURT SHOULD APPROVE ENHANCEMENT AWARDS BECAUSE THEIR EFFORTS CONTRIBUTED GREATLY TO THIS SETTLEMENT**

In Rule 23 employment class actions, "service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Diaz v. Scores Holding Co.*, 2011 U.S. Dist. LEXIS 112187, at *9-11 (S.D.N.Y. July 11, 2011); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Were it not for the efforts of the Enhancement Award Plaintiffs (Saju Varghese, LeRoy Taylor, Agnes Lambert, Ginelle Robles, Kaytie Smith, Bree Jones, Tiffany Reid, Jorge Navarette, MaryAna Grattan and James Iwanski), this Settlement would not be before this Court. They placed their own personal interests aside in other to help the ABMs.  The Enhancement Award Plaintiffs dedicated substantial time to this litigation and Plaintiffs' counsel's efforts to litigate and settle these claims.  They served as valuable factual resources to Plaintiffs' Counsel throughout this entire litigation.  Shavitz Decl. ¶ 35-40; Stoecker Decl. ¶ 19-21.

The requested Enhancement Awards totaling $80,000 (Exhibit A at § 3.3) are reasonable and constitute 0.48% of the Settlement Fund.  Courts routinely approve service awards in these types of cases and the Enhancement Award Plaintiffs deserve additional compensation for their efforts and for helping achieve this settlement.  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *32

(approving $10,000 service awards to each named plaintiff); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (awarding $50,000 to each of eleven named plaintiffs representing 4.6% of the settlement amount); *Pasini*, 2018 U.S. Dist. LEXIS 199213, at *6.

## VI.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

Plaintiffs' Counsel seek attorneys' fees of one-third of the common fund ($5,555,555.67) and reimbursement of $50,000.00 of their out-of-pocket expenses which totaled $59,592.53. Shavitz Decl. ¶ 29 (total out-of-pocket costs of $30,124.23); Stoecker Decl. ¶ 15 (total out-of-pocket costs of $29,468.30); Exhibit A at 3.2(A).  As discussed below, Plaintiffs' Counsel's requests are reasonable and consistent with class action litigation in this Court and Circuit.

In determining the reasonableness of a requested attorneys' fee award, the Second Circuit has instructed that "district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50 (quotation omitted).  Although courts use both the lodestar method and the percentage-of-the-fund method in determining an appropriate attorneys' fee award, "the trend in this circuit is toward the percentage method which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc.*, 396 F.3d at 121.  Courts may review Plaintiffs' Counsel's lodestar "as a cross-check on the reasonableness of the requested percentage."  *Id.*  When conducting such a cross-check review, "the hours documented by counsel need not be exhaustively scrutinized by the district court," but can instead be "tested by the court's familiarity with the case."  *Goldberger*, 209 F.3d at 50.

Plaintiffs' Counsel spent thousands of hours prosecuting these cases and proceedings without compensation on behalf of the Class and FLSA Collective Members. Plaintiffs' Counsel spent $59,592.53 out-of-pocket to litigate these claims and did so with no guarantee that they ever would receive repayment. Plaintiffs' Counsel's efforts resulted in a substantial $16,666,667.00 settlement which is thoroughly supported by the Class and FLSA Collective Members. As discussed below, the *Goldberger* factors support Plaintiffs' Counsel's requested attorneys' fee award and Plaintiffs' Counsel respectfully requests that the Court approve the requested award.

### A.    The Time and Labor Expended by Counsel

As set forth in the Shavitz and Stoecker declarations filed herewith, Plaintiffs' Counsel collectively spent 4,610.10 hours on the matters included in this settlement. This work includes, among many other things:

- An in-depth, pre-suit investigation of Defendants' nationwide pay practices for ABMs, including, among other things, discussions with numerous ABMs across the United States, researching prior litigation involving Chase's ABMs to develop a case strategy, and reviewing the job duties performed by all branch-level employees, hours worked by ABMs, policies and procedures impacting ABMs' job duties, and ABM training;

- Researching the FLSA and various state laws to determine whether or not Defendants had viable defenses to the ABMs' unpaid overtime claims;

- Drafting the pleadings and arbitration demands and responding to the declaratory judgment action;

- Communicating with potential witnesses and Class and FLSA Collective Members to learn information to support Plaintiffs' class and collective action claims;

