# LAW OFFICES OF KARL J. STOECKER
22 Jericho Turnpike, Suite 100 West
Mineola, New York 11501
P. 212-818-0080
F. 212 818-9055
kjs@kjslawfirm.com

June 1, 2020

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Varghese et al. v. JP Morgan Chase Bank, N.A., et al.,*
Nos. 14 Civ. 1718 (PGG); and 15 Civ. 3023(PGG).

Dear Judge Gardephe:

We respectfully submit this letter motion for clarification and reconsideration of Your Honor's Order dated May 19, 2020 which held that "any fee dispute between Stoecker and the Outten firm is not part of the action before the Court and will have to be part of a separate, newly filed action."

Because the basis of the foregoing ruling is not stated in the Order and this is a case where O&G seeks attorney's fees and expenses from those awarded by the Court in this action for work performed therein, and the Court has expressly retained "exclusive and continuing jurisdiction over this action for the purposes of supervising, the implementation, enforcement, construction, administration and interpretation" of the Final Order and Judgment which awarded the fees O&G now seeks, we respectfully request clarification given the Second Circuit's decision in *In Re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987), where the Court held that permitting "counsel to divide [a fee and expense] award among themselves in *any* manner they deem satisfactory under a private fee sharing agreement . . . overlooks the district court's role as a protector of the class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in the awarding of fees in equitable fund cases." *Id*. at 223. (emphasis in original).

Clarification will help us to avoid further litigation regarding the meaning and intent of Your Honor's rulings, and the extent to which other rulings or findings are necessarily subsumed therein, particularly given the ample basis set forth in my motion papers for the exercise of subject matter jurisdiction.[1]  It will also enable us to determine whether it is

---

[1] After Your Honor denied our motion for a stay, I filed the motion in state court as soon as I was able upon the court's acceptance of new, non-essential filings.  It has been a week and we still have not been assigned an index number or a Judge and we have been unable to reach anyone at the Clerk's office.  Meanwhile, O&G's arbitration continues apace, notwithstanding my repeated requests to O&G and JAMS to put the matter on hold until my request for a stay can be adjudicated.  O&G has unilaterally selected an arbitrator because we were prevented from participating in the selection process without waiving our entitlement to a stay.  *Morfopoulos v.*

1

appropriate to request that Your Honor certify the Order for immediate interlocutory appellate review pursuant to 28 U.S.C. 1292(b), and frame the issues for such review, in the event Your Honor grants such request and the Court of Appeals agrees to hear my appeal.

In *Agent Orange*, the Second Circuit categorically rejected authority which permits an award of a lump sum fee to class counsel in an equitable fund action (as this was) and then "permit[s] counsel to divide this lodestar-based fee among themselves under the terms of a private fee sharing agreement." *Id.* at 223.

Any fee sharing agreement, the Second Circuit held, must bear some relationship to the services rendered and it does not bear the required relationship where it provides for an enhancement to counsel's fee and expense award based on the amount of costs and expenses counsel has invested in the action. Such an allocation, the Second Circuit found, presents the clear potential for a conflict of interest between class counsel and the class because it provides an incentive to the investor-attorney to settle early and thereby avoid work for which full payment may not be authorized by the district court, and because such counsel will also be disinclined to undertake the risks associated with continued litigation once a settlement offer is made. *Id.* at 223-24

The Co-Counsel Agreement's fee sharing provisions which O&G seeks to enforce in arbitration suffer from the foregoing infirmity. It provides that "two times actual costs and expenses shall be reimbursed to the firms that paid them." Exh. A hereto at ¶ 2(a). It further provides that O&G would advance all of the costs of the action (other than each signatory's "in house" expenses), including "expert witness fees, deposition costs, mediation costs, subpoena fees, and travel expenses for non-employees of either firm (such as experts, witnesses and clients)." In a case of this size, those expenses could have run into hundreds of thousands, if not millions, of dollars had the case not settled early-on. O&G did retain discretion to seek contributions from the other signatories, but the third signatory dropped out immediately upon signing the Agreement. *Id.* at ¶¶ 2 (a), 3.

The Second Circuit held in Agent Orange that any fee-sharing agreement which *could* provide an enhancement to a straight lodestar-based allocation which could militate against counsel's pursuit of the Class's interests' in favor of its own, is unenforceable because

---

*Lundquist*, 1993, 191 A.D.2d 197, 594 N.Y.S.2d 234 (1st Dep't) (waiver occurred by submitting notice of appearance in arbitration, selecting arbitrator, and agreeing that issue of arbitrability should be decided by arbitrator); *Allstate Insurance Co. v. Khait*, 1996, 227 A.D.2d 551, 643 N.Y.S.2d 163 (2d Dep't) (waiver occurred by active participation in selection of arbitrators and in adjourning arbitration hearing).

The arbitrator O&G selected has no relevant experience and previously worked together, at the same firm, with one of the O&G partners that is suing me.. In addition, she is simultaneously being paid by O&G partner-plaintiffs in connection with a matter that is currently ongoing at JAMS. Exh. B hereto. JAMS and O&G, who has been a client of JAMS in 177 other matters, has flatly rebuffed multiple requests to put the matter on hold during the ongoing Covid-19 pandemic. Exh. C hereto. The former has instead directed that any request for an extension must be made to O&G's arbitrator, notwithstanding that such request would constitute participation in the arbitration and would waive my right to a stay under New York law. Exh. D hereto.