- Performing a detailed investigation of Defendants' branch operations and practices relating to ABMs, including collecting job advertisements, job descriptions, policies and procedures, and other information to support Plaintiffs' claims and forthcoming motion for conditional certification under the FLSA;

- Obtaining declarations from ABMs throughout the United States to support Plaintiffs' motion for conditional certification under the FLSA;

- Drafting multiple motions in these cases including motions for conditional certification under the FLSA, equitable tolling, the content of the notice to collective members and website; summary judgment in the *Smith* arbitration, and for preliminary and final approval of the settlement;

- Performing research addressing a variety of complex issues including conditional and class certification under federal and state laws, equitable tolling issues for the FLSA collective members, the various ways to measure damages in misclassification cases, the various exemptions to the FLSA and state laws which Defendants raised to dispute Plaintiffs' claims, liquidated damages and willfulness issues, including privilege waiver issues relating to same

- Engaging in significant discovery including taking and defending depositions, drafting and responding to discovery requests, filing motions to compel discovery, addressing electronic discovery issues and searches to be done on custodians, and reviewing thousands of pages of documents produced by Defendants;

- Reviewing pay data for the ABMs and preparing damages models for mediation;

- Mediating these claims and having numerous settlement discussions over the course of months to agree upon the terms of the settlement;

- Negotiating and agreeing upon the terms of this Agreement to benefit the Class and FLSA Collective Members; and

- Working with the settlement Administrator to facilitate notice to the Class and FLSA Collective Members, including editing the notice and postcard, preparing and revising the website, responding to questions from the Class and FLSA Collective Members, and working to ensure that the notice reached the Class and FLSA Collective Members whose address changed.

Prel. App. Shavitz Decl. (ECF No. 105) at ¶¶ 4-25; Shavitz Decl. at ¶¶ 5-6; Prel. App. Stoecker

Decl. (ECF No. 106) at ¶¶ 11-12, 15-17, 19; Stoecker Decl. ¶¶ 12-14, 23.  In addition to the

above tasks, Plaintiffs' Counsel will perform duties going forward to complete the administration

of the settlement.  If the Court finally approves the settlement, Plaintiffs' Counsel will work with

the Administrator to ensure that all payments are made and that the Administrator completes all

of the remaining duties to finalize the settlement.  Plaintiffs' Counsel will also communicate with

the Class and FLSA Collective Members about the settlement, the timing of payment, how their

settlement shares were calculated, the scope of the release, and other matters. Plaintiffs' Counsel anticipates spending 75 to 100 more hours to finalize the administration of the settlement.

Plaintiffs' Counsel fiercely litigated this matter to a successful conclusion and spent thousands of hours over five years working to achieve this result for the Class and FLSA Collective Members. Accordingly, this *Goldberger* factor supports Plaintiffs' Counsel's requested fee award.

### B.      The Magnitude and Complexity of this Litigation and the Risk of Litigation

As the procedural history at ECF No. 104 at 2-8 and above demonstrates, this was a very complex litigation involving nationwide FLSA claims for all ABMs, state law class action claims for ABMs in Connecticut, Illinois, and New York, two arbitrations (one of which proceeded to summary judgment), a declaratory judgment action which reached the Ninth Circuit, multiple depositions, substantial document productions, significant motion practice including motions for nationwide FLSA conditional certification and equitable tolling, mediation, and complicated settlement discussions. This case was also risky for Plaintiffs and could have resulted in no recovery at all for Plaintiffs and the Class and FLSA Collective Members. The parties fiercely disputed the applicability of exemptions to state and federal overtime laws, whether the case would remain a collective action or be decertified, whether the Court would certify class actions under Connecticut, Illinois, and New York state laws, and the manner in which to calculate damages. It is very likely that, absent this settlement, Chase would have taken many depositions of ABMs and challenged the viability of FLSA collective action certification and Rule 23 class certification of the state law overtime claims. Chase also likely would have filed a motion for summary judgment arguing that exemptions to the FLSA and state law overtime laws bar the ABMs' claims because their primary duty was to perform exempt work. Even if Plaintiffs were

able to defeat a summary judgment motion by Chase, they still faced the uncertainty of a jury trial and then the appeals to follow.

This case also was unique in that a portion of the Class and FLSA Collective Members signed arbitration agreements requiring individual arbitration of their claims. Chase would have sought to have those Class and FLSA Collective Members arbitrate their claims individually.