Accordingly, because I am being denied due process, I respectfully request that, alternatively, in the event that Your Honor determines to deny my motion for reconsideration, that the Court nonetheless enter a stay of O&G's arbitration until my request for a stay can be decided by a state court, in order to protect the integrity of the judicial process, and affirm my right to due process, during the ongoing pandemic, particularly given that there is dispositive, controlling authority which forecloses the relief O&G seeks in the arbitration.

it violates public policy. The magnitude of the incentive, in retrospect, is irrelevant, the Second Circuit noted, because "the ultimate inquiry . . . is the effect the agreement *could have had* on the rights of a class." *Id.* at 222. The "concern" the Second Circuit noted, "is not necessarily in isolating instances of major abuse, but rather is 'for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests.'" *Id.* at 224. *Citing Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 266 (Oct. 8, 1985).[2]

The Court in *Agent Orange*, struck down the fee-sharing agreement at issue in that case because it provided for a recovery of expenses of three times those invested such that the overall allocation of fees and expenses did not bear a relationship to the services rendered. The Court so held notwithstanding that the lawyer who opposed the fee and expense allocation required by the private agreement among counsel in that case signed the agreement and was equally guilty of failing to bring it to the Court's attention.[3]

Given the Second Circuit's holding that the district court "has an obligation to review [any fee-splitting] agreement in its capacity as protector of the rights of the plaintiff class," the fact that the fee-sharing agreement O&G is seeking to enforce violates public policy is dispositive and controlling here. An agreement which violates public policy is not a "valid" agreement within the meaning of CPLR 7503.[4] We, therefore, respectfully request that the Court clarify and reconsider its Order which held that any fee dispute arising under O&G's Co-Counsel Agreement's fee-sharing provisions "is not part of the action" and, upon reconsideration, enter a stay of the arbitration O&G has commenced because the fee-sharing agreement which is the basis for their claim for fees is not enforceable.

---

[3] As discussed in my moving Declaration, I did not, and do not, believe that the fee sharing agreement ever became operative because O&G never represented, or sought to represent, a class and collective, as the Agreement required, and, in any event, that the Agreement was no longer operative after O&G disclaimed a charging lien when it withdrew from the action, never provided copies of its time records as it was required to do periodically under the agreement, and for the additional reasons discussed in my Declaration. Stoecker Declaration ¶¶ 22-23, 40-44. *Id.* at 226.

[4] New York Civil Practice Law and Rule 7503 specifies the circumstances under which entry of a stay of arbitration is appropriate. It provides, in relevant part, that: "a party who has not participated in the arbitration . . . may apply to stay arbitration on the ground that a *valid* agreement was not made or has not been complied with." (emphasis added). Agreements which violate public policy, as the fee-sharing agreement here does, are not "valid" and are not arbitrable. *City of New York v. Uniformed Fire Officers Ass'n, Local 854, IAFF, AFL-CIO*, 95 N.Y.2d 273, 280-81, 716 N.Y.S.2d 353, 355, 739 N.E.2d 719, 72 (2000)( "If there is some statute, decisional law or public policy that prohibits arbitration of the subject matter of the dispute, ... 'the claim is not arbitrable.'") (internal citations omitted)).

The public policy exception can be invoked by a Court as a threshold issue to preclude arbitration pursuant to CPLR 7503. *See, e.g., City of Long Beach v. Civil Service Employees Ass'n*, 8 N.Y.3d 465, 470, 472, 835 N.Y.S.2d 538, 867 N.E.2d 389 (2007). *See also Matarazzo Blumberg & Associates, P.C. v. Abramovitz*, 298 A.D.2d 586, 749 N.Y.S.2d 62 (2d Dep't 2002)(illegal fee-sharing agreements between attorneys and nonlawyers not arbitrable); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 1 A.D.3d 39, 766 N.Y.S.2d 1 (1st Dep't 2003) (the res judicata effects of judicial judgments are arbitrable); *Biderman Industries Licensing, Inc. v. Avmar N.V.*, 173 A.D.2d 401, 570 N.Y.S.2d 33 (1st Dep't 1991) (issues that "involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules, as well as the potential deprivation of counsel of the client's choosing [] cannot be left to the determination of arbitrators selected by the parties themselves").

Respectfully submitted,

/s/

Karl J. Stoecker

All Counsel via ECF
Justin Swartz, Esq. (via e-mail)

MEMO ENDORSED

The motion for reconsideration and motion to stay arbitration are denied. The fee dispute discussed in the motion is not before this Court. No fee-sharing agreement between Mr. Stoecker and the Outten firm was ever disclosed to this Court, and the Court did not consider any such agreement in making its fee award. In Re Agent Orange Prod. Liab. Litig., 818 F.2d 216 (2d Cir. 1987), cited by Mr. Stoecker, has no application here. In Agent Orange, the court learned of the challenged fee-sharing agreement when the plaintiffs' management committee submitted its joint fee petition. Id. at 219. It was in that context that the Second Circuit held that the trial court erred in not considering that "the potential for abuse [inherent in the fee-sharing agreement] was real and should have been discouraged." Id. at 224. Here, by contrast, the fee-sharing agreement at issue was never disclosed to the Court, and played no role in the Court's fee award. For these reasons, the motion for reconsideration and the motion to stay arbitration are denied. The Clerk of the Court is directed to terminate the motions (14 Civ. 1718, Dkt. Nos. 173, 174, 177; 15 Civ. 3023, Dkt. Nos. 148, 149).

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

June 10, 2020