If this case did not settle, the parties undoubtedly faced years of litigation, a likely trial, hundreds of individual arbitrations and depositions, and appeals. Despite these challenges, Plaintiffs' Counsel took this matter on a contingency basis with no guarantee of repayment and was able to obtain this strong settlement for the Class and FLSA Collective Members. Accordingly, these *Goldberger* factors supports Plaintiffs' Counsel's requested fee award.

### C.  The Quality of Representation

"To evaluate the quality of representation, courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 400 (S.D.N.Y. 2013). The recovery obtained for the Class and FLSA Collective Members is substantial. The $16,666,667 settlement is remarkable in its size and represents approximately an average gross settlement of $3,096 for each Class Member and FLSA Collective Member who worked in the Covered Period. The fact that no one objected and 4,175 of the Class and FLSA Collective Members submitted claim forms further highlights how this settlement is significant to them.

Plaintiffs' Counsel also has experience litigating FLSA collective actions and state law overtime pay class actions and has been appointed Plaintiffs' Counsel on numerous occasions. Plaintiffs' Counsel's experience is set forth in each firm's declarations. Stoecker Decl. ¶¶ 2-11; Shavitz Decl. ¶ 10-22.

####    D.        The Requested Fee in Relation to the Settlement

"[I]n wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013).  "Fee awards in

wage and hour cases are meant to encourage members of the bar to provide legal services to

those whose wage claims might otherwise be too small to justify the retention of able, legal

counsel." *Id.* (quotation omitted).  "If such fee awards are not granted, 'wage and hour abuses

would go without a remedy because attorneys would be unwilling to take on the risk.'"  *Mendes-*

*Garcia v. 77 Deerhurst Corp.,* No. 11 Civ. 2797, 2014 U.S. Dist. LEXIS 188290, at *13

(S.D.N.Y. Aug. 19, 2014) (quoting *id.*).  This is particularly true where, as here, the individual

Class and FLSA Collective Members' claims are relatively small and the fees and costs

necessary to litigate the claims individually would exceed the value of their claims.

As this Court made clear in *Mendes-Garcia*, "the trend in this Circuit is to use the

percentage of the fund method to compensate attorneys in common fund cases like this one.

Courts have found that applying the percentage-of-recovery method is sound policy as it directly

aligns the interests of the class and its counsel and provides a powerful incentive for the efficient

prosecution and early resolution of litigation."  2014 U.S. Dist. LEXIS 188290, at *13-14 (citing

cases; quotations omitted).  "[T]he trend in the Second Circuit has been to apply the percentage-

of-recovery method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'"

*Id*. at *15 (citing cases).  "Courts regularly award lodestar multipliers from two to six times

lodestar."  *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15 (quoting *Johnson v. Brennan*,

No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *58-59 (citing many cases)).

Plaintiffs' Counsel seek one-third of the $16,666,667 Settlement Fund ($5,555,555.67) to

be awarded as attorneys' fees.  Attorneys' fees of one-third of a common fund settlement are

reasonable and "consistent with the norms of class litigation in this circuit."  *Mendes-Garcia*,

2014 U.S. Dist. LEXIS 188290, at *15; *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (same; citing cases); *Bahena v. Park Ave. S. Mgmt. LLC*, No. 15 Civ. 1507 (S.D.N.Y. Aug. 9, 2017) (Final Approval Order at ECF No. 182, approving attorneys' fees of one-third of settlement fund); *Pasini*, 2018 U.S. Dist. LEXIS 199213, at *6 (same); *Silva*, 2012 U.S. Dist. LEXIS 89485, at *6 (same); *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *26 (holding that attorneys' fee awards of one-third of a common fund are "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements.") (quotation omitted).  Thus, a request for attorneys' fees of one-third of the Settlement Fund is reasonable and appropriate to compensate Plaintiffs' counsel for their efforts and encourage other lawyers to bring these types of cases to prevent wage and hour abuses. *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *13; *accord Willix, Bahena, Pasini, Silva, supra*.

### E.      Public Policy Considerations Support Plaintiffs' Counsel's Fee Request

"Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts."  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *25-26 (quoting *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *19-20).   "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *26; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("Attorneys' fees spring from an entirely different source. They are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate

provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

"Public policy considerations provide further support for the requested fee award, given that the FLSA is a remedial statute whose purpose is served by adequately compensating attorneys who protect wage and hour rights." *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15. If not for the efforts of Plaintiffs' counsel, this settlement would not have been obtained. Plaintiffs' counsel took on this matter against a well-funded, worldwide corporation with no guarantee of any repayment for their time and efforts. SLG expended 3,251.10 hours and the Stoecker firm spent 1,359 hours to litigate these claims. Shavitz Decl. at ¶ 25; Stoecker Decl. at ¶ 12. The settlement achieved an excellent result for the Class and FLSA Collective Members – none of whom objected to the settlement or Plaintiffs' Counsel's fee request (which was identified in the Notices). Based on the foregoing, this *Goldberger* factor supports an attorneys' fee award of one-third of the Settlement Fund.

**VII.    The Lodestar Cross Check Further Confirms the Reasonableness of Plaintiffs' Counsel's Fee Request**

As noted, courts "loosely use the lodestar method as a 'baseline' or as a 'cross check'" of the percentage fee award request. *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15. In calculating the lodestar for "cross check" purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

The lodestar "cross check" further confirms the appropriateness of Plaintiffs' counsel's fee request. Shavitz Law Group, P.A. ("SLG") expended 3,251.10 hours and the Stoecker firm spent 1,359 hours (totaling 4,610.10 hours) to litigate these claims, resulting in a total lodestar of

$2,601,085.[5]  Shavitz Decl. at ¶ 25; Stoecker Decl. at ¶ 12.  The lodestar multiplier (requested fee divided by counsel's lodestar total) is 2.1.  This multiplier falls right within the range granted by courts.  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *29 (lodestar multiplier of 7.6 "falls within the range granted by courts"); *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15 (finding that multipliers in the 2 to 6 range are "regularly award[ed]"); *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *22 ("Here, the lodestar sought by Class Counsel, approximately 5.1 times the fees sought, falls within the range granted by courts. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]").  Moreover, the multiplier will decrease as time passes because Plaintiffs' counsel will continue to work on this matter to facilitate the settlement administration, respond to inquiries from Class and FLSA Collective Members, and ensure that each remaining task in the settlement is timely completed.  This further supports a finding that the fee request is reasonable.  *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *14 (S.D.N.Y. May 11, 2015) ("The fact that Plaintiffs' Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

---

[5] The Shavitz and Stoecker Declarations set forth the hourly rates and the amount of time worked by each attorney and paralegal on this matter.  Plaintiffs' counsel submits that these rates are reasonable based upon the qualifications, skills, and experience of each attorney and paralegal.

**VIII.  Plaintiffs' Counsel Are Entitled to Reimbursement of their Costs Under the Agreement**

Plaintiffs' Counsel request reimbursement of $50,000.00 in out-of-pocket expenses to be paid from the Settlement Fund.  Exhibit A at ¶ 3.2(A).  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).  Here, SLG's actual expenses were $30,124.23 (Shavitz Decl. at ¶ 29-30) and the Stoecker firm's expenses are $29,468.30 (Stocker Decl. at ¶ 15).  These expenses are detailed in the declarations.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the Proposed Order which is attached as Exhibit B to the Shavitz Decl.

Dated: New York, New York
     February 25, 2019

Respectfully submitted,

 

 

_____           s/Karl J. Stoecker (w/permission)
                                       _____

| | |
|---|---|
| Gregg I Shavitz, Esq. | Karl J. Stoecker, Esq. |
| Alan Quiles, Esq. | Brian F. Stoecker, Esq. |
| Shavitz Law Group, P.A | The Law Offices of Karl J. Stoecker |
| 951 Yamato Road, Suite 285 | 200 Park Avenue, Suite 1700 |
| Boca Raton, FL 33431 | New York, New York 10166 |
|    -and- |    -and- |
| Michael Palitz, Esq. | 22 Jericho Turnpike, Suite 100 West |
| 800 Third Avenue, Suite 2800 | Mineola, New York  11501 |
| New York, NY 10022 | Tel:  (212) 818-0080 |
| Tel: (561) 447-8888 | Fax:  (212) 818-9055 |
| Tel:  (800) 616-4000 (New York office) | Email: kjs@kjslawfirm.com |
| Fax:  (561) 447-8831 | www.kjslawfirm.com |

Email:  info@shavitzlaw.com
www.shavitzlaw.com

*Attorneys for Plaintiffs*